**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Wendy Fleischman and Cindy Cullen, <br><br> on behalf of themselves and all others <br> similarly situated, <br>                 Plaintiffs, <br>       v. <br><br><br> Albany Medical Center; Ellis Hospital; <br> Northeast Health; Seton Health System; <br> St. Peter's Health Care Service, <br><br>                 Defendants. | **Civil Action No. 06-CV-0765/ TJM/DRH** <br> **CLASS ACTION COMPLAINT** <br> **JURY TRIAL REQUESTED** |

**SECOND AMENDED COMPLAINT**

Plaintiffs Wendy Fleischman and Cindy Cullen, by and through counsel, on behalf of themselves and all others similarly situated, bring this action against defendants for damages, and demand a trial by jury, complaining and alleging as follows:

**NATURE OF THE ACTION**

1. Defendants, which own and operate hospitals in the Albany-Schenectady-Troy Metropolitan Statistical Area ("Albany MSA" or "Albany area"), have for years conspired among themselves and with other hospitals in the Albany MSA to depress the compensation levels of registered nurses ("RNs") employed at the conspiring hospitals, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

2. In furtherance of their conspiracy, defendants and their co-conspirators also agreed to regularly exchange detailed and non-public information about the compensation each is paying or will pay to its RN employees. The agreement to

exchange such information has facilitated the formation, implementation and enforcement of defendants' wage-fixing conspiracy. Pursuant to this agreement defendants and their co-conspirators in fact have exchanged such information, through meetings, telephone conversations and written surveys. The exchange of this information itself has suppressed competition among Albany-area hospitals in the compensation of RN employees, and has depressed the compensation they have paid to such employees, in violation of Section 1 of the Sherman Act.

3. Defendants' conspiratorial conduct has occurred in the context of a national nursing shortage. Absent their conspiracy, Albany-area hospitals would have responded to the nursing shortage by, among other things, substantially increasing RN compensation in an effort to attract a sufficient number of RNs to their respective hospitals. The history of hospital RN compensation and vacancy rates in the Albany MSA, however, reveals that hospital RNs are not being compensated at competitive levels. Despite years of high vacancy rates, compensation for hospital RNs in the Albany MSA has remained low and surprisingly stagnant. The few compensation increases in the past several years have been far too small to substantially decrease the area's nursing shortage.

4. Plaintiffs, on their own behalf and on behalf of the Class defined below, seek to recover for the compensation properly earned by RNs employed at Albany-area hospitals but unlawfully retained by such hospitals as a result of the conspiracy alleged herein. Plaintiffs also seek costs, including reasonable attorneys' fees and interest, as allowed by law.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1337(a).

6. Venue is proper in this District pursuant to 15 U.S.C. §§ 15(a) and 22, and 28 U.S.C. § 1391(b), (c).

**PARTIES**

7. Plaintiff Wendy Fleischman is an RN who has worked at St. Peter's Health Care Services since 1995. Ms. Fleischman currently resides in Albany, New York.

8. Plaintiff Cindy Cullen is an RN who has worked at Albany Medical Center as an RN since 1991. Ms. Cullen currently resides in Schenectady, New York.

9. Defendant Albany Medical Center ("Albany Medical") is a New York corporation with its principal place of business located at 43 New Scotland Avenue, Albany, New York 12208. Albany Medical is a hospital located within the Albany MSA. It has a 584 bed capacity and employs approximately 859 RNs.

10. Defendant Seton Health System ("Seton Health") is a New York Corporation with its principal place of business located at 1300 Massachusetts Avenue, Troy, New York 12180. Seton Health is a healthcare system that owns and operates hospitals within the Albany MSA, including St. Mary's Hospital ("St. Mary's"), which is located at 427 Guy Park Avenue, Amsterdam, New York 12010. St. Mary's has a 179 bed capacity, and employs approximately 256 RNs.

11. Defendant St. Peter's Health Care Services is a New York corporation with its principal place of business located at 315 South Manning Boulevard, Albany,

3

New York 12208. St. Peters is a hospital that has a 442 bed capacity and employs approximately 695 RNs.

