**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
————————————————————————

**WENDY FLEISCHMAN and CINDY CULLEN,**
**on behalf of themselves and others**
**similarly situated,**

**Plaintiffs,**

**-v-**                                                    **1:06-CV-765**

**ALBANY MEDICAL CENTER; ELLIS HOSPITAL;**
**NORTHEAST HEALTH; SETON HEALTH SYSTEM;**
**ST. PETER'S HEALTH CARE SERVICES,**

**Defendants.**
————————————————————————

**THOMAS J. McAVOY,**
**Senior United States District Judge**

**DECISION & ORDER**

**I.      INTRODUCTION**

        Plaintiffs Wendy Fleischman and Cindy Cullen ("Plaintiffs") brought the instant

action pursuant to the Sherman Act, 15 U.S.C. § 1, claiming a conspiracy to suppress

wages.  Presently before the Court is the motion for class certification pursuant to

Federal Rule of Civil Procedure 23.

**II.      FACTS**

        Plaintiffs are currently employed as nurses at St. Peter's Hospital and Capital

Region Orthopedic Group.  They claim that the Defendants have conspired with one

another to depress the wages of Registered Nurses employed by them.  The complaint

alleges that there was an agreement among Defendants to regularly exchange

compensation information concerning Registered Nurses, that this information

exchange had the effect of reducing competition among Defendants in the market for

Registered Nurses ("RNs"), and that this reduction of competition depressed wages for

RNs below competitive levels beginning prior to June 2002 and continuing through

March 2, 2007.

_____Plaintiffs now seek certification of a class of approximately 2,300 RNs working in

hospitals in the Albany-Schenectady-Troy Metropolitan Statistical Area ("Albany MSA").

The proposed Class is defined as:

> All persons employed by any defendant or co-conspirator to work in
> a hospital in the Albany MSA as an RN at any time from June 20,
> 2002 until the present.

## III.   STANDARD OF REVIEW

_____"In determining the propriety of a class action, the question is not whether the

plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather

whether the requirements of Rule 23 are met."  Eisen v. Carlisle & Jacquelin, 417 U.S.

156, 177-178 (1974).  More precisely, a court considering a class certification motion

"must look somewhere between the pleading and the fruit of discovery. . .  [E]nough

must be laid bare to let the judge survey the factual scene on a kind of sketchy relief

map, leaving for later view the myriad of details that cover the terrain."  Sirota v. Solitron

Devices, Inc., 673 F.2d 566, 571-572 (2d Cir. 1982) (quoting Professional Adjusting

Sys. of America, Inc. v. General Adjustment Bureau, Inc., 64 F.R.D. 35, 38 (S.D.N.Y.

1974)).

_____The Second Circuit has recently elaborated as follows:

(1) a district judge may certify a class only after making determinations

that each of the Rule 23 requirements has been met; (2) such
determinations can be made only if the judge resolves factual disputes
relevant to each Rule 23 requirement and finds that whatever underlying
facts are relevant to a particular Rule 23 requirement have been
established and is persuaded to rule, based on the relevant facts and the
applicable legal standard, that the requirement is met; (3) the obligation to
make such determinations is not lessened by overlap between a Rule 23
requirement and a merits issue, even a merits issue that is identical with a
Rule 23 requirement; (4) in making such determinations, a district judge
should not assess any aspect of the merits unrelated to a Rule 23
requirement; and (5) a district judge has ample discretion to circumscribe
both the extent of discovery concerning Rule 23 requirements and the
extent of a hearing to determine whether such requirements are met in
order to assure that a class certification motion does not become a pretext
for a partial trial of the merits.

In re Initial Pub. Offerings Sec. Litig., 471 F.3d 24, 41 (2d Cir. 2006).

## IV.    DISCUSSION

Plaintiffs seeking class certification under Rule 23(a) must first establish that (1)

the class is so numerous that joinder of all members is impracticable ("numerosity"

requirement); (2) there are questions of law or fact common to the class ("commonality"

requirement); (3) the claims or defenses of the representative parties are typical of the

claims or defenses of the class ("typicality" requirement); and (4) the representative

parties will fairly and adequately protect the interests of the class ("adequacy"

requirement).  Fed. R. Civ. P. 23(a); see also In re Visa Check/MasterMoney Antitrust

Litig., 280 F.3d 124, 132-133 (2d Cir. 2001).  Should plaintiffs meet this burden, they

must also prove that their suit is sustainable as a Rule 23(b)(3) class action.  Id. at 133.

