# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WENDY FLEISCHMAN and CINDY CULLEN, on behalf of themselves and all others similarly situated,<br><br>           Plaintiffs,<br><br>    -against-<br><br>ALBANY MEDICAL CENTER; ELLIS HOSPITAL; NORTHEAST HEALTH; SETON HEALTH SYSTEM; ST. PETER'S HEALTH CARE SERVICE,<br><br>          Defendants. | Civil Action No. 06-cv-0765-TJM-DRH |

**SETTLEMENT AGREEMENT**

This Settlement Agreement ("Settlement Agreement") is made and entered into this 23rd day of January , 2009 (the "Execution Date"), by and among defendant Northeast Health, Inc. and its subsidiary entities Samaritan Hospital and Albany Memorial Hospital, on one hand ( collectively "Northeast Health"), and plaintiffs Wendy Fleischman and Cindy Cullen (collectively "Plaintiffs"), as representatives of a putative class of similarly situated registered nurses (as defined in Paragraph 5 below), on the other hand.  Plaintiffs enter this Settlement Agreement both individually and on behalf of the class of registered nurses defined in Paragraph 5 below.

WHEREAS, Plaintiffs are prosecuting the above-captioned action (the "Class Action") on their own behalf and on behalf of the Class against Northeast Health and other Defendants;

WHEREAS, Plaintiffs allege, among other things, that Northeast Health participated in an unlawful conspiracy to depress wages for registered nurses and/or to unlawfully exchange wage information in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.*;

WHEREAS, Northeast Health denies Plaintiffs' allegations, has not conceded or admitted any civil liability, and has asserted affirmative defenses to Plaintiffs' claims;

WHEREAS, Plaintiffs have conducted an investigation into the facts and the law regarding the Class Action and Plaintiffs have concluded that a settlement with Northeast Health according to the terms set forth below is in the best interest of Plaintiffs and the Class;

WHEREAS, Northeast Health has concluded, despite its belief that it has good defenses to the claims asserted, that it will enter into this Settlement Agreement in order to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, to obtain the releases, orders and judgment contemplated by this Settlement Agreement, and to put to rest with finality all Released Claims (as defined in Paragraph 31 and 51 below);

WHEREAS, arm's-length settlement negotiations have taken place between counsel for Plaintiffs and Northeast Health, and this Settlement Agreement, which embodies all of the terms and conditions of the settlement between Northeast Health and Plaintiffs, both individually and on behalf of the Class, has been reached as a result of the parties' negotiations, subject to approval of the Court;

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is agreed by and among the undersigned that the Class Action be settled, compromised, and dismissed on the merits with prejudice as to Northeast Health only, without costs except as provided in this Settlement Agreement as to Plaintiffs, the Class, or Northeast Health, subject to the approval of the Court, on the following terms and conditions:

A.      Definitions

The following terms, as used in this Settlement Agreement, have the following meanings:

1.      "Actual pay rate" means the actual pay rate for any employee or class of employees in a specific job being evaluated.

2.      "Albany" means within the Albany-Schenectady-Troy Metropolitan Statistical Area ("Albany MSA").

3.      "Average pay rate" means the rate determined by calculating the average pay of all the employees in a specific job being evaluated.

4.      "Claims Administrator" means Rust Consulting, Inc., 625 Marquette Avenue, Suite 880, Minneapolis, MN 55402.

5.      "Class" means all registered nurses who provided direct patient care in short term acute care facilities other than as supervisory, managerial or advance practice nurses while employed by Defendants within the Albany-Schenectady-Troy Metropolitan Statistical Area at any time from June 20, 2002 through June 20, 2006.

6.      "Class Counsel" means the law firms of Cohen, Milstein, Sellers & Toll, P.L.L.C., 1100 New York Avenue, N.W., Washington, D.C. 20005; James & Hoffman, PC, 1101

17th Street NW, Suite 510, Washington, D.C. 20036; and Towne Bartkowski & DeFio Kean, PC, 450 New Karner Road, PO Box 15072, Albany, NY 12212-5072.

7.      "Class Member" means each member of the Class who does not timely and validly elect to be excluded from the Settlement Class, certified for purposes of this Settlement Agreement only.

8.      "Class Period" means the period from and including June 20, 2002 up to and including June 20, 2006.

