## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

_____

| | |
|---|---|
| Wendy Fleischman and Cindy Cullen, ) | |
| On behalf of themselves and all others ) | |
| similarly situated, ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 06-cv-0765-TJM-DRH |
| ) | |
| Albany Medical Center; Ellis Hospital; ) | |
| Northeast Health; Seton Health System; ) | |
| St. Peter's Health Care Service, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
## FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH SETON HEALTH

**TABLE OF CONTENTS**

I.    INTRODUCTION ..........................................................................................................1

II.   BACKGROUND .........................................................................................................2

      A.   The Litigation.................................................................................................2

      B.   The Settlement ...............................................................................................3

           1.   The Seton Settlement Class ...............................................................4

           2.   The Settlement Amount .....................................................................4

           3.   Other Benefits to the Seton Settlement Class and the Litigation Class ..................5

           4.   Release ..............................................................................................6

      C.   The Timeline ..................................................................................................7

III.  THE COURT SHOULD GRANT PRELIMINARY APPROVAL....................................8

      A.   Standard for Granting Preliminary Approval ................................................8

      B.   The Proposed Settlement is in the Range of Possible Approval as Fair,
           Reasonable and Adequate ............................................................................10

      C.   The Proposed Settlement Does Not Disclose Grounds to Doubt Its Fairness............12

      D.   The Proposed Settlement Achieves an Excellent Result for the Class,
           Particularly Given the Expense, Duration and Uncertainty of Continued
           Litigation.....................................................................................................13

IV.   CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS IS WARRANTED..14

      A.   The Requirements of Rule 23(a) and (g) Are Satisfied ..............................16

      B.   The Requirements of Rule 23(b)(3) Are Satisfied.....................................17

           1.   Violation of the Antitrust Laws ......................................................17

           2.   The Impact of the Unlawful Activity...............................................18

           3.   Damages..........................................................................................20

           4.   Superiority......................................................................................21

V.    THE FORM OF NOTICE SHOULD BE APPROVED AND NOTICE OF THE
      PROPOSED SETTLEMENT SHOULD BE GIVEN TO LITIGATION AND SETON
      SETTLEMENT CLASS MEMBERS ...........................................................................22

VI.   CONCLUSION...........................................................................................................23

i

## TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997)..........................................................................................17, 21

*In re Am. Bank Note Holographics, Inc.*,
    127 F. Supp. 2d 419 (S.D.N.Y. 2001)..................................................................12

*In re AM Int'l, Inc. Securities Litig.*,
    108 F.R.D. 190 (S.D.N.Y. 1985) ........................................................................21

*In re Auto. Refinishing Paint Antitrust Litig.*,
    MDL Docket No. 1426, 2004 WL 1068807 (E.D. Pa. May 10, 2004)...................11

*Bano v. Union Carbide Corp.*,
    273 F.3d 120 (2d Cir. 2001)..................................................................................8

*Bourlas v. Davis Law Assocs.*,
    No. CV 05-4548, 2006 WL 2513021 (E.D.N.Y. Aug. 30, 2006)...........................10

*In re Carbon Black Antitrust Litig.*,
    *No. Civ A. 03-10191-DPW*, 2005 WL 102966 (D. Mass. Jan. 18, 2005)...............21

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974).................................................................. 9-10, 11, 14

*In re Currency Conversion Fee Antitrust Litig.*,
    MDL No. 1409, 2006 U.S. Dist. Lexis 82167 (S.D.N.Y. Nov. 8, 2006)............... 8-9

*In re Dynamic Random Access Memor (DRAM) Antitrust Litig.*,
    No. M 02-1486, 2006 WL 1530166 (N.D. Cal. June 5, 2006) .................................20

*Fischer Bros., Inc. v. Mueller Brass Co.*,
    630 F. Supp. 493 (E.D. Pa. 1985) ........................................................................11

*Foti v. NCO Fin. Sys.*,
    No. 04 Civ. 00707, 2008 U.S. Dist. LEXIS 16511 (S.D.N.Y. Feb. 20, 2008) .........8

*In re Holocaust Victim Assets Litig.*,
    225 F.3d 191 (2d Cir. 2000).................................................................................15

*In re Host America Corp. Secs. Litig.*,
    No. 05-CV- 1250, 2007 WL 3048865 (D. Conn. Oct. 18, 2007) ...................... 14-15

*Joblove v. Barr Labs.*,
   466 F.3d 187 (2d Cir. 2006)..................................................................................8

*In re Linerboard Antitrust Litig.*,
   321 F. Supp. 2d 619 (E.D. Pa. 2004) ..................................................................11

*In re Luxottica Group S.p.A. Secs. Litig.*,
   233 F.R.D. 306 (E.D.N.Y. 2006) ..........................................................................8

*In re Medical X-Ray Film Antitrust Litig.*,
   No. CV 93-5904, 1997 WL 33320580 (E.D.N.Y. Dec. 26, 1997) ..........................9

*In re Michael Milken & Assocs. Sec. Litig.*,
   150 F.R.D. 57 (S.D.N.Y. 1993) ..........................................................................13

*In re NASDAQ Market-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) ............................................................................9

*In re NASDAQ Market-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) ........................................................................13

*In re Playmobil Antitrust Litig.*,
   35 F. Supp. 2d 231 (E.D.N.Y. 1998) ..................................................................15

*In re Potash Antitrust Litig.*,
   159 F.R.D. 682 (D. Minn. 1995) ........................................................................21

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995) ................................................................8, 9, 10

*In re Pub. Offering Sec. Litig.*,
   471 F.3d 24 (2d Cir. 2006) ................................................................................17

*In re Sumitomo Copper Litig.*,
   182 F.R.D. 85 (S.D.N.Y. 1998) ..........................................................................21

*In re Sumitomo Copper Litig.*,
   189 F.R.D. 274 (S.D.N.Y. 1999) ........................................................................10

*In re Visa Check/MasterMoney Antitrust Litig.*,
   280 F.3d 124 (2d. Cir. 2001) ............................................................................17

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972) ..............................................................................10

*Pecere v. Empire Blue Cross and Blue Shield*,
194 F.R.D. 66 (E.D.N.Y. 2000) ...........................................................15

*Velez v. Novartis Pharms. Corp.*,
244 F.R.D. 243 (S.D.N.Y. 2007) ..........................................................16

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982) ..................................................................15