12. Defendant Ellis Hospital ("Ellis) is a New York corporation with its principal place of business located at 1101 Nott Street, Schenectady, New York 12308. Ellis is located within the Albany MSA and has a 351 bed capacity and employs approximately 379 RNs.

13. Defendant Northeast Health, Inc. ("Northeast") is a New York corporation with its principal place of business located at 2212 Burdett Avenue, Troy, New York 12180. Northeast is a health care network that owns and operates hospitals and health care facilities within the Albany MSA, including two hospitals: Samaritan Hospital ("Samaritan"), located at 2215 Burdett Avenue, Troy, New York 12180, has a 238 bed capacity and employs approximately 259 RNs; and Albany Memorial Hospital ("Albany Memorial"), located at 600 Northern Medical Boulevard, Albany, New York, has a 165 bed capacity and employs approximately 156 RNs.

## CO-CONSPIRATORS

14. Various other hospitals and individuals not named as defendants in this complaint have participated as co-conspirators with defendants in the violations alleged herein.

## CLASS ACTION ALLEGATIONS

15. Plaintiffs bring this action under Federal Rule of Civil Procedure 23(b)(3) on behalf of the following Class:

> All persons employed by any defendant or co-conspirator to work in a hospital in the Albany MSA as an RN at any time from June 20, 2002 until the present.

4

16. Plaintiffs do not know the exact number of Class members because such information is in the exclusive control of defendants. As of 2005 there were more than 2,300 full-time-equivalent RNs employed by Albany-area hospitals. Thus, the Class is so numerous that joinder of all Class members is impracticable.

17. Questions of law and fact that are common to the plaintiffs and other members of the Class predominate over questions that affect only individual members. The questions of law and fact that are common to the Class include:

   a. Whether Albany-area hospitals, including defendants, have conspired to depress the compensation they paid to their RN employees during the Class period;

   b. Whether the alleged conspiracy has been effective in depressing RN compensation;

   c. Whether Albany-area hospitals, including defendants, have agreed to share regularly with each other detailed and non-public data about current and prospective RN employee compensation;

   d. Whether defendants and the other Albany-area hospitals have regularly exchanged detailed and non-public information about current and future RN employee compensation;

   e. Whether the exchange of such information suppressed competition among Albany-area hospitals in the compensation of RN employees, and depressed the compensation paid to such employees; and

   f. The formula and data for estimating the amount by which Class members' compensation was depressed.

18. Plaintiffs' claims are typical of the claims of the members of the Class because plaintiffs, like all Class members, are RNs who has been employed by one or more of the Albany-area hospitals during the Class period and have been damaged by the unlawful conduct alleged herein.  Plaintiffs, by advancing their own claims, will also advance the claims of all members of the Class.

19. Plaintiffs and their counsel will fairly and adequately protect the interests of all Class members.  There are no material conflicts between plaintiffs' interests in this litigation and those of Class members that would make class certification inappropriate.  Counsel for plaintiffs are experienced in antitrust class actions, and will vigorously assert plaintiffs' claims and those of the other Class members.

20. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the causes of action alleged herein.  Such treatment will permit a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.  No difficulties are likely to be encountered in the management of this case that would preclude its maintenance as a class action.

## INTERSTATE TRADE AND COMMERCE

21. Each of the hospitals named as a defendant herein provides patient care for persons coming to that hospital from states other than New York.

22. Each defendant named herein compensates the RNs it employs within the Albany MSA in part with funds provided by insurance carriers and other health care providers that are located in states other than New York.  These carriers and providers render payments to each named defendant by mailing funds across state lines.

23. Each defendant named herein also compensates the RNs it employs within the Albany MSA in part with Medicare funds paid to each defendant by the United States; these payments to each named defendant are mailed across state lines.

24. The unlawful conduct alleged herein directly involves and substantially affects interstate trade and commerce.

## FACTUAL BACKGROUND

### The Albany MSA Hospital RN Market

25. The Albany MSA is comprised of Albany, New York, Schenectady, New York and Troy, New York and their immediately surrounding towns and cities.