As is applicable to this case, a class action may be maintained "if Rule 23(a) is satisfied

and if the court finds that the questions of law or fact common to class member

predominate over any questions affecting only individuals members, and that a class

action is superior to other available methods for fairly and efficiently adjudicating the

controversy. . .”  Fed. R. Civ. P. 23(b)(3).

### I.  Whether the Proposed Class Satisfies All Rule 23(a) Requirements

The burden of proving all Rule 23(a) elements rests with Plaintiffs.  Gen. Tel. Co. v. Falcon, 457 U.S. 147, 159 (1982).

### A.  Rule 23(a)(1)’s Numerosity Requirement

To meet Rule 23(a)(1) standards, the proposed class must be “so numerous that joinder would be impracticable” and members in the class must be ascertainable.  See Daniel v. Amer. Bd. Of Emergency Med., 269 F.Supp. 2d 159, 191 (W.D.N.Y. 2003).  The Second Circuit has recognized that numerosity may be presumed with as few as 40 class members.  See Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995).  A class of more than 2,000 nurses employed in the Greater Albany area satisfies the numerosity requirement imposed by the Federal Rules.

### B.  Rule 23(a)(2)’s Commonality Requirement

To satisfy the deferential standard of 23(a)(2) “it is not necessary that all of the questions raised by arguments are identical; it is sufficient if a single common issue is shared by the class.”  DeMarco v. Nat’l Collector’s Mint, Inc., 229 F.R.D. 73, 80 (S.D.N.Y. 2005).  Plaintiffs have noted that “in antitrust cases, the required degree of commonality of issues is generally satisfied by pleading an antitrust conspiracy among defendants.”  Daniel, 269 F. Supp.2d 159, 189 (W.D.N.Y. 2003).  Here, the threshold requirements of Rule 23(a)(2) have been met.  The real issue is whether questions of law or fact common to all class members predominate over questions affecting only individual members, as required by Rule 23(b)(3) (which will be addressed *infra*).

4

In <u>Barnes v. U.S.</u>, 68 Fed.Cl. 492, 493 (2005), the court granted plaintiffs' motion for class certification despite extreme occupational inconsistencies among a "pool of potential class members consist[ing] of approximately 5,000 present and former employees of the Navy who regularly work or worked at night [in] a hospital or medical facility operated by or for the Navy."  Class representatives included a computer operator, a member of facility staff, and a clinical nurse.  <u>Id.</u>  In discussing the commonality requirement, the court asserted that "commonality does not require that the individual class members be identically situated.  Rather, to meet [Rule 23(a)(2)], the questions underlying the claims of the class merely must share essential characteristics, so that their resolution will advance the overall case."  <u>Id.</u> at 496.  The court continued, "that, as defendant stresses, the putative class members represent a relatively diverse range of jobs and are geographically dispersed does not alter the commonality calculus because, at its core, this lawsuit 'challenges a system-wide practice or policy that affects all of the putative class members.'"  <u>Id.</u>

Several similarities may be drawn here between the current motion for class certification and that in *Barnes* - where the Court of Federal Claims found adequate commonality among a class of much more diverse membership.   Therefore, nurses practicing in a relatively confined region and alleged to be subject to the same conduct giving rise to the conspiracy satisfy the strictures of 23(a)(2).

### C. Rule 23(a)(3)'s Typicality Requirement

Rule 23(a)(3) is satisfied where the "claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Like that for commonality, the "threshold for 'typicality'. . . is not high."  <u>Filosa v. United</u>

5

States, 70 Fed.Cl. 609, 620 (2006).  Indeed, typicality "does not require 'that the factual background of each named plaintiff's claim be identical to that of all class members.'" In re J.P. Morgan Chase Cash Balance Litig., 242 F.R.D. 265, 272-273 (S.D.N.Y. 2007) (quoting Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 293 (2d Cir. 1999)).  A plaintiff's claim is typical "'when [it]... arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" Marisol A. v. Giuliani, 126 F.3d 372, 276 (2d Cir. 1997).