9.      "Compensation" means any component of payment for employee services, including, but not limited to, wages, salaries, benefits, shift differentials, hourly and per diem rates, hiring formulas, payroll budget information, and the frequency or timing of any of these components of payment.

10.     "Current compensation" means compensation that is actually being utilized in paying any employee.

11.     "Court" means the United States District Court for the Northern District of New York in which the Class Action is pending.

12.     "Defendants" means any person or entity named as a defendant in the Second Amended Complaint.

13.     "Effective Date" means the date on which all of the events identified in Paragraphs 43-50 of this Settlement Agreement have occurred, and means the date on which this Settlement Agreement has become final.

14.     "Employee" means any full-time, part-time, hourly or per diem employee.

15.     "Escrow Account" means the account, established by Class Counsel and administered in accordance with the terms of this Settlement Agreement for receipt of the Settlement Amount.

16.     "Escrow Agent" means Wells Fargo Bank, N.A., 9062 Old Annapolis Road, Columbia, MD 21045.

17.     "Escrow Agreement" means the Escrow Agreement to be negotiated with the Escrow Agent in good faith by Plaintiffs and Northeast Health.

18.     "Final Judgment" means a final order approving this Settlement Agreement under Rule 23(e) of the Federal Rules of Civil Procedure together with entry of the final judgment dismissing the Class Action and all claims therein against Northeast Health on the merits with prejudice as to all Class Members.   It is agreed that neither the provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. § 1651, shall be taken into account in determining when the judgment in this Class Action becomes final.

19.     "Health care facility" means any entity employing nurses to provide health care services, except that, for Northeast Health, the term does not include any entity owned or controlled by means of corporate membership or otherwise, either directly or indirectly by Northeast Health.

20.     "Historic compensation" means compensation that was at one time, but that is no longer, utilized in paying any employee.

21.     "Hospital defendant" means any defendant employing nurses to provide health care services.

22.     "Joint venture" is a joint arrangement in which two or more health care facilities pool their resources to finance a venture and substantially share in the risk of adverse financial results.

23.     "Non-Settling Defendant" means any Defendant other than Northeast Health named in the Second Amended Complaint.

24.     "Nurse" means any person employed to work in a hospital in the Albany area as a Staff RN any time from June 20, 2002 to the present.

25.     "Opt-Out" means a person who would have been a member of the Settlement Class except for his or her timely and valid request for exclusion.

26.     "Opt-Out Percentage" means the Opt Outs divided by the Total Number of Class Members.

27.     "Plaintiffs" means Wendy Fleischman and Cindy Cullen.

28.     "Prospective compensation" means compensation that a defendant or health care facility plans or proposes to pay any employee.

29.     "Registered Nurse" means any individual licensed under the Title 8, Article 139, Sections 6905 and 6906 of New York State Education Law and Part 64 of the Regulations of the Commissioner of Education to practice nursing.

30.     "Registered Nurse Wages" means the gross amount paid in wages to registered nurses who provided direct patient care in short term acute care facilities other than as supervisory, managerial or advance practice nurses while employed by Defendants within the Albany-Schenectady-Troy Metropolitan Statistical Area at any time from June 20, 2002 through June 20, 2006.

31.     "Released Claims" means those claims released pursuant to Paragraph 51 of this Settlement Agreement.

32.     "Releasees" shall refer jointly and severally, individually and collectively to Northeast Health, and its respective past and present parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, servants, representatives (and the parents, subsidiaries, and affiliates' past and present officers, directors, employees, agents, attorneys, servants, and representatives), and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing.

33.     "Releasors" shall refer jointly and severally, individually and collectively to Plaintiffs, the Class Members, and their predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing.

34.     "Settlement Amount" means $1,250,872 USD, which amounts to 2% of the total Registered Nurse Wages paid by Northeast Health to members of the Class during the Class Period.

35.     "Settlement Class" means all members of the Class who do not timely and validly elect to be excluded from the Settlement Class, certified for purposes of this Settlement Agreement only.

36.     "Settlement Fund" means the Settlement Amount plus any interest earned on that amount.

37.     "Northeast Health" means Northeast Health, Inc., Samaritan Hospital, Albany Memorial Hospital and their respective past and present parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, servants, representatives (and the parents, subsidiaries, and affiliates' past and present officers, directors, employees, agents,

attorneys, servants, and representatives), and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing.