*Weseley v. Spear, Leeds & Kellogg*,
711 F. Supp. 713 (E.D.N.Y. 1989) ......................................................13

## RULES

Fed. R. Civ. P.  23(b)(3) ...................................................... 17, 20-22

Fed. R. Civ. P. 23(c)(2)(B) ...........................................................22

Fed. R. Civ. P. 23(e) ............................................................. 7, 8, 12

Fed. R. Civ. P. 23(g)(1)(B) ...........................................................16

## OTHER

Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS,
§8.2 (4th ed. 2002) ............................................................................22

MANUAL FOR COMPLEX LITIGATION (FOURTH)
§21.162 (2004) ..................................................................................9

## I.  INTRODUCTION

After almost three years of litigation and hard fought, arm's length negotiation by highly experienced, capable counsel, Seton Health and Plaintiffs (together "the parties") reached a Settlement Agreement resolving the claims of a proposed class of nurses who provide direct patient care in certain Albany-area hospitals (the "Seton Settlement Class" as defined in II.B.1 below).[1]  The Settlement Agreement reached between the parties secures a $744,739 cash payment and certain future formal and informal discovery cooperation from Seton for the Seton Settlement Class.

Therefore, Plaintiffs respectfully request that the Court enter an order: (1) preliminarily approving the settlement and finding that the proposed settlement is sufficiently fair, reasonable, and adequate to allow dissemination of notice of the settlement to the proposed Seton Settlement Class and also to other members of a class previously certified by this Court on July 28, 2008; (2) certifying the Seton Settlement Class, as defined below; (3) appointing Cohen Milstein Sellers & Toll, P.L.L.C. ("CMST"), James & Hoffman, PC, ("J&H"), and Towne Bartkowski & DeFio Kean, PC, as Class Counsel for the Seton Settlement Class, and Wendy Fleischman and Cindy Cullen as Class Representatives; (4) approving the form of the Legal Notice of Class Action Settlement (the "Notice"), attached as Exhibit 1 to the proposed Order; (5) approving the notice plan and directing that notice be mailed; (6) establishing a deadline for filing papers in support of final approval of the proposed settlement and a request for reimbursement of costs and expenses; (7) establishing a deadline for the filing of objections by Seton Settlement Class members; (8) establishing a deadline for Seton Settlement Class members to exclude themselves from the proposed Seton Settlement Class; (9) establishing a date for a hearing on final approval of the proposed settlement; (10) ordering a stay of all proceedings against Seton Health except

---

[1]  The Settlement Class for purposes of the Seton Health settlement is identical to the class for which Plaintiffs are seeking certification for purposes of a separate settlement agreement with Northeast Health. *See* Docket No 248.

those proceedings provided for or required by the Settlement Agreement; and (11) authorizing class counsel to pay the cost of providing notice to the class that has been certified by this Court for litigation purposes, taxes, tax expenses and charges of the escrow agent from the Settlement Fund as they are incurred.

## II.  BACKGROUND

### A.  The Litigation

Plaintiffs filed this lawsuit individually and as representatives of all persons employed by any defendant or co-conspirator to work in a hospital in the Albany MSA as a Registered Nurse ("RN") from June 20, 2002 to the present (the "Class Period").  The Second Amended Complaint (the "Complaint") (Docket No. 114) alleges that Defendant hospitals engaged in a conspiracy to depress the wages of their hospital nurses and to exchange information regarding nurse pay with the effect of suppressing wages, and that as a result of the alleged conduct of Defendants, the wages of RNs were depressed during the Class Period.  The lawsuit seeks damages, injunctive relief, attorneys' fees and costs from Defendants.

Pursuant to Defendants' October 2006 request, the Court bifurcated discovery between class certification and merits (Docket No. 57).  In January 2007, the Court denied Defendant Ellis Hospital's motion for summary judgment, which sought dismissal because its nurses were paid according to a collectively bargained agreement (Docket No. 85).  Shortly thereafter, the parties began class certification discovery.  During the course of discovery, Plaintiffs analyzed and reviewed over 83,000 documents, including data regarding Defendants' RN employees, produced by Defendants and third parties.  Plaintiffs also deposed six individuals employed by the various Defendant hospitals, including one employed by Seton Health, consulted with their economic expert, Professor Henry Farber, who created a Report and Rebuttal Report in support of Plaintiffs' motion for class certification, prepared Professor Farber for deposition and

prepared for and deposed Defendants' experts, Professors Robert D. Willig and Daniel S. Hamermesh.

Following the close of class certification discovery and the full briefing of Plaintiffs' motion for class certification, the Court certified the following class:

> All persons employed by any defendant or co-conspirator to work in a hospital in the Albany MSA as an RN at any time from June 20, 2002 until the present.

*See* July 28, 2008 Decision & Order (Docket No. 218) (hereinafter "Class Certification Decision"). This "Litigation Class" includes RNs who provide direct patient care in acute care facilities, as well as their supervisors, managers and advanced practice nurses. This class was certified with respect to whether there has been a violation of antitrust law and whether there has been legal injury to the class because of the alleged conspiracy.

On March 9, 2009, Plaintiffs filed a motion for preliminary approval of a settlement with Defendant Northeast Health ("NEH"), to establish a schedule for final approval of the settlement; and for the certification of an NEH Settlement Class that would include all registered nurses who provided direct patient care in short term acute care facilities other than as supervisory, managerial or advanced practice nurses while employed by Defendants within the Albany-Schenectady-Troy Metropolitan Statistical Area at any time from June 20, 2002 through June 20, 2006. The Court put the motion on the Court's calendar for April 13, 2009.

**B. The Settlement**

After extensive negotiations stretching over many months – during which the merits of each party's positions were thoroughly discussed, evaluated and negotiated – a settlement with Seton Health was reached. The discussions were founded on a full understanding of the strengths and weaknesses of the case, based, *inter alia*, on information gleaned from discovery. The basic terms of the Settlement Agreement include:

### 1.  **The Seton Settlement Class**

The parties have agreed to define the "Seton Settlement Class" as follows:

> All registered nurses who provided direct patient care in short term acute
> care facilities, exclusive of supervisory, managerial and advanced
> practice nurses, and who were employed by Defendants within the
> Albany-Schenectady-Troy, New York Metropolitan Statistical Area at
> any time from June 20, 2002 through June 20, 2006.