26. Hospitals in the Albany MSA currently employ more than 2,300 full-time-equivalent RNs.

27. This market is heavily concentrated. The five named defendants employ approximately 73% of the hospital RNs in the Albany MSA.

### Conspiracy to Suppress RN Compensation

28. Beginning before June 2002 and continuing to the present, defendants have conspired with each other and with other Albany-area hospitals to depress the compensation paid to RNs employed at hospitals within the Albany MSA.

29. In furtherance of their conspiracy, defendants and their co-conspirators have done those things they agreed to do, including:

a. Agreeing to regularly exchange, and regularly exchanging, detailed and non-public data concerning the compensation each is paying or will pay to its RN employees;

7

  b. Agreeing not to compete, and not competing, with each other in the setting of RN employee compensation;

  c. Paying RN employees at the same or nearly the same rate as each other; and

  d. Jointly recruiting RNs at job fairs and elsewhere to avoid competing to attract new RNs to their respective hospitals.

  30. In particular, during and before the Class period, the actions of defendants and their co-conspirators taken in furtherance of the conspiracy have included the following.

  31. Human resources employees working at defendant and co-conspirator hospitals have regularly telephoned each other to determine the compensation for RNs at competing hospitals, including any scheduled increases in RN compensation. These information exchanges have increased in frequency and detail at the end of each fiscal year when hospitals draft budgets and decide on RN compensation levels for the following year. Hospital administrators in the Albany MSA have used this information to set RN compensation. Human resources employees have been evaluated by their superiors on their ability to accomplish this RN compensation coordination.

  32. The great majority of hospitals in the Albany MSA, including defendants, are members of the Iroquois Healthcare Association ("Iroquois"). Iroquois conducts and publishes an annual survey of the benefits and salaries of approximately 100 upstate hospitals. The published survey includes hospital-by-hospital data from as little as a month before. Although the published survey does not identify hospitals by name, human resources employees can readily identify each surveyed hospital from identifying information such as the numbers of different types of employees and the size of the

operating budget. On request from individual members, Iroquois publishes survey reports providing selected information on selected hospitals (e.g., a hospital's top five competitors), making identification of the included hospitals even easier.

33. Hospitals in the Albany MSA have paid very similar RN compensation. For example, during the class period, all or nearly all Albany-area hospitals have compensated entry-level RN employees at an hourly rate that has differed from one another by no more than $1.

34. Defendants' unlawful conspiracy has had the following effects, before and during the Class period:

   a. Competition among defendants and their co-conspirators in the recruitment and compensation of hospital RN employees in the Albany area has been restrained;

   b. Compensation for hospital RN employees in the Albany MSA has been at artificially low levels; and

   c. Albany-area hospitals have underutilized RNs, yielding low nurse-to-patient ratios, forcing RNs to work harder for longer hours, and reducing patient quality of care.

35. Defendants' conspiracy to depress RN wages raises a serious healthcare issue. The Antitrust Division of the U.S. Department of Justice noted in its "Statements of Antitrust Enforcement Policy in Health Care" that "[a] collusive restriction on the compensation paid to health care employees, for example, could adversely affect the availability of health care personnel." Similarly, numerous studies have shown a strong correlation between the numbers of RNs that a hospital employs per patient and the hospital's morbidity and mortality rates. Although defendants and their co-conspirators,

9

like hospitals across the country, complain about the RN shortage, they have not taken the most basic remedial action to alleviate it – they have not offered RNs competitive wages.

### Injury to Plaintiffs and the Class

36. During the Class Period (and before), plaintiffs have suffered substantial economic harm in the form of lost compensation as a direct result of defendants' and their co-conspirators' unlawful agreement to depress RN compensation and their unlawful agreement to exchange RN compensation information.