The Plaintiffs' claims in this case arise from the same wage fixing conspiracy allegedly adopted by the Defendant hospitals in the Albany MSA (who argue that the varied stature and responsibilities characteristic of the nursing profession should preclude Plaintiffs' motion for class certification).  Whether or not such collusion is found to exist, the claims currently asserted by Fleischman and Cullen are typical of the class and merit certification as they cite charges against area hospitals for depressing wages among all registered nurses during the given time period.

### D.  Rule 23(a)(4)'s Adequacy Requirement

Rule 23(a)(4) demands that the representative parties "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Two factors "generally inform whether class representatives satisfy the Rule 23(a)(4) requirement: '(1) absence of conflict and (2) assurance of vigorous prosecution.'" Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147, 170 (2d Cir. 2001) (quoting 1 Herbert Newberg & Alba Conte, Newberg on Class Actions, § 3.22, at 3-126 (3d ed. 1992)). "Because class representatives serve as a guardian of the interests of the class, the

representatives must have some minimal familiarity with the litigation,. . . although a detailed understanding of the theories and facts of the case is not required." In re Tableware Antitrust Litig., 241 F.R.D. 644, 649 (N.D. Cal. 2007). "One court has summarized the adequacy requirement as follows: 'Absent any conflicts between the interests of the representative and other [class members], and absent any indication that the representative will not aggressively conduct the litigation, fair and adequate protection of the class may be assumed.'" In re Playmobil Antitrust Litig., 35 F. Supp.2d 231, 243 (E.D.N.Y. 1998) (quoting Guarantee Ins. Agency Co. v. Mid-Continental Realty Corp., 57 F.R.D. 555, 565 (N.D. Ill. 1972)).

Plaintiffs Fleischman and Cullen have expressed no interests contrary to those of the class they aim to represent.  This absence of conflict is evident as they share with the unnamed class members an interest in recovering the "damages caused by Defendants' conspiracy" (Plaintiffs' Mem. 16).  Therefore, it may safely be said that the first element of the adequacy requirement is satisfied.  Furthermore, Plaintiffs have demonstrated a capacity and willingness to pursue the case fully - participating in depositions, reviewing pleadings and discovery requests, and responding to discovery (Plaintiff's Mem. 16).  Because courts "often resolve doubts in favor of certifying the class" due to "the important role that class actions play in the private enforcement of antitrust actions,"  In re Playmobil, 35 F. Supp. 2d at 239, adequacy is easily presumed.


**II.  Whether the Requirements of Rule 23(b)(3) are Satisfied.**

Plaintiffs meet the requirement addressed in Rule 23(b)(3) if they prove that

individual claims among class members will not dominate litigation.  Fed. R. Civ. P. 23(b)(3).  A 23(b)(3) class is sustainable where "questions of law *or* fact common to class members predominate over any questions affecting only individual members and where a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3) (emphasis added).  This predominance requirement "is similar to but 'more stringent' than the commonality requirement of Rule 23(a)."  Thorn v. Jefferson-Pilot Life Ins. Co., 445 F.3d 311, 319 (4th Cir. 2006).

In this case, the elements of an antitrust claim must be analyzed in addressing the issue of predominance.  The Sherman Act, 15 U.S.C.A. §1, provides in relevant part:

> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal... .

"The three elements of an antitrust claim [are] (1) a violation of antitrust law; (2) injury and causation; and (3) damages."  In re Visa Check/MasterMoney, 280 F.3d at 136.  To prevail, Plaintiffs must show that common questions of law or fact among class members predominate over individual questions.  Here, the issues of injury and damage calculations provide the greatest form of disparity among the several plaintiffs.

### A.  Violation of antitrust law common to all class members.

Plaintiffs have satisfied their obligation with respect to the first element of an antitrust claim by establishing a common violation of antitrust law among all members of the potential class.  "Horizontal price- [or wage] fixing agreements are per se violations of the Sherman Act."  Cordes & Co. Financial Services v. A.G. Edwards & Sons, 502

8

F.3d 91, 105 (2d Cir. 2007).  It has been well established that "allegations of the existence of a price-fixing conspiracy are susceptible to common proof and, if proven true, would satisfy the first element of. . . [an] antitrust cause of action."  Id.