38.     "Taxes" means any sums due to be paid to governmental taxing authorities from the Settlement Fund, including taxes, estimated taxes, interest and penalties.

39.     "Tax Expenses" means any and all reasonable fees and costs due to be paid to tax preparers, tax consultants or others for determining the tax liability of the Settlement Fund.

40.     "Total Registered Nurse Wages" means all Registered Nurse Wages paid by Defendants to members of the Class from June 20, 2002 through June 20, 2006.  Northeast Health represents that it paid Registered Nurse Wages to members of the Class from June 20, 2002 through June 20, 2006 totaling $62,543,576, as set forth in Attachment A.

## B.     Payment

41.     The Settlement Amount will be deposited in the Escrow Account by Northeast Health within five (5) days of the Court's final approval of this Settlement Agreement regardless of whether the final approval order is appealed.

## C.     Class Certification

42.     Plaintiffs shall seek, and Northeast Health shall not object to, certification of the Settlement Class as defined above for the purposes of this Settlement Agreement only, and appointment of certain Class Counsel as lead counsel for the Class.

## D.     Approval of this Settlement Agreement and Dismissal of Claims

43.     Plaintiffs and Northeast Health shall use their best efforts to effectuate this Settlement Agreement, and Plaintiffs shall promptly seek to obtain the Court's preliminary and final approval of this Settlement Agreement (including providing class notice under

Federal Rules of Civil Procedure 23 (c) and (e)) and to secure the prompt, complete, and final dismissal with prejudice of the Class Action as to Northeast Health only.

44.     Within 30 business days after the Execution Date, Plaintiffs shall submit to the Court, and Northeast Health shall not object to, a motion requesting entry of an Order preliminarily approving the settlement, certifying the Class and authorizing dissemination of notice to the Class, a stay of all proceedings against Northeast Health except those proceedings provided for or required by this Settlement Agreement, and a request to authorize Class Counsel to pay the following expenses from the Settlement Fund as they are incurred:  the cost of providing notice to the Class, Taxes, Tax Expenses, and charges of the Escrow Agent.  The motion shall include:  (1) the definition of the Settlement Class to be certified by the Court pursuant to this Settlement Agreement; and (2) the proposed form of, method for, and timetable for dissemination of notice to the Class.

45.     Within ten (10) days of the Settlement Agreement's submission to the Court, Northeast Health shall serve upon the appropriate Federal official and the appropriate State official of each state in which a class member resides a notice of the proposed settlement, in accordance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.  Plaintiffs shall assist Northeast Health in making a reasonable estimate of: (a) the number of class members who reside in each state; and (b) for each state, the estimated proportionate share of the claims of resident class members to the entire settlement, as required by 28 U.S.C. § 1715 (b)(7).

46.     Upon preliminary approval by the Court of this Settlement Agreement, Class Counsel or their designee shall, in accordance with Fed. R. Civ. P. 23 and the Court's order, provide each member of the Class who can be identified by reasonable means with

9

adequate notice by such means as the Court shall require.  In order to facilitate mailed

notice, within five (5) days of preliminary approval of the Settlement Agreement, Northeast

Health shall provide to Class Counsel or the Claims Administrator, to the extent it has not

already been provided, a list of registered nurses in the Class (in electronic form, if

available) (the "Registered Nurse List") who worked at Northeast Health during the Class

Period.  The Registered Nurse List shall contain addresses for each member of the Class to

the extent reasonably available.  Within the time period established by the Court, Class

Counsel or their designee shall provide the requisite notice to the Class Members.  This

information included in the Registered Nurse List shall be subject to the Protective Order

entered in the Class Action.

47.    Class Counsel shall take all necessary and appropriate steps to ensure that notice of

the settlement hearings is provided in accordance with the orders of the Court.

48.    Northeast Health shall have no liability with respect to the giving of notice of the

settlement to potential Class Members.