Settlement Agreement ¶ 3.  This proposed Seton Settlement Class is narrower than the litigation

Class certified by this Court ("Litigation Class").  *See* Class Certification Decision at 8; Section

II.A, *supra*.  Guided by the Court's concerns over the "degree of interchangeability"[2] and

mobility among different classes of nurses, the settling parties have agreed to a Settlement Class

that does not include supervisory, managerial or advanced practice nurses, thus rendering it

much more homogenous than the Litigation Class.[3]  The Seton Settlement Class is proposed for

settlement purposes only and does not purport to modify the Litigation Class previously certified

by this Court.

### 2.  **The Settlement Amount**

The proposed Settlement Agreement with Seton Health provides that Seton Health will

pay or cause to be paid $744,739 in cash for the benefit of the Seton Settlement Class, which

represents 2.05 percent of the total Registered Nurse Wages paid by Seton Health to members of

the Class during the Class Period.  *Id.* ¶ 23.  This amount will be deposited in the Escrow

---

[2] Class Certification Decision at 10.

[3]  In response to Plaintiffs' earlier motion for preliminary approval of the Northeast Health Settlement, two non-settling Defendants accused Plaintiffs and Northeast Health of colluding to define a narrowed Settlement Class, like the one proposed here, in order to accommodate some SEIU organizing interest.  *See* Defendants Response to Plaintiffs' Motion for Preliminary Approval of Settlement, Docket No. 252, at 10.  As Plaintiffs set out more fully in their Reply to the non-settling Defendants, this charge is irresponsible and unsupported, as the Northeast Settlement Class was agreed upon in direct response to this Court's Orders.  The Seton Settlement Class is exactly the same as that proposed for Northeast Health, and the SEIU and its interests played no role whatsoever in the definition of the Northeast Health or Seton Settlement Classes.   The non-settling Defendants do not raise any substantive objection to the Northeast Health settlement, instead requesting minor changes to Plaintiffs' Proposed Order certifying the settlement class.  Plaintiffs do not generally object to these changes and, to the extent feasible under Rule 23, have also incorporated them into the Proposed Order for the Seton Settlement Class.

Account by Seton Health within 21 days of the Court's final approval of this Settlement

Agreement. *Id.* ¶ 29. The Settlement Agreement allows Seton Health to reduce the Settlement

Amount based on the percentage of the Seton Settlement Class that elects to opt out from the

Settlement Agreement. *Id.* ¶ 38(b)(1). In addition, if more than 10 percent of the Seton

Settlement Class opts out of the Settlement, Seton Health has the right to terminate the

Settlement Agreement. *Id.* ¶ 38(b)(2). Moreover, if Plaintiffs enter into a settlement agreement

with any of the non-settling Defendants for less than 2.05 percent of the total Class Registered

Nurse Wages paid by that Defendant during the Class Period, then Plaintiffs and the Class,

subject to certain exceptions, will "refund to Seton Health the difference between 2.05% and the

percentage paid by the non-settling Defendant multiplied by the Settlement Amount paid by

Seton Health pursuant to this Agreement." *Id.* ¶¶ 56-59.

### 3.  <u>Other Benefits to the Seton Settlement Class and the Litigation Class</u>

Seton Health has agreed to provide three interviews or depositions of its employees, or,

for former employees, to use best efforts to facilitate such interviews or depositions, and to

comply with reasonable requests for documents and data for the remainder of the litigation. This

cooperation will aid in the prosecution of antitrust claims against the remaining Defendants,

which will provide direct benefits to both the Settlement and Litigation Classes. *See* Declaration

of Dan Small ¶ 2.

In addition, the Settlement Agreement does nothing to abrogate the rights of any member

of the Litigation Class or Seton Settlement Class to recover from any other Defendant for the

alleged participation by Seton in a conspiracy to depress nurse wages during the relevant time

period. Because the other Defendants are jointly and severally liable for any damages caused by

the alleged conduct of Seton, members of the Litigation Class, including those in the Seton

Settlement Class, may still recover damages from the non-settling Defendants for all harm

caused by Seton's participation, if any, in the alleged conspiracy.[4]

### 4. <u>Release</u>

In exchange for the above consideration from Seton Health, Plaintiffs have agreed for themselves and on behalf of the putative Seton Settlement Class, to release and discharge Seton Health and its parent entity and non-party, Ascension Health, from any and all claims against them relating in any way to any alleged anticompetitive conduct by Seton Health prior to the Execution Date concerning the monetary compensation, non-monetary compensation, recruitment, employment and/or retention of Seton Settlement Class members in short term acute care facilities in Albany. *Id.* ¶ 36. The Released Claims include all claims related to or arising out of the facts, occurrences, transactions or other matters alleged on behalf of the Seton Settlement Class members in the Class Action during the Class Period, but exclude any claims based upon a nurse's employment as a supervisory, managerial or advanced practice nurse. *Id.*

In addition, Plaintiffs' counsel confirmed in a letter several facts concerning their pre-litigation investigation in 2005: (1) the investigation included in, to least some extent, eleven Metropolitan Statistical Areas in which Ascension Health had acute care facilities and at least one (San Antonio) where Ascension had a non-acute care facility; (2) at that time, with the exception of Albany, Detroit and Nashville, counsel did not discover evidence or information sufficient to form a reasonable belief that any Ascension facility was involved or participated in any conspiracy to suppress RN wages, or to exchange information among competing facilities with the purpose or effect of suppressing such wages; and (3) Plaintiffs' counsel reviewed a letter from Ascension's outside counsel which sets forth that Ascension Health investigated compensation practices at St. Thomas Health Services in Nashville and did not uncover evidence

---

[4] In addition, the claims of the supervisory, managerial and advanced practice nurses against Seton and claims of registered nurses employed after June 20, 2006 against Seton are to be dismissed without prejudice, thereby maintaining the rights of those nurses to bring individual claims directly against Seton for the violations alleged within the Complaint.

of the type of conduct alleged to be unlawful in this action.  *See* Small Decl., Attachment A to Exhibit A.