### COUNT I

### CONSPIRACY TO DEPRESS WAGES IN VIOLATION OF SECTION 1 OF SHERMAN ANTITRUST ACT

37. Plaintiffs re-allege the allegations in paragraphs 1-37 as if set forth fully herein.

38. Beginning before June 2002 and continuing until the present, defendants and their co-conspirators have engaged in a continuing conspiracy in restraint of trade to depress the compensation of RNs employed at hospitals in the Albany MSA, in violation of Section 1 of the Sherman Act, 15 U.S.C. §1.

39. Pursuant to this unlawful conspiracy, defendants and their co-conspirators have set the compensation of RNs employed at hospitals in the Albany MSA at artificially low levels.

40. As a result of the unlawful conspiracy alleged in this Count, plaintiffs and the other members of the Class have been injured in their business or property by receiving artificially depressed compensation during and before the Class period.

### COUNT II

## CONSPIRACY TO EXCHANGE COMPENSATION INFORMATION IN VIOLATION OF SECTION 1 OF SHERMAN ANTITRUST ACT

41.     Plaintiff re-alleges the allegations in paragraphs 1-41 as if set forth fully herein.

42.     Beginning before June 2002 and continuing until the present, defendants and their co-conspirators have engaged in a continuing agreement to regularly exchange detailed and non-public information about the compensation being paid or to be paid to their RN employees.  This agreement is an unreasonable restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. §1.

43.     This information-exchange agreement has reduced competition among Albany-area hospitals in the compensation of their RN employees and has depressed the compensation of such employees.

44.     The relevant geographic market for the claim alleged in this Count is the Albany MSA, and the relevant service market consists of the services provided to hospitals by RN employees.

45.     A slight decrease in RN compensation from a competitive level could be imposed collectively by the conspiring hospitals in the Albany MSA without causing too many RNs to move to any non-conspiring hospitals within the Albany MSA, to non-hospital employers within the Albany MSA or to employers outside the Albany MSA.

46.     RNs often are constrained from moving to another geographic area because of region-specific licensing requirements, as well as other professional and familial obligations.

47.     Hospital RNs possess unique skill sets and gain industry-specific experience as they work, which renders them more valuable to hospitals than to non-

hospital RN employers. As they gain experience, hospitals become the only practical outlets for hospital RNs to sell their services at an amount reflecting their skills and knowledge. Other potential employers, such as doctors' offices, nursing homes and outpatient clinics, offer RNs compensation substantially below that offered by hospitals.

48. Albany-area hospitals expend significant resources accumulating information about compensation paid to RNs at other hospitals in the Albany MSA, but not about compensation paid to non-hospital RNs or RNs working outside the Albany MSA. Albany-area hospitals rely on this compensation information to set RN compensation levels, reflecting their own understanding that the relevant market involves only hospital RN employees in the Albany area.

49. Defendants and their co-conspirators comprise 100% or nearly 100% of the hospitals within the Albany MSA. Collectively, they have substantial market power within the relevant market, including the power jointly to set hospital RN employee compensation below competitive levels. This joint power clearly exists because it in fact has been used to pay Class members sub-competitive compensation. Moreover, RNs, like most laborers, cannot withhold their services until a later date as a means of negotiating for a higher compensation rate. They depend on a regular income. This weakens their negotiating position with hospitals and enhances the hospitals' market power.

50. The information-exchange agreement has had the effect of suppressing competition among Albany-area hospitals in the compensation of their RNs. The agreement's anticompetitive effect is apparent from the following facts, among others:

a. The information regularly exchanged by Albany-area hospitals pursuant to the agreement has been detailed and non-public information about current and future RN compensation. An agreement to exchange information of this type eliminates a major incentive of hospitals to increase RN compensation. The advantage of raising RN compensation is to attract more and better RN candidates by exceeding the compensation (as estimated from properly available competitive intelligence) paid by competing hospitals. But if a hospital knows that it cannot keep its superior compensation confidential from competitors, it will not offer such compensation in the first place. Without confidentiality, a hospital knows that most or all competing hospitals will match its higher compensation levels. The result is higher labor costs with no competitive advantage. An agreement to regularly exchange detailed and non-public information about current and prospective RN compensation assures that superior compensation will be timely and specifically known by competitors. Such an agreement, therefore, eliminates the incentive of hospitals to outbid their competitors.