### B.  Common injury and causation that will predominate litigation

Injury and causation, also known as "impact," have been read to require that "to prevail in an antitrust suit, a plaintiff 'must prove [that he or she has suffered] antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.'" Id. (quoting Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1977)).  The court in Cordes & Co. Financial Services v. A.G. Edwards & Sons explained that,  "[i]nsofar as Rule 23(b)(3) is concerned. . . the second element of an antitrust cause of action - 'antitrust injury' - poses two distinct questions.  One is the familiar factual question whether the plaintiff has indeed suffered harm, or 'injury-in-fact.'  The other is the legal question whether any such injury is 'injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful."  Cordes, 502 F.3d at 106.

Fleischman and Cullen assert that injury in fact has been suffered because "[a]ll class members are seeking the same relief: damages equal to the amount that they were underpaid as a result of the conspiracy."  ( Plaintiffs' Mem. 20).  They maintain, "if Defendants exchanged compensation data about all their RNs - by, for example, listing wages for each nurse job title or providing the compensation grid they use to determine the pay of each of their nurses or disclosing wages for categories of RNs that

9

encompassed all their RNs - evidence of those exchanges would tend to prove that all of Defendants' RN employees were impacted by the conspiracy." (Plaintiffs' Mem. 20-21). Such proof, however, only satisfies the second component of the injury analysis, as the court in *Cordes* recognized,

> "Notwithstanding the existing question of injury-in-fact, we think that the legal question raised by the antitrust injury element of Cordes' and Creditors Trust's case is common to the class. There is only one type of injury alleged in the Complaint - overcharges paid to a horizontal price-fixing conspiracy. Because each class member allegedly suffered the same type of injury, the legal question of whether such an injury is 'of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful,' (citation omitted), is a common one."

Cordes, 502 F.3d at 107.

Defendants' correctly charge that Plaintiffs prematurely assume injury in fact, as the alleged "cascading" effect that wage-fixing would have on all RNs in the Greater Albany area proposed by their expert, Professor Farber, presumes an unrealistic degree of interchangeability in the nursing profession. (Defendants' Mem. 20). In effect, Defendants assert that Farber's theory cannot "serve as common evidence that any claimed conspiracy would have impacted all nurses when there is no empirical proof to support it." (Defendants' Mem. 22).

In McLaughlin v. American Tobacco Company, 522 F.3d 215 230 (2d Cir. 2008), the Second Circuit found that plaintiffs had failed to produce "persuasive facts. . . that [would] enable them to prove [common] injury to business or property." There, as here, "proof of injury, or whether plaintiffs [had] been harmed, [was] bound up in proof of damages, or by how much plaintiffs [had] been harmed." Id. at 227. And, "because the acceptable measure of injury-out-of-pocket damages would [have] required

10

individualized proof, class-wide issues [could not] be said to predominate."  Id.

Despite struggling to identify injury-in-fact among all plaintiffs, the *Cordes* court chose to certify a class with respect to particular issues.  Here, Plaintiffs' case merits similar treatment.  Though we may analogize questions of law with *Cordes*, as the injury alleged in both cases is a horizontal wage-fixing conspiracy (a practice the Sherman Act certainly aims to deter), issues of common injury-in-fact are more difficult to pinpoint.  Interchangeability and job mobility in the nursing profession, and the reasons affecting the wage of a particular nurse or class of nurses, though contested, involve too many variables and provide too much ambiguity to carry a motion for class certification on the issue of injury-in-fact.  Defendants' expert, Professor Robert D. Willig, points out that the Defendant hospitals have demands for nursing labor that differ along "several dimensions including: size, services provided, union status, and compensation and recruiting strategies."  (Willig Declaration, 7).   His analysis indicates that there is "no common trend as some hospitals' RN employment grew steadily, some grew irregularly, and others actually decline."  Id.  As the *McLaughlin* court articulated, "out-of-pocket losses cannot be shown by common evidence because they constitute an inherently individual inquiry. . . plaintiffs cannot meet their burden of showing that injury is amenable to common proof."  McLaughlin, 522 F.3d at 228.

Thus, the question of injury-in-fact cannot be certified because no evidence has been presented that demonstrates injury-in-fact to the class in its entirety.  The legal question of injury, however, is appropriate for certification.