49.    Within forty-five (45) days of delivering notice to Class Members, Class Counsel

shall submit motions for final approval of the Settlement Agreement to the Court after

notice of the settlement hearings is given to the members of the Class.  Plaintiffs shall seek,

and Northeast Health shall not object to, entry of a final judgment order:

> (a) approving finally this Settlement Agreement and its terms as being a
> fair, reasonable, and adequate settlement as to the Class Members
> within the meaning of Rule 23 of the Federal Rules of Civil Procedure
> and directing its consummation according to its terms;

> (b) directing that, as to Northeast Health, the Class Action be dismissed
> with prejudice and, except as provided for in this Settlement
> Agreement, without costs;

      (c) reserving exclusive jurisdiction over the settlement and this Settlement Agreement, including the administration and consummation of this settlement;

      (d) finding under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal as to Northeast Health shall be final and entered forthwith; and

      (e) requiring Class Counsel to file with the Clerk of the Court a record of members of the Class who timely and validly excluded themselves from the settlement and to provide a copy to counsel for Northeast Health.

50.    This Settlement Agreement shall become final only upon:  (a) the entry by the Court of the Final Judgment, and (b) the expiration of the time for appeal or to seek permission to appeal from the Court's approval of the Settlement Agreement and entry of the Final Judgment or, if an appeal from an approval and Final Judgment is taken, the affirmance of such Final Judgment in its entirety, without modification, by the court of last resort to which an appeal of such Final Judgment may be taken.  It is agreed that neither the provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. § 1651, shall be taken into account in determining when the judgment in this Class Action becomes final.

## E.    Release and Discharge

51.    Upon the occurrence of the Effective Date and in consideration of the payment of the Settlement Amount, the Releasees shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, and causes of action, whether class, individual, or otherwise in nature, damages whenever incurred, liabilities of any nature whatsoever, including costs, expenses, penalties, and attorneys' fees that Releasors, or anyone of them, whether directly, representatively, derivatively, or in any other capacity, ever had, now have, or hereafter can, shall, or may have against the Releasees, whether

known or unknown, relating in any way to any anticompetitive conduct by the Releasees prior to the Execution Date concerning the monetary compensation, non-monetary compensation, recruitment, employment, and/or retention in short term acute care facilities in Albany of and as registered nurses in the Class.  The Released Claims include all claims related to or arising out of the facts, occurrences, transactions, or other matters alleged in the Class Action during the Class Period.  The Releasors shall not, after the Effective Date, seek to recover against any of the Releasees for any of the Released Claims.

### F.   Determination of Opt-Outs

52.    Class Counsel or their designee shall cause copies of any requests for exclusion from the Settlement Class to be sent to Northeast Health as they are received.

53.    Within fifteen (15) days of the last day for members of the Class to request exclusion from the Settlement Class, Class Counsel shall provide Northeast Health a list of the Class Members who have opted out.  Northeast Health and Class Counsel shall then attempt to agree on the Opt-Out Percentage.

54.    To the extent that Opt-Outs submit timely and valid requests for exclusion from the Settlement Class, the Settlement Fund shall be reduced by the amount as calculated below:

> (a) The Settlement Fund shall be reduced by the Opt-Out Percentage, that is the Total Number of Opt Out relative to the Total Number of Class Members.  For example, if the Opt-Out Percentage is 5% and the Settlement Fund is $12 million, the Settlement Fund would be reduced by $600,000.
>
> > (1) Northeast Health agrees that it shall make no efforts to encourage or induce any Class Member to opt out of the class.
>
> (b) If the Opt-Out Percentage (as defined in Subparagraph (a) above) is greater than 10%, then this Settlement Agreement shall become null and void at Northeast Health's option.

55.     To the extent that the Settlement Fund is reduced pursuant to Paragraph 54(a) above, funds equal to the amount of the reduction shall be returned to Northeast Health. Any funds due to be returned to Northeast Health pursuant to this Paragraph 55 shall be returned to Northeast Health, with interest, within thirty (30) days of the Court's ruling on final approval.

### G.     The Settlement Fund

56.     Each Class Member shall look solely to the Settlement Fund for settlement and satisfaction, as provided herein, of all claims released by the Releasors pursuant to Paragraph 51 herein.  Except as provided by order of the Court, no Class Member shall have any interest in the Settlement Fund or any portion thereof.

57.     Except as otherwise provided in this Settlement Agreement, the approval of the Court shall be required prior to the distribution of any monies from the Escrow Account.

58.     The Settlement Amount shall be invested in either the Wells Fargo Money Market Depository Account or the Wells Fargo Advantage Government Money Market Fund.  All interest earned by the Settlement Amount shall become and remain part of the Settlement Fund.

59.     With Court approval, the Settlement Fund may be distributed to pay the following expenses as they are incurred:  the cost of providing notice to the Class, Taxes, Tax Expenses, and charges of the Escrow Agent.