### C.  The Timeline

Pursuant to Fed. R. Civ. P. 23(e), a hearing on the final approval of the settlement should take place after class members have received notice and have had the opportunity to evaluate the settlement.  Plaintiffs propose the following schedule:

1.   Notice to be mailed no later than 30 days following the date on which the preliminary approval order is entered by the Court ("Notice Date");

2.   Summary Notice to be published within 10 days of the Notice Date, or as soon thereafter as practical;

3.   Plaintiffs' motion for final approval of the settlement and for reimbursement of expenses, an award of attorneys fees and plaintiffs' incentive awards to be filed no later than 45 days following the Notice Date;

4.   Requests for exclusion from the proposed Seton Settlement Class must be postmarked no later than 30 days following the Notice Date;

5.   Any objections to the settlement or to the request for reimbursement of expenses, an award of attorneys' fees and plaintiffs' incentive awards must be filed with the Court and served on Class Counsel, postmarked no later than 20 days prior to the date the Court sets for a hearing on final approval;

6.   Class counsel may respond to any objections no later than 10 days prior to the date the Court sets for a hearing on final approval;

7.   Affidavits or declarations showing that notice to the Class was made in accordance with the preliminary approval order to be filed no later than 10 days prior to the date the Court sets for a hearing on final approval;

8.   A hearing before the Court on final approval of the settlement and an award of attorneys' fees, plaintiffs' incentive awards and reimbursement of expenses, to be scheduled subject to the Court's convenience, at least 80 days following the Notice Date.

## III.  THE COURT SHOULD GRANT PRELIMINARY APPROVAL

The Second Circuit has recognized that there is a strong public interest in the settlement of complex litigation, particularly class actions.  *See Joblove v. Barr Labs.*, 466 F.3d 187, 202 (2d Cir. 2006); *Bano v. Union Carbide Corp.*, 273 F.3d 120, 129-30 (2d Cir. 2001); *see also In re Luxottica Group S.p.A. Secs. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006) ("Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. There is a strong public interest in quieting any litigation; this is particularly true in class actions.") (internal quotations omitted); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.").  Under Federal Rule of Civil Procedure 23(e), a class action settlement must be approved by the court before a case may be dismissed or compromised.  The court may approve a settlement that binds class members "only after a hearing and on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  There are three steps that must be taken when a court approves a settlement:  (1) the court must preliminarily approve the proposed settlement; (2) class members must be given notice of the proposed settlement; and (3) after holding a hearing, the court must give final approval of the settlement.  *See, e.g.*, *Foti v. NCO Fin. Sys.*, No. 04 Civ. 00707, 2008 U.S. Dist. LEXIS 16511, at \*5-6, 12-13 (S.D.N.Y. Feb. 20, 2008).

### A.  Standard for Granting Preliminary Approval

"After a proposed settlement is reached, a court must determine whether the terms of the proposed settlement warrant preliminary approval . . . [i]n other words, the court must make a preliminary evaluation as to whether the proposed settlement is fair, reasonable and adequate."  *In re Currency Conversion Fee Antitrust Litig.*, MDL No. 1409, 2006 U.S. Dist. Lexis 82167, at

*18 (S.D.N.Y. Nov. 8, 2006) (internal quotations omitted).  Courts have wide discretion to

determine what information to consider at the preliminary stage; this initial assessment can be

made on the basis of information already known to the court.  MANUAL FOR COMPLEX

LITIGATION (FOURTH), at §21.162 (2004).

At the preliminary approval stage, the Court does not make a final determination of the

merits of the proposed settlement.  *Prudential*, 163 F.R.D. at 210.  Full evaluation is made at the

final approval stage, after notice of the settlement has been given to the members of the class and

class members have had an opportunity to voice their views of the settlement.  *See In re*

*NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("NASDAQ").

Preliminary approval is generally granted where the proposed settlement appears to be

the product of serious, informed, non-collusive negotiations, there are no grounds to doubt its

fairness and no other obvious deficiencies, and it falls within the range of possible approval.  *See*

*NASDAQ*, 176 F.R.D. at 102 (internal citation omitted); *In re Medical X-Ray Film Antitrust*

*Litig.*, No. CV 93-5904, 1997 WL 33320580, at *6 (E.D.N.Y. Dec. 26, 1997) ("preliminary

approval should be granted and notice of the proposed settlement given to the class if there are

no obvious deficiencies in the proposed settlement").  In preliminarily evaluating a settlement's

substantive terms, courts consider:

> (1) the complexity, expense and likely duration of the litigation;
> (2) the reaction of the class to the settlement; (3) the stage of the
> proceedings and the amount of discovery completed; (4) the risks
> of establishing liability; (5) the risks of establishing damages; (6)
> the risks of maintaining the class action through the trial; (7) the
> ability of the defendants to withstand a greater judgment; (8) the
> range of reasonableness of the settlement fund in light of the best
> possible recovery; (9) the range of reasonableness of the settlement
> fund to a possible recovery in light of all the attendant risks of
> litigation.

*City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974) (citations omitted).[5]

Finally, a "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms'-length negotiations between experienced, capable counsel after meaningful discovery." *In re Sumitomo Copper Litig.,* 189 F.R.D. 274, 280-81 (S.D.N.Y. 1999) (internal quotation marks and citation omitted).

Here, the settlement with Seton Health falls well within the range warranting preliminary approval and there are no grounds to doubt the fairness of the proposed settlement. The parties engaged in arm's length negotiations over an extended period of time, and both Seton Health and the proposed Seton Settlement Class were represented by experienced counsel. In addition, the Agreement ensures substantial and prompt payment to the Seton Settlement Class. This substantial relief is far preferable to the possibility of a smaller recovery or none at all. In short, the proposed Settlement is an excellent result and merits preliminary approval.

### B.  The Proposed Settlement is in the Range of Possible Approval as Fair, Reasonable and Adequate

"[I]n any case there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion . . ." *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972). This settlement falls well "within the range of possible approval," warranting the issuance of notice to the class. *See Prudential*, 163 F.R.D. at 210.