b. Hospitals view RNs, within a few basic categories of experience and specialization, as fungible, permitting hospitals readily to compare and match each other's compensation.

c. The exchange of compensation information increases the relative bargaining power of hospitals in setting RN wages. With such information, hospitals know what others are paying their RN employees, while RN employee applicants,

    who lack access to most or all of such (non-public) information, know much less about the competitive landscape.

  d. The regularity and detail of the information exchanged, the relationships of trust developed among the individuals exchanging the information, and the assurances given that the information would not be used for competitive advantage, encouraged defendants and their co-conspirators to use the information to match and not exceed each other's RN employee compensation levels.

  51. For these reasons, the effect of the information-exchange agreement, before and during the Class period, has been to reduce competition among hospitals in the compensation of RN employees and to depress such compensation.

  52. As a result of the unlawful agreement alleged herein to exchange RN compensation information, plaintiff and the other members of the Class have been injured in their business or property by receiving artificially depressed compensation during and before the Class period.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiffs, on behalf of themselves and the Class, pray that:

  A. The Court declare, adjudge, and decree this action to be a proper class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

  B. Defendants' actions alleged herein be adjudged and decreed to be in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

  C. Plaintiffs and the other members of the Class recover their damages against each defendant, jointly and severally, in an amount to be determined, and that this damage amount be trebled pursuant to 15 U.S.C. §15(a);

  D. Plaintiffs and the other members of the Class, to the greatest extent allowed by law, be awarded interest at the highest legal rate from and after the date of service of this Complaint;

  E. Plaintiffs and the other members of the Class recover their costs of this suit, including reasonable attorneys' fees, as provided by law; and

  F. Plaintiffs and the other members of the Class be granted such other relief deemed proper to this Court.

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiffs demand a trial by jury of all issues so triable in this case.

Dated: January 31, 2007       By /s/ James T. Towne, Jr.\_\_\_\_\_

                 JAMES T. TOWNE, JR.
                 MICHAEL RHODES-DEVEY
                 TOWNE LAW FIRM
                 421 New Karner Road
                 Albany, New York 12212-5072
                 Tel: (518) 452-1800
                 Fax: (518) 452-6435

                 MICHAEL D. HAUSFELD
                 DANIEL A. SMALL
                 JOSEPH M. SELLERS
                 CHARLES E. TOMPKINS
                 ALLYSON B. BAKER
                 KALPANA KOTAGAL
                 COHEN MILSTEIN HAUSFELD
                 & TOLL, P.L.L.C.
                 1100 New York Ave., NW
                 Suite 500, West Tower
                 Washington, D.C. 20005

Tel: (202) 408-4600
Fax: (202) 408-4699

DAVID P. DEAN
MARY JOYCE CARLSON
JAMES & HOFFMAN
1101 17th St., NW
Suite 510
Washington, D.C. 20036-4748
 Tel: (202) 496-0500
Fax: (202) 496-0555

MICHAEL P. LEHMANN
THOMAS P. DOVE
KIMBERLY A. KRALOWEC
THE FURTH FIRM LLP
225 Bush Street, 15th Floor
San Francisco, CA 94104
Tel: (415) 433-2070
Fax: (415) 982-2076

DANIEL E. GUSTAFSON
JASON S. KILENE
Gustafson Gluek PLLC
650 Northstar East
608 Second Avenue South
Minneapolis, MN 55402
Tel.:  (612) 333-8844
Fax:  (612) 339-6622

MARK A. GRIFFIN
RAYMOND J. FARROW
KELLER ROHRBACK L.L.P
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
Tel.: (206) 623-1900
Fax: (206) 623-3384

ARNOLD LEVIN
CHARLES E. SCHAFFER
LEVIN, FISHBEIN, SEDRAN &
BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500
Fax: (215) 592-4663


Attorneys for Plaintiffs