### C.  Universally applicable damage calculation

Although "[i]t is true that once proof of injury causation has been established,

courts have allowed antitrust plaintiffs considerable latitude in proving the amount of damages," United States Football League v. Nat'l Football League, 842 F.2d 1335, 1378 (2d Cir. 1988), roughly estimating "gross damages to the class as a whole and only subsequently allowing for the processing of individual claims would inevitably alter defendants' substantive right to pay damages reflective of their actual liability." McLaughlin, 522 F.3d at 231.  To calculate damages "in an antitrust case, the trier of fact will use 'a just and reasonable estimate. . . based on relevant data' including both 'probable and inferential as well as. . . direct and positive proof.'" Daniel, 269 F. Supp.2d 159, 199 (W.D.N.Y. 2003).  Especially at the class certification stage, Plaintiffs need "demonstrate the existence of a reasonable basis on which damages can be determined at trial."  Id.  Here, the proposed assessment of damages is too speculative to warrant class certification.

In McLaughlin, the court rejected plaintiffs' proposed distribution of any recovery they might receive because such an "aggregate determination" was likely to "result in an astronomical damages figure that [did] not accurately reflect the number of plaintiffs actually injured by defendants and that [bore] little or no relationship to the amount of economic harm actually caused by defendants."  McLaughlin, 522 F.3d at 231.  Such a disconnect, the court stated, would "offend the Rules Enabling Act, which provides that federal rules of procedure, such as Rule 23, cannot be used to 'abridge, enlarge, or modify any substantive right.'" Id.  "When fluid recovery is used to permit mass aggregation of claims, the right of defendants to challenge the allegations of individual plaintiffs is lost, resulting in a due process violation."  Id. At 232.  For, "when fluid recovery is used. . . to mask the prevalence of individual issues, it is an impermissible

affront to defendants' due process rights."  Id.

Plaintiffs' expert suggests a single formula capable of assessing all damages among class members.  He explains that "[d]amages in antitrust overcharge or underpayment cases are normally calculated by comparing the prices or wages at issue with 'benchmark' prices or wages."  Farber Rep. ¶ 87.  "Such benchmark prices or wages should be comparable to the prices or wages at issue except that they are set without collusion."  Id.  Farber cites RN wages at hospitals in other cities where there have been no allegations of a conspiracy as likely benchmarks, but admits that they must be adjusted to account for varying compensation levels and factors across regions.  He, therefore, suggests defining "relative compensation of hospital RNs in a location as the compensation of hospital RNs in that location relative to the compensation of other hospital workers (non-RN) in the same location."  Id. at, ¶ 90.  He continues, "[i]n the absence of a conspiracy there is no reason to expect a difference between the relative compensation of hospital RNs in Albany and relative compensation of hospital RNs in other cities."  Id. at, ¶ 94.

Defendants' experts suggest that "the vast differences between types of nurses preclude plaintiffs from calculating claimed damages by a common formula, a deficiency that additionally, but also independently, prevents plaintiffs from meeting their burden to show that common questions predominate."  (Def. Mem., 24).  Especially irksome to Defendants' experts is Farber's focus on averages, which they claim ignores differences over time, nurse performance and merit, sign-on or retention bonuses, or other factors that may play into an individual nurse's (or class of nurses') wage.  (Willig Decl. ¶¶ 57-68, 114-15).  So too, according to Defendants, does Farber's

13

formula ignore non-wage compensation, such as employee benefits, overtime and other factors.  Lastly, Defendants' experts contend that Farber's theory "rests on the presumption that the ratio of nurse compensation to non-nurse compensation should generally be the same from city to city and therefore any deviation in the Albany ratio from the benchmark ratio can be attributed exclusively to 'damages.'"  (Def. Mem., 26). This overly generalized model, they conclude, would overcompensate some nurses and undercompensate others.  Id. at 25.

The court agrees with Defendants' analysis.  Plaintiffs' proposed damages calculation would offend both the Rules Enabling Act and the Due Process Clause. Aggregating the award compounds the risk of inaccuracies in both initial payment and subsequent allocation.  Because the current formula proposed by Professor Farber does little to remedy these concerns, the issue of damages must be reserved for individual examination.

**V.     CONCLUSION**

For the foregoing reasons, the Court finds that Plaintiff's have adequately demonstrated that class certification is appropriate with respect to whether there has been a violation of antitrust law and whether there has been injury to the class that the Sherman Act was designed to prevent.  Injury-in-fact and damages, however, must be separately determined, as there exists too much disparity among the proposed class members to proceed under one common trial.

Accordingly, Plaintiff's motion for class certification is **GRANTED IN PART**.

**IT IS SO ORDERED**

DATED:July 28, 2008

Thomas J. McAvoy
Senior, U.S. District Judge