60.     The Settlement Fund shall be distributed, after the Effective Date (except as provided in Paragraph 59 above), in accordance with a plan that Class Counsel shall have submitted and the Court shall have approved prior to any such distribution.

61.     Northeast Health shall not have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, use, or administration of the Settlement Fund including, but not limited to, the costs and expenses of such investment, distribution, or administration, except as otherwise provided in this Settlement Agreement.

62.     Northeast Health shall have no responsibility whatsoever for the allocation or distribution of the Settlement Amount and shall not be responsible or otherwise liable for any disputes relating to the amount, allocation, or distribution of any fees, costs, or awards. Further, Northeast Health shall not be liable for any additional payments to the Class Members or Class Counsel pursuant to this Settlement Agreement.

63.     Plaintiffs and Class Counsel shall be reimbursed and paid solely out of the Settlement Fund for all expenses including, but not limited to, attorneys' fees and past, current, or future litigation expenses (including, but not limited to, experts' and consultants' fees and expenses).

**H.     Rescission if this Settlement Agreement is Not Finally Approved**

64.      (a) Except as provided in paragraph (b) below, if the Court declines to approve this Settlement Agreement, or any part hereof, or if such approval is materially modified or set aside on appeal, or if the Court does not enter the Final Judgment, or if the Court enters the Final Judgment and order and appellate review is sought and, on such review, such Final Judgment is not affirmed, then Northeast Health and Plaintiffs shall, each in their sole discretion, have the option to rescind this Settlement Agreement in its entirety, and if either rescinds this Settlement Agreement, any and all amounts constituting the Settlement Fund less any amounts disbursed or approved to be disbursed pursuant to Paragraph 59 above (the "Net Settlement Fund"), shall be returned forthwith to Northeast Health.  In such event,

the Escrow Agent shall disburse the Net Settlement Fund to Northeast Health in accordance with this Paragraph within thirty (30) days after receipt of either (i) written notice signed by counsel for Northeast Health and Class Counsel stating that the Settlement Agreement has been rescinded, canceled, or terminated, or (ii) any order of the Court so directing.  If the Settlement Agreement is rescinded, canceled, or terminated pursuant to this Paragraph, any obligations pursuant to this Settlement Agreement (other than repayment of the Settlement Fund (as set forth above) shall cease immediately.

(b)     Neither party may withdraw from this Settlement Agreement on the basis of modifications to the distribution plan required by the court as a condition of approval.

65.     Northeast Health and Plaintiffs expressly reserve all of their respective rights to the extent that this Settlement Agreement does not become effective or if this Settlement Agreement is rescinded or terminated by Northeast Health or Plaintiffs pursuant to Paragraph 64 of this Settlement Agreement.

### I.     Taxes

66.     Class Counsel shall be solely responsible for directing the Claims Administrator to file all informational and other tax returns necessary to report any taxable and/or net taxable income earned by the Settlement Fund.  Further, Class Counsel shall be solely responsible for directing the Escrow Agent to make any tax payments, including interest and penalties due, on income earned by the Settlement Fund.  Northeast Health shall have no responsibility to make any tax filings relating to this Settlement Agreement or the Settlement Fund, and shall have no responsibility to pay Taxes on any income earned by the Settlement Fund, or to pay any Taxes with respect thereto unless the settlement is not consummated and the Net Settlement Fund is returned to Northeast Health.  Other than as

specifically set forth herein, Northeast Health shall have no responsibility for the payment of Taxes or Tax Expenses.  If for any reason, for any period of time, Northeast Health is required to pay Taxes on income earned by the Settlement Fund, the Escrow Agent shall, upon written instructions from Northeast Health with notice to Class Counsel, timely pay to Northeast Health sufficient funds to enable it to pay all Taxes (state, federal, or other) on income earned by the applicable Settlement Funds.

67.     For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "Administrator" of the Escrow Accounts shall be the Claims Administrator, who shall timely and properly file or cause to be filed on a timely basis, all tax returns necessary or advisable with respect to the Escrow Accounts (including without limitation all income tax returns, all informational returns, and all returns described in Treas. Reg. § 1.468B-2(1)).