A recovery equivalent to 2.05 percent of the total Registered Nurse Wages paid by Seton Health to the Class during the Class Period – or approximately 20 percent of the damages estimated by Professor Farber's illustrative analysis – is a very good result. Indeed, even if the settlement were a much smaller percentage, "courts have determined that a settlement can be

---

[5] Because the Court is being asked to preliminarily approve the settlement, some of these factors do not yet come into play. *See Bourlas v. Davis Law Assocs.*, No. CV 05-4548, 2006 WL 2513021, at *7 n.7 (E.D.N.Y. Aug. 30, 2006). Courts often mention these factors but conduct a detailed analysis of each only at the final approval stage.

approved even if the benefits amount to a small percentage of the recovery sought . . . And 'there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of a potential recovery.'" *Grinnell Corp.*, 495 F.2d at 455 n.2. This percentage of recovery is also in the range of settlements approved in other antitrust cases. *See, e.g., In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619 (E.D. Pa. 2004) (settlement represented approximately two percent of sales during the Class Period); *Fischer Bros., Inc. v. Mueller Brass Co.*, 630 F. Supp. 493, 499 (E.D. Pa. 1985) (approving a settlement representing 0.2 percent of the defendant's sales, and noting that earlier settlements approved in the case represented 2.4 percent, 0.88 percent, 0.65 percent, 0.3 percent, 0.2 percent, and 0.1 percent of other settling defendants' sales); *In re Auto. Refinishing Paint Antitrust Litig.*, MDL Docket No. 1426, 2004 WL 1068807, at *2 (E.D. Pa. May 10, 2004) (settlement represented approximately two percent of sales during the Class Period). Furthermore, a $744,739 settlement is fair, reasonable, and adequate when balanced against the expense and risk that Plaintiffs and the Seton Settlement Class would face in litigating this case through trial and possible appeal against Seton Health. This is especially true because, as a result of joint and several liability, Plaintiffs' claims based on Seton Health's compensation remain in the case and the other Defendants will still be liable for any underpayments relating to that compensation.

The agreement by Seton Health to provide up to three interviews or depositions of its employees, to use its best efforts to facilitate interviews or depositions of former employees and to comply with reasonable requests for documents and data for the remainder of the litigation constitute additional fair, reasonable and adequate consideration that provides substantial value to the Settlement and Litigation Classes. The information obtained from Seton through this cooperation agreement will help Plaintiffs and Class Counsel prosecute this action against the non-settling Defendants. In addition, the non-settling Defendants are subject to joint and several

liability and members of the Litigation Class, including the members of the Seton Settlement

Class, maintain the right to collect damages from any of the non-settling Defendants for the

liability of Seton.  Furthermore, the claims of the supervisory, managerial and advanced practice

nurses against Seton will be dismissed without prejudice, allowing those nurses also to bring

claims against Seton for the violations alleged within the Complaint.  In addition, to the extent

those same nurses were also direct patient care nurses during some portion of the class period,

those nurses are still also Seton Settlement Class members and will participate in the Settlement.

### C.  The Proposed Settlement Does Not Disclose Grounds to Doubt Its Fairness

In addition to being well within the range of possible approval, the proposed settlement

does not disclose any ground for the Court to doubt its fairness.  Because vigorous, arm's length

negotiations between seasoned counsel protect against collusion and advance the fairness

considerations of Rule 23(e), settlements resulting from such negotiations are entitled to

deference from the court.  *See, e.g., In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d

419, 430 (S.D.N.Y. 2001) (noting that "the opinion of experienced and informed counsel is

entitled to considerable weight" in deciding whether to approve a settlement).

Here, the settlement was reached after vigorous, arm's length and hard-fought

negotiations.  The Class was represented by counsel with extensive experience in litigating

antitrust class actions, and Defendant was represented by similarly experienced counsel.  In

preparation for such negotiations, Class Counsel undertook a diligent and thorough investigation

of the legal and factual issues posed by this litigation.  Class Counsel reviewed over 83,000

documents produced by Seton Health and the other Defendants, including Seton Health's

employment databases, and deposed numerous individuals employed by Defendants, including

one from Seton Health.  Plaintiffs briefed their motion for class certification, which necessitated

retaining an expert labor economist who analyzed Seton Health's employment databases,

presented a damages formula and has continued to advise Class Counsel.  The class certification briefing and preparation of the related expert reports have assisted both Plaintiffs and Seton Health in identifying the material issues in this case.  Thus, Class Counsel are significantly informed as to the facts of the case and the strengths of the claims asserted.

The arm's length nature of the negotiations and the participation of experienced counsel throughout the process strongly supports the conclusion that the proposed settlement is fair, reasonable and adequate.  Nothing in the course of the negotiations or in the substance of the proposed settlement presents any reason to doubt its fairness.

### D.  The Proposed Settlement Achieves an Excellent Result for the Class, Particularly Given the Expense, Duration and Uncertainty of Continued Litigation

Antitrust class actions are "notoriously complex, protracted, and bitterly fought." *Weseley v. Spear, Leeds & Kellogg,* 711 F. Supp. 713, 719 (E.D.N.Y. 1989).  Continuing this litigation against Seton Health would entail a lengthy and expensive legal battle, involving complex legal and factual issues.[6]  Motions would continue to be vigorously contested, and the merits discovery process would be complicated.  Additionally, Seton Health would assert various defenses, and a jury trial might well turn on close questions of proof, many of which would be the subject of complicated expert testimony, making the outcome of a trial uncertain for both parties.  *See, e.g., In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 475-76 (S.D.N.Y. 1998) ("*NASDAQ II*") ("Antitrust litigation in general, and class action litigation in particular, is unpredictable").  Moreover, even after trial is concluded, there would very likely be one or more lengthy appeals.  *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 65 (S.D.N.Y. 1993).

Against this background, the Settlement represents an excellent result for the members of

---

[6] Because Plaintiffs' Counsel may have to litigate against the other Defendants through trial and appeal, their duties to the Class preclude a more detailed discussion of their potential litigation risks.

the Seton Settlement Class.  Seton Health's $744,739 payment provides for significant compensation to the Seton Settlement Class that will be available much earlier than if litigation against Seton Health continued through trial and appeal.  Because the "complexity, expense and likely duration of the litigation," the "risks of establishing liability … [and] damages," and "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation" weigh in favor of the Settlement Agreement, it certainly falls within the possible range of approval as a "fair, reasonable, and adequate" settlement of the Seton Settlement Class's claims.  *See Grinnell Corp.,* 495 F.2d at 463.  In addition to a significant cash payment, the Settlement also benefits the Settlement and Litigation Classes by securing Seton's agreement to cooperate in further formal and informal discovery, as described above, for the remainder of the litigation against the non-settling Defendants.

Therefore, in light of the risks faced by Plaintiffs, the significant monetary benefits achieved by the settlement, Seton's agreement to cooperate in further discovery, the fact that claims based on underpayments of wages as a result of Seton Health's participation in the conspiracy remain in the case under principles of joint and several liability (and therefore may still be pursued against the remaining defendants), and the fact that the claims against Seton Health by supervisory, managerial and advanced practice nurses are only dismissed without prejudice, the settlement is well within the range of being fair, reasonable and adequate and should be preliminarily approved.