68.     The parties to this Settlement Agreement and their counsel shall treat, and shall cause the Claims Administrator to treat, the Escrow Account as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.  The parties, their counsel, the Claims Administrator, and the Escrow Agent agree that they will not ask the Court to take any action inconsistent with the treatment of the Escrow Account in such manner.  In addition, the Claims Administrator and, as required, the parties shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-l(j)) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Claims Administrator timely and properly to prepare and deliver the necessary documentation for

signature by all necessary parties and thereafter to cause the appropriate filing to occur.  All provisions of this Settlement Agreement shall be interpreted in a manner that is consistent with the Escrow Account being a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.

### J.     Use of this Agreement

69.     This Agreement and the fact of settlement of Plaintiffs' claims relating to registered nurses, including all negotiation and discussions leading up to the settlement, shall not constitute any admission of liability or other evidence of any violation of any statute or law or of any liability or wrongdoing by a Releasee or of the truth of any of the claims or allegations Plaintiffs may have asserted against Releasees.

70.     Neither this Agreement, nor any of its recitals, terms or provisions, nor any of the negotiations or proceedings connected with it, nor any other action taken to carry out this Agreement, shall be referred to, offered as evidence or received in evidence in any pending or future civil, criminal, or administrative action or proceedings, except in a proceeding to enforce this Agreement, or to defend against the assertion of the Released Claims, or to demonstrate the amount of damages owed by any Non-Settling Defendant in this matter or as otherwise required by law.

### K.     Most Favored Nation Clause

71.     (a) Subject to the exceptions set forth in Paragraph 72 below, if the Plaintiffs enter into a settlement with any other Defendant in this action for less than two percent (2.0%) of the total Registered Nurse Wages paid to members of the settling class by that Non-Settling Defendant during the period June 20, 2002 through June 20, 2006, then the Plaintiffs shall refund to Northeast Health the percentage difference between 2.0% and the percentage paid

by the Non-Settling Defendant, multiplied by the Settlement Amount paid by Northeast Health pursuant to this Agreement.  For example, if Plaintiffs enter into an agreement with another Defendant to settle for 1% of the total Registered Nurse Wages paid by that Defendant during the period June 20, 2002 through June 20, 2006, then Class Members will refund to Northeast Health 50% of the funds they were allocated from the Settlement Funds paid by Northeast Health.  If Plaintiffs enter into an agreement with a Defendant to settle for 1.5% of the total Registered Nurse Wages paid by that Defendant during the period June 20, 2002 through June 20, 2006, then Class Members will refund to Northeast Health 25% of the funds they were allocated from the Settlement Funds paid by Northeast Health.

(b)  Subject to the exceptions set forth in Paragraph 72 below, if the Plaintiffs enter into a settlement with any other Defendant in this action for two percent (2.0%) or less of the total Registered Nurse Wages paid to members of the settling class by that Non-Settling Defendant during the period June 20, 2002 through June 20, 2006, then NEH shall have the option to replace all provisions in this Settlement Agreement with all provisions in the settlement agreement with such other Defendant that address the same subject matter.

72.    The provisions of Paragraph 71 above shall not apply if: (a) there have been material changes in the litigation, including but not limited to an adverse decision against the plaintiffs on class certification or any dispositive motion by a Non-Settling Defendant; or (b) a subsequent settlement with a Non-Settling Defendant reflects, based on all relevant evidence, that the Non-Settling Defendant has a significant lesser likelihood than Northeast Health of being found liable at trial; or (c) a subsequent settlement with a Non-Settling Defendant reflects the Non-Settling Defendant's financial inability to pay a higher settlement amount.

73.    Plaintiffs agree that if (1) the Settlement Fund has been distributed to the Class following compliance with the procedures established in paragraphs 43-50; and (2) Plaintiffs subsequently settle with a Non-Settling Defendant at less than two percent (2%) of the Total Registered Nurse Wages paid to members of the Class by that Non-Settling Defendant during the period June 20, 2002 through June 2006; and (3) none of the exceptions to the Most Favored Nation clause listed in paragraph 72 apply, Plaintiffs will include in the settlement agreement with the Non-Settling Defendant a provision requiring payment -- out of the amount paid or to be paid by that Non-Settling Defendant --  the amount owed to Northeast Health by virtue of the Most Favored Nation clause and specifically application of paragraph 71 above.  To the extent the amount paid or to be paid by the Non-Settling Defendant is not sufficient to cover the amount required to be paid to Northeast Health by virtue of this Most Favored Nation clause, Plaintiffs obligation to Northeast Health as a result of the operation of paragraph 71 will carry-over to the amount collected in settlement or judgment from the next Non-Settling Defendant until all amounts owed Northeast Health as a result of the operation of this paragraph are paid.