## IV.  CERTIFICATION OF THE PROPOSED SETON SETTLEMENT CLASS IS WARRANTED.

As part of approving the settlement, the Court must also approve and certify the proposed Seton Settlement Class.  Rule 23 of the Federal Rules of Civil Procedure outlines the prerequisites for certification.  "Although the rule is silent as to certifying a class 'for settlement purposes only,' the Second Circuit Court of Appeals and the United States Supreme Court have

recognized this judicial invention." *In re Host America Corp. Secs. Litig.*, No. 05-CV- 1250, 2007 WL 3048865, at *1 (D. Conn. Oct. 18, 2007) (citations omitted). Moreover, the Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of settlement. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). Courts in the Second Circuit favor "the liberal construction of Rule 23" and exercise "broad discretion when they determine whether to certify a class." *Pecere v. Empire Blue Cross and Blue Shield*, 194 F.R.D. 66, 69 (E.D.N.Y. 2000) (citations omitted). Courts are to resolve any doubts in favor of certifying the class. *See In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 239 (E.D.N.Y. 1998).

Here, as previously noted, Plaintiffs seek to certify a more limited Seton Settlement Class than the Litigation Class certified by this Court. The Second Circuit, recognizing the importance of settlements, has permitted the certification of a narrower settlement class than that which was alleged in the original complaint. *See In re Holocaust Victim Assets Litig.*, 225 F.3d 191 (2d Cir. 2000) (holding that "the broad language of a complaint in a class action lawsuit does not vest in putative class members a right to be part of the [settlement] class ultimately certified by the District Court"). The proposed Seton Settlement Class resolves the Court's previous concerns about interchangeability between certain registered nurses who provide direct patient care in short term acute care facilities (*i.e.*, members of the Seton Settlement Class) and more specialized nurses, such as supervisory, managerial or advanced practice nurses who are members of the Litigation Class.[7]  *See* Part IV.B, *infra*.

The proposed Seton Settlement Class satisfies each of the Rule 23 prerequisites. First, as this Court previously found, the Litigation Class satisfied all of the Rule 23(a) prerequisites. The

---

[7] Pursuant to the Settlement Agreement, any claims supervisory, managerial or advanced practice nurses have against Seton Health will be dismissed without prejudice. In order to assist these more specialized nurses with determining whether to pursue timely their claims against Seton Health, Plaintiffs propose that notice of this settlement be sent to the entire Litigation Class. *See* Part V, *infra*.

Litigation Class was also certified with respect to whether there has been a violation of antitrust law and whether there has been legal injury to the Class because of the alleged conspiracy.  The same analysis and finding should therefore apply, with even greater force, to the narrower, more homogenous Seton Settlement Class.  Although this Court did not certify the Litigation Class with respect to injury-in-fact and damages, the concerns expressed by the Court are resolved by the narrower Seton Settlement Class, which excludes advanced practice, managerial and supervisory nurses and contains only nurses who provide direct patient care.  Moreover, as described below, Plaintiffs intend to present a classic agency nurse benchmark damages methodology that cures any remaining problems with the damages methodology Plaintiffs presented at class certification as applied to the narrower class.  This proposed methodology clearly allows Plaintiffs to satisfy the predominance requirement for the Seton Settlement Class.

This Court should certify the Seton Settlement Class because it satisfies all class certification requirements.

### A.  The Requirements of Rule 23(a) and (g) Are Satisfied

Plaintiffs seeking class certification must first establish that the prerequisites of Rule 23(a) – numerosity, commonality, typicality, and adequacy – have been met.  *Velez v. Novartis Pharms. Corp.*, 244 F.R.D. 243, 256 (S.D.N.Y. 2007).  The Court must also determine that proposed Class Counsel are qualified under the criteria of Rule 23(g).  Fed. R. Civ. P. 23(g)(1)(B).  The Court already held that the Litigation Class satisfies each of the Rule 23(a) requirements, and proposed Class Counsel for this Seton Settlement Class are the same law firms that the Court already approved as Class Counsel for the Litigation Class.  *See* Class Certification Decision at 4-7; December 17, 2008 Order (Docket No.  245).  The Court's finding that the broader Litigation Class satisfied the elements of Rule 23(a) supports the same finding for the narrower Seton Settlement Class that contains a subset of the nurses in the Litigation

Class.  Moreover, Defendants effectively conceded that the Rule 23(a) requirements were met when they only challenged certification with respect to Rule 23(b).  Plaintiffs also respectfully submit that Class Counsel continue to be fully qualified to represent a class of nurses in this case under Rule 23(g).

### B.  The Requirements of Rule 23(b)(3) Are Satisfied

Under Rule 23(b)(3), the Court must find that "questions of law or fact predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  The Supreme Court has stated that "[p]redominance is a test readily met in certain cases alleging . . . violations of the antitrust laws. . . ."  *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997).  "In order to meet the predominance requirement of Rule 23(b)(3), a plaintiff must establish that 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof.'"  *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d. Cir. 2001) (internal citations omitted), *overruled on other grounds*, *In re Pub. Offering Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006).

To prevail in an antitrust case, Plaintiffs must prove three elements: (1) a violation of the antitrust laws; (2) the impact of the unlawful activity; and (3) damages.  *See Visa Check*, 280 F.3d at 136.  As demonstrated below, the Plaintiffs could use common evidence to prove each of these elements on behalf of the Seton Settlement Class, which thus meets the Rule 23(b)(3) requirements.

### 1.  <u>Violation of the Antitrust Laws</u>

This Court has already found that the nurses included in the Seton Settlement Class established that proof of a violation of antitrust law would involve evidence common to all Litigation Class members.  Specifically, in its July 28, 2008 Order, this Court found that the

broader Litigation Class satisfied one element of the antitrust claim by "establishing a common violation of antitrust law among all members of the potential class."  Class Certification Decision at 8.  Here, the narrower Seton Settlement Class has alleged the same common violation of antitrust law.  Accordingly, the analysis employed by this Court with respect to the broader Litigation Class is applicable and warrants certification of the Seton Settlement Class with respect to whether there has been a violation of antitrust law.

### 2. __The Impact of the Unlawful Activity__

The second element of an antitrust cause of action – impact, or antitrust injury – "poses two distinct questions": (1) whether the plaintiff has suffered harm, or injury-in-fact; and (2) whether the harm alleged to have been suffered is an antitrust injury.  *See* Class Certification Decision at 9.  On the latter issue, this Court has already found that proof of the legal question, "whether any … injury [suffered] is 'injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful'" is a common question for the broader class.  *See* Class Certification Decision at 9.  The narrower Seton Settlement Class comprises a subset of the nurses contained in the Litigation Class.  As with the proof of conspiracy element, the analysis employed by this Court with respect to the broader Litigation Class is therefore applicable and warrants certification of the Seton Settlement Class with respect to the legal question of injury.