### L.    Access to Northeast Health Employees and Documents

74.    The Parties agree that Northeast Health and its attorneys shall provide the following cooperation to Plaintiffs and their counsel in further prosecution of the Action against the Non-Settling Defendants:

> (a)    Plaintiffs shall be entitled to interview up to five Northeast Health current and former administrative employees upon reasonable notice.  Northeast Health will secure the attendance of current employees and will use its best efforts to secure the attendance of former employees for the interviews.  The interviews together will not exceed 20 hours in duration; Northeast may have its counsel present at each interview; and the subject matter of each interview shall be limited to the allegations of the Amended Complaint.

(b)     With respect to three of the five administrative employees described in paragraph (a) above, to be selected by Plaintiffs, Northeast Health shall, upon reasonable notice, make available its current administrative employees and shall use its best efforts to make available its former administrative employees to testify at trial;

(c)     With respect to the four of the five administrative employees described in paragraph (a) above, to be selected by Plaintiffs, Northeast Health shall, upon reasonable notice, make available its current employees and shall use its best efforts to make available former employees for deposition(s) of reasonable duration and/or provide a reasonable number of declarations;

(d)     A FRE 902(11) declaration shall be provided upon request of Class Counsel;

(e)     Northeast Health will provide answers to reasonable questions from Class Counsel or its experts about all of Northeast Health databases; and

(f)     Northeast Health will produce documents and any required privilege list in response to outstanding document production requests by Plaintiffs.  Reasonable requests for additional documents and data shall be accommodated as reasonably necessary for the prosecution of the Albany action.

### M.     Antitrust Compliance

75.     Except as provided for by Paragraph 76 and 77, Northeast Health,  including without limitation its executives, human resource and recruiting personnel, will not:

(a)   agree with any other health care facility in the Albany MSA to fix, limit or maintain the compensation paid to nurses in violation of applicable law;

(b)  agree with any other health care facility in the Albany MSA to communicate or exchange information concerning the current or prospective compensation paid to nurses; or

(c)  communicate to, request from, or exchange with any other health care facility in the Albany MSA or third party other than one owned directly or indirectly by Northeast Health, information concerning the current or prospective compensation paid to nurses.

76.     Nothing in this Agreement shall prevent Northeast Health from:

(a) communicating its own historic or current compensation information exclusively for the purpose of recruiting nurses for employment;

(b) communicating its own prospective compensation information to an individual nurse in connection with an offer or discussion of employment;

(c) providing or receiving historic or current compensation information to or from a third party, other than a health care facility in the Albany MSA, in response to a compensation survey conducted in accordance with the conditions detailed below:

(i)  the survey is managed by a third party;

(ii)  the survey includes only historic or current compensation information, and does not request or disseminate prospective compensation information;

(iii) the information requested of survey participants is at least three months past the effective date;

(iv) the survey disseminates only aggregate data, and each disseminated statistic is based on data from at least five (5) participants; and any information disseminated in such a survey is sufficiently aggregated that recipients cannot identify the compensation paid by any one survey participant;

(v) no participant's data represents more than twenty-five (25) percent on a weighted basis of each aggregated statistic; and

(vi) representatives, agents, independent contractors, or
employees of any hospital defendant or any health
care facility in the Albany MSA do not have access
to any disaggregated data produced in response to
any request for information in connection with the
survey, unless Northeast Health is unaware of such
access.

77.     Nothing in this Agreement shall prohibit incidental and nonsystematic communication between nurses in the employ of Northeast Health and those in the employ of other Defendants or other health care facilities in the Albany MSA, provided these communications are not performed at the request, direction, suggestion, or order of a head nurse or member of the human resources or compensation staff, and the nurse has no role in setting nurse compensation.

78.     Nothing in this agreement prohibits Northeast Health from communicating with another health care facility about nurse compensation in connection with a proposed merger with, or acquisition by or of, such facility, to the extent such communication is permissible under law.