The Seton Settlement Class also satisfies the injury-in-fact requirement.  This Court ruled that the broader Litigation Class could not be certified with respect to injury-in-fact because the Court was concerned about the degree of interchangeability of nurses in the profession as a whole.  Thus, the Court was apparently not convinced that a conspiracy among the hospitals targeting a large subclass of nurses would also affect the wages of their other, more specialized nurses.  The narrower Seton Settlement Class resolves the Court's concerns.  Regardless of the

degree to which interchangeability exists for all nurses in the Litigation Class, members of the

Seton Settlement Class – all of whom provide direct patient care – have a much higher degree of

interchangeability and homogeneity, making it easier to infer that the alleged conspiracy

impacted all the class members.

For the purposes of determining injury-in-fact on a class-wide basis for Seton Settlement

Class members, Plaintiffs also intend to have Professor Orley Ashenfelter, a nationally renowned

labor economist,[8] employ a classwide damages analysis that, with appropriate adjustments,

compares the fees paid by Defendants to nursing agencies for supplying bedside RNs to

Defendants to the costs to the Defendants of employing the bedside RNs in the Seton Settlement

Class.  *See* Declaration of Orley Ashenfelter, dated March 6, 2009 ("Ashenfelter Decl.") ¶¶ 5-8.

The strength of this classwide approach derives from the fact that all of the Defendant hospitals

make extensive use of nurses supplied by temporary agencies ("agency nurses") to do the very

work that would otherwise be performed by members of the proposed Seton Settlement Class.

*Id.* ¶ 6.  These agency rates are the amount that Defendants are willing to pay to hire an RN to do

the same types of work performed by members of the Seton Settlement Class.[9]  *Id.*  Accordingly,

the fees that the Defendant hospitals pay for agency nurses, with relevant adjustments, provide

an appropriate benchmark for what the compensation of members of the Seton Settlement Class

would be in a more competitive market.[10]  *Id.* ¶ 7.

---

[8] Professor Ashenfelter is the Joseph Douglas Green 1895 Professor of Economics at Princeton University.  A Fellow of the Econometric Society and a Distinguished Fellow of the American Economics Association, among other appointments, he is the recipient of the IZA Prize in Labor Economics and the Mincer Award for Lifetime Achievement of the Society of Labor Economists.  He specializes in labor economics, industrial organization, econometrics, and law and economics, and edited the *Handbook of Labor Economics*.  *See generally* Ashenfelter Decl. ¶1, Exh. A (Ashenfelter curriculum vitae).

[9] Plaintiffs currently have data demonstrating the average hourly fee for agency nurses at each Defendant hospital for at least one year during the Class Period.  Due to the bifurcation of discovery, however, data related to the average hourly fee for agency nurses at each Defendant hospital for each year during the Class Period is not currently available.  Plaintiffs expect to receive this data during merits discovery.

[10] Because Defendants incur costs in addition to the class members' monetary compensation that are not incurred

The agency benchmark approach (unlike Professor Farber's proposed damages methodology, which produced an underpayment *percentage*) would yield *dollar-and-cents* competitive earnings against which each and every class member's actual earnings could be compared.  Ashenfelter Decl. ¶ 7, 9-10.  Any nurse whose actual earnings equaled or exceeded the benchmark earnings could be identified as being uninjured and either awarded no damages or excluded from the class.  *Id.* ¶ 7.  This classwide approach would ensure that no uninjured nurses receive any compensation in this lawsuit.

Professor Ashenfelter has already employed the agency nurse benchmark approach in *Cason-Merenda v. Detroit Medical Center*, No. 2:06-cv-15601-GER-DAS, a case alleging that hospitals conspired to fix nurse wages in the Detroit metropolitan area, thus demonstrating that this is a feasible methodology for establishing benchmark wages.  *See* Ashenfelter Decl. ¶ 13.  In sum, the classwide agency nurse benchmark methodology can be employed to ensure that only injured nurses are compensated in this case.  The availability of this methodology means that class-wide issues will predominate over individual concerns for both aspects of the impact element of a Sherman Act claim, and Rule 23(b)(3) is therefore satisfied.

### 3.  Damages

The agency benchmark approach also permits Plaintiffs to prove damages predominantly with classwide evidence.  Plaintiffs have made a sufficient showing with this motion to demonstrate the viability of their damages approach.  No precise damage formula is needed at the class certification stage.  *See In re Dynamic Random Access Memor (DRAM) Antitrust Litig.*, No. M 02-1486, 2006 WL 1530166, at *10 (N.D. Cal. June 5, 2006) ("Plaintiffs need not supply a 'precise damage formula,' but must simply offer a proposed method for determining damages

---

when hiring an agency nurse, the calculation must be adjusted to arrive at a corresponding figure for hourly earnings of members of the proposed class.  Accordingly, the proposed methodology will adjust for the following three factors: the cost of fringe benefits, the cost of payroll taxes and Worker's Compensation paid by the employer, and for differences between working as an agency nurse and working for a hospital.

that is not 'so insubstantial as to amount to no method at all.'") (quoting *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 697 (D. Minn. 1995)).  "There is no requirement that the plaintiffs choose one method now, as long as they offer a methodology that is generally accepted."  *In re Carbon Black Antitrust Litig.*, *No. Civ A. 03-10191-DPW*, 2005 WL 102966, at *20 (D. Mass. Jan. 18, 2005).

In any event, certification of the Seton Settlement Class would be warranted even if Plaintiffs were not able to prove the Class' damages with a classwide formula.  In this Circuit, it is well-settled that the presence of individual damage issues do not preclude class certifications. *See, e.g., In re Sumitomo Copper Litig.*, 85, 95 (S.D.N.Y. 1998) (quoting *In re AM Int'l, Inc. Securities Litig.*, 108 F.R.D. 190, 196 (S.D.N.Y. 1985)) ("'It is well established that individual questions with respect to damages will not defeat class certification or render a proposed representative inadequate unless that issue creates a conflict which goes to the heart of the lawsuit.'").