**79.**     Northeast Health shall receive at least thirty (30) days prior written notice to counsel of a claim of potential violation of the above provisions by Plaintiffs, and an opportunity to cure any such alleged violation, before any motion for injunctive relief or any other remedy plaintiffs may have under this Agreement is initiated.

80.     The Antitrust Compliance portion of this Agreement, Paragraphs 75-78, shall expire  three (3) years from the date of final approval.

81.     Upon expiration of the term of the Antitrust Compliance portion of this Agreement, Northeast Health will certify to the Court that Northeast Health has complied with the terms of this Agreement.

### N.     Miscellaneous

82.     This Settlement Agreement including its Attachments constitute the entire agreement among Plaintiffs and Northeast Health pertaining to the settlement of the Class Action against Northeast Health only and supersede any and all prior and contemporaneous undertakings of Plaintiffs and Northeast Health in connection therewith.  This Settlement Agreement may be modified or amended only by a writing executed by Class Counsel and Northeast Health and approved by the Court.

83.     All terms of this Settlement Agreement shall be governed by and interpreted according to the substantive laws of New York without regard to its choice of law or conflict of law principles.

84.     Neither Northeast Health nor Plaintiffs, nor any of them, shall be considered to be the drafter of this Settlement Agreement, or any of their provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Settlement Agreement.

85.     Nothing expressed or implied in this Settlement Agreement is intended to or shall be construed to confer upon or give any person or entity other than Plaintiffs, Class Members, Northeast Health, Releasors, and Releasees any right or remedy under or by reason of this Settlement Agreement.

86.     The United States District Court for the Northern District of New York shall retain exclusive jurisdiction over all matters relating to the implementation and enforcement of the Settlement Agreement.

87.     This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Releasors and Releasees.  Without limiting the generality of the foregoing:  (a) each and every covenant and agreement made herein by Plaintiffs shall be binding upon all Class Members and Releasors, and (b) each and every covenant and agreement made herein by Northeast Health shall be binding upon all Releasees.

88.     Where this Settlement Agreement requires any party to provide notice or any other communication or document to any other party, such notice, communication, or document shall be provided by facsimile or letter by overnight delivery at the address reflected on the signature pages.

89.     This Settlement Agreement may be executed in counterparts by Plaintiffs and Northeast Health, and a facsimile signature shall be deemed an original signature for purposes of executing this Settlement Agreement.

90.     Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Settlement Agreement, subject to Court approval.

IN WITNESS WHEREOF, the parties hereto,
through their fully authorized representatives,
have agreed to this Settlement Agreement as of
the date first herein written above.

By: _____

Daniel A. Small
**Cohen Milstein Sellers & Toll PLLC**
1100 New York Avenue, NW
Suite 500 West Tower
Washington, D.C. 20005
Tel: (202) 408-4600
Fax: (202) 408-4699

By: _____

Gordon L. Lang
**Nixon Peabody LLP**
401 9th Street, N.W.
Suite 900
Washington, DC 20004
Tel: (202) 585-8319
Fax: (202) 585-8080
**Counsel for Northeast Health**

By: _____

David P. Dean
**James & Hoffman**
1101 17th Street NW, Suite 510
Washington, D.C. 20036
Tel: (202) 496-0500
Fax: (202) 495-0555

James T. Towne Jr.
**Towne Bartkowski & DeFio Kean, PC**
450 New Karner Road
PO Box 15072,
Albany, NY 12212-5072
Tel: (518) 452-1800
Fax: (518) 452-6435

**Counsel for Plaintiffs and Class Counsel**

435366.11                                    25

**Attachment A**

**Total Registered Nurse Wages**
**As defined by Settlement Agreement, paragraph 40.**

| | 07/01/2002 12/31/2002 | 01/01/2003 12/31/2003 | 01/01/2004 12/31/2004 | 01/01/2005 12/31/2005 | 01/01/2006 06/30/2006 | 07/01/2002 06/30/2006 |
|---|---|---|---|---|---|---|
| **Albany Memor** | $3,052,831 | $6,257,309 | $7,051,344 | $7,916,130 | $3,973,553 | **$28,251,167** |
| **Samaritan** | $3,700,412 | $7,477,366 | $8,543,559 | $9,680,375 | $4,890,697 | **$34,292,409** |
| **Total** | $6,753,243 | $13,734,675 | $15,594,903 | $17,596,505 | $8,864,250 | **$62,543,576** |

**Total Registered Nurse Wages $62,543,576**