The agency nurse benchmark methodology meets the minimum burden required of Plaintiffs at this stage.  It permits Plaintiffs to prove the Class' damages predominantly with common evidence, further demonstrating that Rule 23(b)(3)'s predominance requirement is satisfied.

### 4. <u>Superiority</u>

As to the superiority requirement, the Supreme Court has found that when certifying a settlement class "a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. P. 23(b)(3)(D), for the proposal is that there be no trial."  *Amchem Prod.*, 521 U.S. at 620.  Such is the case here.  The settlement between Plaintiffs and Seton Health obviates the need for a trial against Seton Health, and thus questions concerning the manageability of litigating Plaintiffs' claims on a class-wide basis are

irrelevant.  Here, for the reasons set forth above, a class settlement with Seton Health is superior

to continued litigation against the same.  Accordingly, the superiority requirement of Rule

23(b)(3) is satisfied.

## V.  THE FORM OF NOTICE SHOULD BE APPROVED AND NOTICE OF THE PROPOSED SETTLEMENT SHOULD BE GIVEN TO LITIGATION AND SETON SETTLMENT CLASS MEMBERS.

Rule 23 requires that notice of a settlement be "the best notice practicable under the

circumstances, including individual notice to all members who can be identified through

reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B); *see also* Alba Conte & Herbert Newberg,

NEWBERG ON CLASS ACTIONS, §8.2 at 162-65 (4th ed. 2002).

Class Counsel propose that the Court authorize the issuance of notice of the Seton

Settlement Class and of the settlement with Seton Health to both the Litigation and Seton

Settlement Classes.  Although supervisory, managerial and advanced practice nurses are not

included in the Seton Settlement Class, Class Counsel still propose that they receive notice of the

Seton Health settlement to inform them that their claims against Seton Health are being

dismissed without prejudice, so that they can timely choose whether to pursue their claims

against Seton Health.  Notifying the Litigation Class of the settlement will notify supervisory,

managerial and advanced practice nurses of the settlement and its effect on them.

Class Counsel propose that notice of the settlement be provided to the Classes in two

ways:  First, written notice will be mailed to each member of the Settlement and Litigation

Classes who can be identified with reasonable effort from Defendants' employment records as

well as to anyone who requests such notice.  Within five (5) days of preliminary approval of the

Settlement Agreement, Seton Health has agreed to provide Class Counsel or the Claims

Administrator a list of registered nurses in the Seton Settlement Class (in electronic form, if

available) who worked at Seton Health during the Class Period.  *See* Settlement Agreement ¶

31(c).  The form of written notice to be mailed is attached to the proposed Order as Exhibit 1.
Second, a summary notice of the proposed Settlement will be published in Albany's largest
paper, the *Albany Times Union*.  The form of summary notice is attached to the proposed Order
as Exhibit 2.

The written notice provides details regarding the certification of the Seton Settlement
Class and the terms of the settlement and the rights of Seton Settlement Class members to share
in the recovery.  In addition, both the written notice and the summary publication notice will
provide the date, time and place of the final hearing to consider the proposed settlement and
information about the right of Class members to be present at the final hearing.  Both forms of
notice also provide contact information for Class Counsel, and a website and toll-free number
where potential Seton Settlement Class members can obtain additional information.

The form and manner of notice proposed here fulfill all of the requirements of Rule 23,
and due process, and Class Counsel request that the Court direct that notice be given to Seton
Settlement Class members.

## VI.  CONCLUSION

The Settlement is an excellent result for the Seton Settlement Class in this complex and
hard-fought antitrust class action.  Thus, Plaintiffs respectfully request that the Court grant their
motion and enter an order (1) preliminarily approving the settlement and finding that the
proposed settlement is sufficiently fair, reasonable and adequate to allow dissemination of notice
of the settlement to the proposed Seton Settlement Class; (2) certifying the Seton Settlement
Class; (3) appointing Cohen Milstein Sellers & Toll, P.L.L.C., James & Hoffman, PC, and
Towne Bartkowski & DeFio Kean, PC, as Class Counsel for the Seton Settlement Class, and
Wendy Fleischman and Cindy Cullen as Class Representatives; (4) approving the form of the
class notice; (5) approving the notice plan and directing that notice be mailed; (6) establishing a

deadline for filing papers in support of final approval of the proposed settlement and a request

for reimbursement of costs and expenses; (7) establishing a deadline for the filing of objections

by Seton Settlement Class members; (8) establishing a deadline for Seton Settlement Class

members to exclude themselves from the proposed Seton Settlement Class; (9) establishing a

date for a hearing on final approval of the proposed settlement; (10) ordering a stay of all

proceedings against Seton Health except those proceedings provided for or required by the

Settlement Agreement; and (11) authorizing Class Counsel to pay the cost of providing notice to

the Class, taxes, tax expenses and charges of the escrow agent from the Settlement Fund as they

are incurred.  A proposed Order is being filed concurrently herewith.

        Dated this 3rd day of April, 2009

                         Respectfully submitted,

By:    /s/ DAVID P. DEAN
       David P. Dean
       Emilie S. Kraft
       JAMES & HOFFMAN
       1101 17th Street, N.W., Suite 510
       Washington, D.C. 20036-4748
       Tel: (202) 496-0500
       Fax: (202) 496-0555

       Daniel A. Small
       Patrick A. Tillou
       Kalpana Kotagal
       Besrat J. Gebrewold
       COHEN MILSTEIN SELLERS
       & TOLL PLLC
       1100 New York Avenue, N.W.,
       Suite 500 West
       Washington, D.C. 20005
       Tel: (202) 408-4600
       Fax: (202) 408-4699

       Mark A. Griffin
       Raymond J. Farrow
       KELLER ROHRBACK LLP
       1201 Third Avenue, Suite 3200
       Seattle, WA 98101-3052

Tel: (206) 623-1900
Fax: (206) 623-3384

Arnold Levin
Charles E. Schaffer
LEVIN, FISHBEIN, SEDRAN &
BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500
Fax: (215) 592-4663

Daniel E. Gustafson
Brian Williams
GUSTAFSON GLUEK PLLC
608 Second Avenue South
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622

James T. Towne Jr.
Michael Rhodes-Devey, Bar No. 102438
TOWNE, BARTKOWSKI &
DEFIO KEAN, P.C.
450 New Karner Road
Albany, N.Y. 12205
Tel: (518) 452-1800
Fax: (518) 452-6435

**Attorneys for Plaintiffs**