# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK

_____

Wendy Fleischman and Cindy Cullen,   )
On behalf of themselves and all others   )
similarly situated,   )
                  Plaintiffs,   )
   )
        v.   )     Civil Action No. 06-cv-0765-TJM-DRH
   )
Albany Medical Center; Ellis Hospital;   )
Northeast Health; Seton Health System;   )
St. Peter's Health Care Service,   )
   )
               Defendants.   )
_____)


## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
## FOR PRELIMINARY APPROVAL OF SETTLEMENT
## WITH ST. PETER'S HEALTH CARE SERVICES

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................1

II.     BACKGROUND ..................................................................................................2

    A.      The Litigation..............................................................................................2

    B.      The Settlement ............................................................................................4

        1.   The SPH Settlement Class ...................................................................4

        2.   The Settlement Amount .......................................................................4

        3.   Other Benefits to the SPH Settlement Class and the Litigation Class ....................6

        4.   Release ...............................................................................................7

    C.      The Timeline ...............................................................................................8

III.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL....................................9

    A.   Standard for Granting Preliminary Approval ................................................9

    B.   The Proposed Settlement is in the Range of Possible Approval as Fair,
        Reasonable and Adequate ......................................................................11

    C.   The Proposed Settlement Does Not Disclose Grounds to Doubt Its Fairness............13

    D.   The Proposed Settlement Achieves an Excellent Result for the Class,
        Particularly Given the Expense, Duration and Uncertainty of Continued
        Litigation..............................................................................................14

IV.     CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS IS WARRANTED..15

    A.   The Requirements of Rule 23(a) and (g) Are Satisfied ...............................17

    B.   The Court Has Previously Found that the Requirements of Rule 23(b)(3)
        Are Satisfied as to Whether There Has Been an Antitrust Violation and Whether
        There Has Been Legal Injury and that this is Sufficient to Preliminarily Approve
        The Settlement. .....................................................................................18

V.      THE FORM OF NOTICE SHOULD BE APPROVED AND NOTICE OF THE
    PROPOSED SETTLEMENT SHOULD BE GIVEN TO LITIGATION AND SPH
    SETTLEMENT CLASS MEMBERS .............................................................19

VI.     CONCLUSION.................................................................................................20

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) ................................................. 17-18

*In re Am. Bank Note Holographics, Inc.*,
    127 F. Supp. 2d 419 (S.D.N.Y. 2001)...................................................................13

*In re Auto. Refinishing Paint Antitrust Litig.*,
    MDL Docket No. 1426, 2004 WL 1068807 (E.D. Pa. May 10, 2004).....................................12

*Bano v. Union Carbide Corp.*, 273 F.3d 120 (2d Cir. 2001) ...........................................9

*Bourlas v. Davis Law Assocs.*,
    No. CV 05-4548, 2006 WL 2513021 (E.D.N.Y. Aug. 30, 2006)...................................... 10-11

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)................................................................10, 12, 15

*In re Currency Conversion Fee Antitrust Litig.*,
    MDL No. 1409, 2006 U.S. Dist. LEXIS 82167 (S.D.N.Y. Nov. 8, 2006) ...............................9

*Fischer Bros., Inc. v. Mueller Brass Co.*,
    630 F. Supp. 493 (E.D. Pa. 1985) .......................................................................12

*Foti v. NCO Fin. Sys.*,
    No. 04 Civ. 00707, 2008 U.S. Dist. LEXIS 16511 (S.D.N.Y. Feb. 20, 2008) ..........................9

*In re Holocaust Victim Assets Litig.*, 225 F.3d 191 (2d Cir. 2000) ..............................16

*In re Host America Corp. Secs. Litig.*,
    No. 05-CV-1250, 2007 WL 3048865 (D. Conn. Oct. 18, 2007) ..............................15

*Joblove v. Barr Labs.*, 466 F.3d 187 (2d Cir. 2006) ....................................................9

*In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619 (E.D. Pa. 2004).........................12

*In re Luxottica Group S.p.A. Secs. Litig.*, 233 F.R.D. 306 (E.D.N.Y. 2006).................9

*In re Medical X-Ray Film Antitrust Litig.*,
    No. CV 93-5904, 1997 WL 33320580 (E.D.N.Y. Dec. 26, 1997) .........................10

*In re Michael Milken & Assocs. Sec. Litig.*,
    150 F.R.D. 57 (S.D.N.Y. 1993) ..........................................................................14

*In re NASDAQ Market-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) .................................................................................10

*In re NASDAQ Market-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) ...............................................................................14

*Newman v. Stein,* 64 F.2d 689 (2d Cir. 1972)..............................................................11

*In re Playmobil Antitrust Litig.*,
   35 F. Supp. 2d 231 (E.D.N.Y. 1998) .........................................................................16

*Pecere v. Empire Blue Cross & Blue Shield*,
   194 F.R.D. 66 (E.D.N.Y. 2000) ................................................................................16

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995) ...........................................................................9, 11

*In re Pub. Offering Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006).........................................18

*In re Sumitomo Copper Litig.*, 189 F.R.D. 274 (S.D.N.Y. 1999)..................................11

*In re Visa Check/MasterMoney Antritrust Litig.*,
   280 F.3d 124 (2d. Cir. 2001) .....................................................................................18

*Velez v. Novartis Pharms. Corp.*, 244 F.R.D. 243 (S.D.N.Y. 2007) .............................17

*Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982) ...................................................16

*Weseley v. Spear, Leeds & Kellogg*,
   711 F. Supp. 713 (E.D.N.Y. 1989) ............................................................................14

## RULES

Fed. R. Civ. P.  23(b)(3) ...............................................................................................17

Fed. R. Civ. P. 23(c)(2)(B)  ...........................................................................................19

Fed. R. Civ. P. 23(e) ................................................................................................ 8, 12

Fed. R. Civ. P. 23(g)(1)(B)  ...........................................................................................17

Fed R. Civ. P. 23(e)(2)....................................................................................................9

**OTHER**

Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS,
§8.2 (4th ed. 2002) ....................................................................................................19

MANUAL FOR COMPLEX LITIGATION (FOURTH)
§21.162 (2004) ........................................................................................................10

## I.  INTRODUCTION

After three years of litigation and hard-fought, arm's length negotiation by highly experienced, capable counsel, St. Peter's Health Care Services ("St. Peter's") and Plaintiffs (together "the parties") reached a Settlement Agreement resolving the claims of a proposed class of nurses who provide direct patient care in certain Albany-area hospitals ("SPH Settlement Class" as defined in II.B.1 below).  The proposed SPH Settlement Class is identical to the classes already certified by this Court for purposes of separate settlement agreements with Seton Health and Northeast Health.  *See* Docket Nos. 248, 254.  The Settlement Agreement reached between the parties secures a $2,685,622 cash payment and certain future formal and informal discovery cooperation from St. Peter's for the SPH Settlement Class.

Therefore, Plaintiffs respectfully request that the Court enter an order: (1) preliminarily approving the settlement and finding that the proposed settlement is sufficiently fair, reasonable, and adequate to allow dissemination of notice of the settlement to the proposed SPH Settlement Class and also to other members of a class previously certified by this Court on July 28, 2008; (2) certifying the SPH Settlement Class, on the *same issues* (violation and legal injury) that the Court certified the NEH and Seton Settlement Classes[1]; (3) appointing Cohen Milstein Sellers & Toll, P.L.L.C. ("CMST"), James & Hoffman, PC, ("J&H"), and Towne Bartkowski & DeFio Kean, PC, as Class Counsel for the SPH Settlement Class, and Wendy Fleischman and Cindy Cullen as Class Representatives; (4) approving the form of the Legal Notice of Class Action Settlement ("Notice"), attached as Exhibit A to the accompanying proposed order; (5) approving the notice plan and directing that notice be mailed; (6) establishing a deadline for filing papers in support of final approval of the proposed settlement and a request for reimbursement of costs and expenses; (7) establishing a deadline for the filing of objections by SPH Settlement Class

---

[1] Plaintiffs request certification of the SPH Settlement Class on these limited issues to effectuate this settlement, and without prejudice to their forthcoming motion to certify a narrower litigation class on all issues.

{00239654}1

members; (8) establishing a deadline for SPH Settlement Class members to exclude themselves from the proposed SPH Settlement Class; (9) establishing a date for a hearing on final approval of the proposed settlement; (10) ordering a stay of all proceedings against St. Peter's except those proceedings provided for or required by the Settlement Agreement; and (11) authorizing class counsel to pay the cost of providing notice to the class that has been certified by this Court for litigation purposes, taxes, tax expenses and charges of the escrow agent from the Settlement Fund as they are incurred.

## II.  BACKGROUND

### A.  The Litigation

Plaintiffs filed this lawsuit individually and as representatives of all persons employed by any defendant or co-conspirator to work in a hospital in the Albany MSA as a Registered Nurse ("RN") from June 20, 2002 to the present (the "Class Period").  The Second Amended Complaint ("Complaint") (Docket No. 114) alleges that Defendant hospitals engaged in a conspiracy to depress the wages of their hospital nurses and to exchange information regarding nurse pay with the effect of suppressing wages, and that as a result of the alleged conduct of Defendants, the wages of RNs were depressed during the Class Period.  The lawsuit seeks damages, injunctive relief, attorneys' fees and costs from Defendants.

Pursuant to Defendants' October 2006 request, the Court bifurcated discovery between class certification and merits (Docket No. 57).  In January 2007, the Court denied Defendant Ellis Hospital's motion for summary judgment, which sought dismissal because its nurses were paid according to a collectively bargained agreement (Docket No. 85).  Shortly thereafter, the parties began class certification discovery.  During the course of class certification discovery, Plaintiffs analyzed and reviewed over 83,000 documents, including data regarding Defendants' RN employees, produced by Defendants and third parties.  Plaintiffs also deposed six individuals

employed by the various Defendant hospitals, including one employed by St. Peter's; consulted

with their economic expert, Professor Henry Farber, who created a Report and Rebuttal Report in

support of Plaintiffs' motion for class certification; prepared Professor Farber for deposition; and

prepared for and deposed Defendants' experts, Professors Robert D. Willig and Daniel S.

Hamermesh.

Following the close of class certification discovery and the full briefing of Plaintiffs'

motion for class certification, the Court certified the following class:

> All persons employed by any defendant or co-conspirator to work in a hospital in
> the Albany MSA as an RN at any time from June 20, 2002 until the present.

*See* July 28, 2008 Decision & Order (Docket No. 218) (hereinafter "Class Certification

Decision").  This "Litigation Class" includes RNs who provide direct patient care in acute care

facilities, as well as their supervisors, managers and advanced practice nurses.  This class was

certified with respect to whether there has been a violation of antitrust law and whether there has

been legal injury to the class because of the alleged conspiracy.

Since March 2009, Plaintiffs have filed motions seeking preliminary approval of two

settlements, one with Northeast Health ("NEH") and one with Seton Health ("Seton").  *See*

Docket Nos. 248, 254.  Both motions sought certification of settlement classes that include all

registered nurses who provided direct patient care in short-term facilities, other than as

supervisory, managerial, or advanced practice nurses while employed by Defendants within the

Albany-Schenectady-Troy Metropolitan Statistical Area ("Albany MSA") at any time from June

20, 2002 through June 20, 2006.  The Court granted preliminary approval of both the NEH and

Seton Settlement and certified both settlement classes as to whether there was a violation of the

antitrust laws and whether there was legal injury, the same issues for which the Court certified

the Litigation Class.  Docket Nos. 265, 271, & 272.  In certifying the NEH and Seton Settlement

Classes and preliminarily approving both settlements, the Court found that certifying these

Settlement Classes as to whether there was a violation of antitrust law and whether there was legal injury "should not have any impact on the proposed Northeast Health and Seton Health settlements…." Decision & Order at 2 (Dkt. No. 271 May 14, 2009). Since the Court's preliminary approval of the Seton Settlement, the Court granted Plaintiffs' request for permission to delay sending notice of both the NEH and Seton Settlements and the Litigation Class to enable the Court to first consider preliminary approval of the settlement with St. Peter's. Docket No. 283.

### B. The Settlement

After extensive negotiations stretching over many months – during which the merits of each party's positions were thoroughly discussed, evaluated and negotiated – the parties reached Settlement. The discussions were founded on a full understanding of the strengths and weaknesses of the case, based, *inter alia*, on information gleaned from discovery. The basic terms of the Settlement Agreement include:

### 1. The SPH Settlement Class

The parties have agreed to define the "SPH Settlement Class" as follows:

> [A]ll Registered Nurses who provided direct patient care in short term acute care facilities other than as supervisory, managerial or advanced practice nurses while employed by any Defendant within the Albany-Schenectady-Troy, New York Metropolitan Statistical Area at any time from June 20, 2002, through June 20, 2006, and who have not timely and validly elected to be excluded from the SPH Settlement Class….

Settlement Agreement ¶ 30, attached as Exhibit A to the accompanying Declaration of David P. Dean. This proposed SPH Settlement Class is identical to the NEH and Seton Settlement Classes already certified by this Court. Like the NEH and Seton Settlement Classes, the SPH Settlement Class is narrower than the Litigation Class certified by this Court. *See* Class Certification Decision at 8; Section II.A, *supra*. Guided by the Court's concerns over the "degree of

interchangeability"[2] and mobility among different classes of nurses, the settling parties have

agreed to a Settlement Class that does not include supervisory, managerial or advanced practice

nurses, thus rendering it much more homogenous than the Litigation Class.  The SPH Settlement

Class is proposed for settlement purposes only and does not purport to modify the Litigation

Class previously certified by this Court.

### 2.   The Settlement Amount

The proposed Settlement Agreement with St. Peter's provides that St. Peter's will pay or

cause to be paid $2,685,622 in cash for the benefit of the SPH Settlement Class, which represents

2.0 percent of the total Registered Nurse Wages paid by St. Peter's to members of the Class

during the Class Period.  *Id.* ¶ 28.  This amount will be deposited in the Escrow Account by St.

Peter's within 30 days of the Court's preliminary approval of this Settlement Agreement.  *Id.* ¶

34.  The Settlement Agreement allows St. Peter's to reduce the Settlement Amount based on the

percentage of the SPH Settlement Class that elects to opt out from the Settlement Agreement.  *Id.*

¶ 46(a).  In addition, if more than 10 percent of the SPH Settlement Class opts out of the

Settlement, St. Peter's has the right to terminate the Settlement Agreement.  *Id.* ¶ 46(b).

Moreover, if Plaintiffs enter into a settlement agreement with any of the Non-Settling Defendants

for less than 2.0 percent of the total Compensation paid by that Defendant during the Class

Period to members of the settling class, then Plaintiffs and the Class, subject to certain

exceptions, will "refund to St. Peter's the proportional difference between 2.0% and the

percentage paid by the Non-Settling Defendant, multiplied by the Settlement Amount paid by St.

Peter's pursuant to this Agreement."  *Id.* ¶¶ 64-67.

In addition, the parties have agreed in a confidential side letter on their obligations if the

---

[2]  Class Certification Decision at 10.

terms of the St. Peter's Settlement implicate other clauses in certain agreements, and

enforcement of such clauses is sought.

### 3.  Other Benefits to the SPH Settlement Class and the Litigation Class

St. Peter's has agreed to provide extensive cooperation that will  benefit both the

Settlement and Litigation Classes.  *Id.* ¶ 68.  The full extent of this voluntary cooperation is set

forth in detail in Section L of the Settlement Agreement and includes, *inter alia*:

a.   Interviews of six current or former St. Peter's employees;

b.   Testimony at trial and preparation for trial with Class Counsel from three of these six employees or former employees;

c.   Depositions and/or declarations of five of these six employees or former employees;[3]

d.   A declaration pursuant to Fed. R. Evid. 902(11);

e.   Answers to reasonable questions from Class Counsel or its experts about St. Peter's databases; and

f.   Production of documents and data reasonably necessary to the prosecution of this action.

*Id.* ¶ 68(a) – (f).

In addition to the substantial cooperation that will be obtained from St. Peter's, pursuant

to the Injunctive Relief provisions set forth in Section M of the Settlement Agreement, St.

Peter's has also agreed that its executives and its human resource, recruiting and other personnel

will refrain from engaging in certain conduct, including, *inter alia*:

a.   Communicating, requesting or exchanging current or future nurse compensation information with another health care facility in the Albany MSA;

b.   Agreeing with another health care facility in the Albany MSA to fix, limit or maintain the compensation paid to nurses in violation of law; or

c.   Agreeing with other health care facilities in the Albany MSA to communicate or exchange current or prospective nurse compensation information.

*Id.* ¶ 69(a) – (c).

---

[3] To date, Plaintiffs have deposed six current and former St. Peter's employees.

Class Counsel will provide written notice to St. Peter's if there is reason to believe one of these provisions has been violated.  St. Peter's will have an opportunity to cure the violation.  If it is not cured, Plaintiffs may move for injunctive relief and any other remedy allowed by the Settlement Agreement.  *Id.* ¶ 73.  This injunctive relief provision, to remain in effect for three years, provides a benefit to both the Settlement and Litigation Classes because it ensures that St. Peter's will not engage in the alleged anticompetitive activity with respect to any types of nurses.  When the provision expires, St. Peter's will be required to certify that it has complied with its terms.  *Id.* ¶ 75.

Moreover, the Settlement Agreement does nothing to abrogate the rights of any member of the Litigation Class or SPH Settlement Class to recover from any other Defendant for the alleged participation by St. Peter's in a conspiracy to depress nurse wages during the relevant time period.  Because the other Defendants are jointly and severally liable for any damages caused by the alleged conduct of SPH, members of the Litigation Class, including those in the SPH Settlement Class, may still recover damages from the non-settling Defendants should it be determined that St. Peter's participated in the alleged conspiracy.[4]

### 4.  Release

In exchange for the above consideration from St. Peter's, Plaintiffs have agreed for themselves and on behalf of the putative SPH Settlement Class, to release and discharge St. Peter's, certain affiliated entities and their agents from any and all claims against them relating in any way to any anticompetitive conduct by them prior to the Execution Date concerning the monetary compensation, non-monetary compensation, recruitment, employment and/or retention of SPH Settlement Class members in a hospital in Albany.  *Id.* ¶ 43.  The Released Claims include all claims "related to or arising out of the facts, occurrences, transactions, or other

---

[4] In addition, the claims of the supervisory, managerial and advanced practice nurses against St. Peter's and claims of registered nurses employed after June 20, 2006 against St. Peter's are to be dismissed without prejudice.

matters alleged" in the Class Action during the Class Period.  *Id.*

### C.  The Timeline

Pursuant to Fed. R. Civ. P. 23(e), a hearing on the final approval of the settlement should

take place after class members have received notice and have had the opportunity to evaluate the

settlement.  Plaintiffs propose a schedule designed to accommodate – as much as possible – the

desire of settling Defendants Seton Health and Northeast Health to continue the final hearing on

their settlement, presently scheduled for September 14, 2009, while still affording class members

a sufficient period of time to opt out of the litigation class and/or any of the settlement classes or

object to any of the settlements.  Accordingly, Plaintiffs propose the following schedule:

1. Notice to be mailed no later than 30 days following the date on which preliminary approval of the St. Peter's Settlement is entered by the Court ("Notice Date");

2. Summary Notice to be published within 10 days of the Notice Date, or as soon thereafter as practicable;

3. Plaintiffs' motion for final approval of the settlement and for reimbursement of expenses, an award of attorneys fees and plaintiffs' incentive awards to be filed no later than 45 days following the Notice Date;

4. Requests for exclusion from the proposed SPH Settlement Class must be postmarked no later than 30 days following the Notice Date;

5. Any objections to the settlement or to the request for reimbursement of expenses, an award of attorneys' fees and plaintiffs' incentive awards must be filed with the Court and erved on Class Counsel no later than 20 days prior to the date the Court sets for a hearing on final approval;

6. Affidavits or declarations showing that notice to the Class was made in accordance with the preliminary approval order to be filed no later than 10 days prior to the date the Court sets for a hearing on final approval;

7. A hearing before the Court on final approval of the settlement and an award of attorneys' fees, plaintiffs' incentive awards and reimbursement of expenses, to be scheduled at the Court's convenience.

## III.  THE COURT SHOULD GRANT PRELIMINARY APPROVAL

The Second Circuit has recognized that there is a strong public interest in the settlement

of complex litigation, particularly class actions.  *See Joblove v. Barr Labs.*, 466 F.3d 187, 202

(2d Cir. 2006); *Bano v. Union Carbide Corp.*, 273 F.3d 120, 129-30 (2d Cir. 2001); *see also In*

*re Luxottica Group S.p.A. Secs. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006) ("Class action suits

readily lend themselves to compromise because of the difficulties of proof, the uncertainties of

the outcome, and the typical length of the litigation. There is a strong public interest in quieting

any litigation; this is particularly true in class actions.") (internal quotations omitted); *In re*

*Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("It is well

established that there is an overriding public interest in settling and quieting litigation, and this is

particularly true in class actions.").  Under Federal Rule of Civil Procedure 23(e), a class action

settlement must be approved by the court before a case may be dismissed or compromised.  The

court may approve a settlement that binds class members "only after a hearing and on finding

that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  There are three steps that

must be taken when a court approves a settlement:  (1) the court must preliminarily approve the

proposed settlement; (2) class members must be given notice of the proposed settlement; and (3)

after holding a hearing, the court must give final approval of the settlement.  *See, e.g.*, *Foti v.*

*NCO Fin. Sys.*, No. 04 Civ. 00707, 2008 U.S. Dist. LEXIS 16511, at *5-6, 12-13 (S.D.N.Y. Feb.

20, 2008).

### A.  Standard for Granting Preliminary Approval

"After a proposed settlement is reached, a court must determine whether the terms of the

proposed settlement warrant preliminary approval . . . [i]n other words, the court must make a

preliminary evaluation as to whether the proposed settlement is fair, reasonable and adequate."

*In re Currency Conversion Fee Antitrust Litig.*, MDL No. 1409, 2006 U.S. Dist. LEXIS 82167,

at *18 (S.D.N.Y. Nov. 8, 2006) (internal quotations omitted).  Courts have wide discretion to

determine what information to consider at the preliminary stage; this initial assessment can be

made on the basis of information already known to the court.  MANUAL FOR COMPLEX

LITIGATION (FOURTH), at §21.162 (2004).

At the preliminary approval stage, the Court does not make a final determination of the

merits of the proposed settlement.  *Prudential*, 163 F.R.D. at 210.  Full evaluation is made at the

final approval stage, after notice of the settlement has been given to the members of the class and

class members have had an opportunity to voice their views of the settlement.  *See In re*

*NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("NASDAQ").

Preliminary approval is generally granted where the proposed settlement appears to be

the product of serious, informed, non-collusive negotiations, there are no grounds to doubt its

fairness and no other obvious deficiencies, and it falls within the range of possible approval.  *See*

*NASDAQ*, 176 F.R.D. at 102 (internal citation omitted); *In re Medical X-Ray Film Antitrust*

*Litig.*, No. CV 93-5904, 1997 WL 33320580, at *6 (E.D.N.Y. Dec. 26, 1997) ("preliminary

approval should be granted and notice of the proposed settlement given to the class if there are

no obvious deficiencies in the proposed settlement").  In preliminarily evaluating a settlement's

substantive terms, courts consider:

> (1) the complexity, expense and likely duration of the litigation;
> (2) the reaction of the class to the settlement; (3) the stage of the
> proceedings and the amount of discovery completed; (4) the risks
> of establishing liability; (5) the risks of establishing damages; (6)
> the risks of maintaining the class action through the trial; (7) the
> ability of the defendants to withstand a greater judgment; (8) the
> range of reasonableness of the settlement fund in light of the best
> possible recovery; (9) the range of reasonableness of the settlement
> fund to a possible recovery in light of all the attendant risks of
> litigation.

*City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974) (citations omitted).[5]

Finally, a "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms'-length negotiations between experienced, capable counsel after meaningful discovery." *In re Sumitomo Copper Litig*., 189 F.R.D. 274, 280-81 (S.D.N.Y. 1999) (internal quotation marks and citation omitted).

Here, the settlement with St. Peter's falls well within the range warranting preliminary approval, and there are no grounds to doubt the fairness of the proposed settlement. The parties engaged in arm's length negotiations over an extended period of time, and both St. Peter's and the proposed SPH Settlement Class were represented by experienced counsel. In addition, the Agreement ensures substantial and prompt payment to the SPH Settlement Class. This substantial relief is far preferable to the possibility of a smaller recovery or none at all. In short, the proposed Settlement is an excellent result and merits preliminary approval.

### B. The Proposed Settlement is in the Range of Possible Approval as Fair, Reasonable and Adequate

"[I]n any case there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion . . . ." *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972). This settlement falls well "within the range of possible approval," warranting the issuance of notice to the class. *See Prudential*, 163 F.R.D. at 210.

A recovery equivalent to 2.0 percent of the Compensation paid by St. Peter's to the Class during the Class Period – or approximately 20 percent of the damages estimated by Professor

---

[5] Because the Court is being asked to preliminarily approve the settlement, some of these factors do not yet come into play. *See Bourlas v. Davis Law Assocs.*, No. CV 05-4548, 2006 WL 2513021, at *7 n.7 (E.D.N.Y. Aug. 30, 2006). Courts often mention these factors but conduct a detailed analysis of each only at the final approval stage.

Farber's illustrative analysis – is a very good result.[6]  Indeed, even if the settlement were a much

smaller percentage, "courts have determined that a settlement can be approved even if the

benefits amount to a small percentage of the recovery sought . . . And 'there is no reason, at least

in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth

part of a single percent of a potential recovery.'"  *Grinnell Corp.*, 495 F.2d at 455 n.2.  This

percentage of recovery is also in the range of settlements approved in other antitrust cases.  *See,*

*e.g., In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619 (E.D. Pa. 2004) (settlement

represented approximately two percent of sales during the Class Period); *Fischer Bros., Inc. v.*

*Mueller Brass Co.*, 630 F. Supp. 493, 499 (E.D. Pa. 1985) (approving a settlement representing

0.2 percent of the defendant's sales, and noting that earlier settlements approved in the case

represented 2.4 percent, 0.88 percent, 0.65 percent, 0.3 percent, 0.2 percent, and 0.1 percent of

other settling defendants' sales); *In re Auto. Refinishing Paint Antitrust Litig.*, MDL Docket No.

1426, 2004 WL 1068807, at *2 (E.D. Pa. May 10, 2004) (settlement represented approximately

two percent of sales during the Class Period).  Furthermore, a $2,685,622 settlement is fair,

reasonable, and adequate when balanced against the expense and risk that Plaintiffs and the SPH

Settlement Class would face in litigating this case through trial and possible appeal against St.

Peter's.  This is especially true because, as a result of joint and several liability, Plaintiffs' claims

based on St. Peter's compensation remain in the case and the other Defendants will still be liable

for any underpayments relating to that compensation.

The agreement by St. Peter's to provide up to six interviews or depositions of its

employees, to use its best efforts to facilitate interviews or depositions of former employees, to

make three of its employees available for trial testimony, to answer the questions of Plaintiffs'

---

[6]  The Settlement Amount is a smaller percentage of the damages estimated by Professor Ashenfelter in his expert
report, which was completed earlier this week.  At the time Plaintiffs agreed with St. Peter's upon the two percent
figure, however, the only damages estimate Plaintiffs had was Professor Farber's lower, illustrative amount.

experts, and to comply with reasonable requests for documents and data for the remainder of the litigation constitute additional fair, reasonable and adequate consideration that provides substantial value to the Settlement and Litigation Classes.  In addition, the non-settling Defendants are subject to joint and several liability and members of the Litigation Class, including the members of the SPH Settlement Class, maintain the right to collect damages from any of the non-settling Defendants for the liability of St. Peter's.  Furthermore, the claims of the supervisory, managerial and advanced practice nurses against St. Peter's will be dismissed without prejudice.  In addition, to the extent those same nurses were also direct patient care nurses during some portion of the class period, those nurses are still also SPH Settlement Class members and will participate in the Settlement.

### C.  The Proposed Settlement Does Not Disclose Grounds to Doubt Its Fairness

In addition to being well within the range of possible approval, the proposed settlement does not disclose any ground for the Court to doubt its fairness.  Because vigorous, arm's length negotiations between seasoned counsel protect against collusion and advance the fairness considerations of Rule 23(e), settlements resulting from such negotiations are entitled to deference from the court.  *See, e.g., In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 419, 430 (S.D.N.Y. 2001) (noting that "the opinion of experienced and informed counsel is entitled to considerable weight" in deciding whether to approve a settlement).

Here, the settlement was reached after vigorous, arm's length and hard-fought negotiations.  The Class was represented by counsel with extensive experience in litigating antitrust class actions, and Defendant was represented by similarly experienced counsel.  In preparation for such negotiations, Class Counsel undertook a diligent and thorough investigation of the legal and factual issues posed by this litigation.  Class Counsel reviewed over 83,000 documents produced by St. Peter's and the other Defendants, including St. Peter's employment

databases, and deposed numerous individuals employed by Defendants, including six from St.

Peter's.  Plaintiffs briefed their motion for class certification, which necessitated retaining an

expert labor economist who analyzed St. Peter's employment databases, presented a damages

formula and has continued to advise Class Counsel.  The class certification briefing and

preparation of the related expert reports have assisted both Plaintiffs and St. Peter's in

identifying the material issues in this case.  Thus, Class Counsel are significantly informed as to

the facts of the case and the strengths of the claims asserted.

The arm's length nature of the negotiations and the participation of experienced counsel

throughout the process strongly support the conclusion that the proposed settlement is fair,

reasonable and adequate.  Nothing in the course of the negotiations or in the substance of the

proposed settlement presents any reason to doubt its fairness.

### D.  The Proposed Settlement Achieves an Excellent Result for the Class, Particularly Given the Expense, Duration and Uncertainty of Continued Litigation

Antitrust class actions are "notoriously complex, protracted, and bitterly fought."

*Weseley v. Spear, Leeds & Kellogg,* 711 F. Supp. 713, 719 (E.D.N.Y. 1989).  Continuing this

litigation against St. Peter's would entail a lengthy and expensive legal battle, involving complex

legal and factual issues.[7]  Motions would continue to be vigorously contested.  Additionally, St.

Peter's would assert various defenses, and a jury trial might well turn on close questions of

proof, many of which would be the subject of complicated expert testimony, making the outcome

of a trial uncertain for both parties.  *See, e.g., In re NASDAQ Market-Makers Antitrust Litig.*, 187

F.R.D. 465, 475-76 (S.D.N.Y. 1998) ("*NASDAQ II*") ("Antitrust litigation in general, and class

action litigation in particular, is unpredictable").  Moreover, even after trial is concluded, there

would very likely be one or more lengthy appeals.  *See In re Michael Milken & Assocs. Sec.*

---

[7] Because Plaintiffs' Counsel may have to litigate against the other Defendants through trial and appeal, their duties to the Class preclude a more detailed discussion of their potential litigation risks.

*Litig.*, 150 F.R.D. 57, 65 (S.D.N.Y. 1993).

Against this background, the Settlement represents an excellent result for the members of the SPH Settlement Class.  St. Peter's $2,685,622 payment provides for significant compensation to the SPH Settlement Class that will be available much earlier than if litigation against St. Peter's continued through trial and appeal.  Because the "complexity, expense and likely duration of the litigation," the "risks of establishing liability … [and] damages," and "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation" weigh in favor of the Settlement Agreement, it certainly falls within the possible range of approval as a "fair, reasonable, and adequate" settlement of the SPH Settlement Class's claims.  *See Grinnell Corp.,* 495 F.2d at 463.  In addition to a significant cash payment, the Settlement also benefits the Settlement and Litigation Classes by securing St. Peter's agreement to cooperate in further formal and informal discovery, as described above, for the remainder of the litigation against the non-settling Defendants.

Therefore, in light of the risks faced by Plaintiffs, the significant monetary benefits achieved by the settlement, St. Peter's agreement to cooperate in further discovery, the fact that claims based on underpayments of wages as a result of St. Peter's participation in the conspiracy remain in the case under principles of joint and several liability (and therefore may still be pursued against the remaining Defendants), and the fact that the claims against St. Peter's by supervisory, managerial and advanced practice nurses are only dismissed without prejudice, the settlement is well within the range of being fair, reasonable and adequate and should be preliminarily approved.

## IV.  CERTIFICATION OF THE PROPOSED SPH SETTLEMENT CLASS IS WARRANTED.

As part of approving the settlement, the Court must also approve and certify the proposed SPH Settlement Class.  Rule 23 of the Federal Rules of Civil Procedure outlines the prerequisites

for certification.  "Although the rule is silent as to certifying a class 'for settlement purposes only,' the Second Circuit Court of Appeals and the United States Supreme Court have recognized this judicial invention."  *In re Host America Corp. Secs. Litig.*, No. 05-CV- 1250, 2007 WL 3048865, at *1 (D. Conn. Oct. 18, 2007) (citations omitted).  Moreover, the Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of settlement.  *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982).  Courts in the Second Circuit favor "the liberal construction of Rule 23" and exercise "broad discretion when they determine whether to certify a class."  *Pecere v. Empire Blue Cross & Blue Shield*, 194 F.R.D. 66, 69 (E.D.N.Y. 2000) (citations omitted).  Courts are to resolve any doubts in favor of certifying the class.  *See In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 239 (E.D.N.Y. 1998).

Here, as previously noted, Plaintiffs seek to certify a more limited SPH Settlement Class than the Litigation Class certified by this Court.  The Second Circuit, recognizing the importance of settlements, has permitted the certification of a narrower settlement class than alleged in the original complaint.  *See In re Holocaust Victim Assets Litig.*, 225 F.3d 191 (2d Cir. 2000) (holding that "the broad language of a complaint in a class action lawsuit does not vest in putative class members a right to be part of the [settlement] class ultimately certified by the District Court").  As previously discussed, the proposed SPH Settlement Class is defined in the same way as the NEH and Seton Settlement Classes, which the Court has certified as to whether there was an antitrust violation and legal injury for purposes of preliminarily approving the settlements with those two Defendants.

Following the Court's decision to certify the NEH and Seton Settlement Classes as to whether there was an antitrust violation and whether there was legal injury, the analysis as to the SPH Settlement Class should yield the same result – certification of the SPH Settlement Class as

to two elements which the Court has held are sufficient to approve and effectuate a monetary

class settlement.   First, as this Court has previously found for the Litigation Class and for both

the NEH and Seton Settlement Classes, the proposed SPH Settlement Class satisfies each of the

Rule 23(a) prerequisites.   Second, as discussed, the Litigation Class and the NEH and Seton

Settlement Classes were certified with respect to whether there has been a violation of antitrust

law and whether there has been legal injury to the Class because of the alleged conspiracy.   The

Court's previous analysis should be applied to the SPH Settlement Class with the same result.

### A.  The Requirements of Rule 23(a) and (g) Are Satisfied

Plaintiffs seeking class certification must first establish that the prerequisites of Rule

23(a) – numerosity, commonality, typicality, and adequacy – have been met.   *Velez v. Novartis

Pharms. Corp.*, 244 F.R.D. 243, 256 (S.D.N.Y. 2007).   The Court must also determine that

proposed Class Counsel are qualified under the criteria of Rule 23(g).   Fed. R. Civ. P.

23(g)(1)(B).   The Court already held that the Litigation Class satisfies each of the Rule 23(a)

requirements, and proposed Class Counsel for this SPH Settlement Class are the same law firms

that the Court already approved as Class Counsel for the Litigation Class and for the NEH and

Seton Settlements.  *See* Class Certification Decision at 4-7; December 17, 2008 Order (Docket

No.  245); Order Granting Preliminary Approval of Settlement of Class Action and Authorizing

the Dissemination of Notice ¶ 5 (Docket No. 272 May 14, 2009).   The Court's finding that the

broader Litigation Class satisfied the elements of Rule 23(a) supports the same finding for the

narrower SPH Settlement Class that contains a subset of the nurses in the Litigation Class.

Plaintiffs also respectfully submit that Class Counsel continue to be fully qualified to represent a

class of nurses under Rule 23(g) for this settlement.

**B.  The Court Has Previously Found that the Requirements of Rule 23(b)(3) Are Satisfied as to Whether There Has Been an Antitrust Violation and Whether there Has Been Legal Injury and that this is Sufficient to Preliminarily Approve the Settlement**

Under Rule 23(b)(3), the Court must find that "questions of law or fact predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  The Supreme Court has stated that "[p]redominance is a test readily met in certain cases alleging . . . violations of the antitrust laws. . . ."  *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997).  "In order to meet the predominance requirement of Rule 23(b)(3), a plaintiff must establish that 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof.'"  *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d. Cir. 2001) (internal citations omitted), *overruled on other grounds*, *In re Pub. Offering Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006).  The Court has previously found, in the context of the NEH and Seton Settlement Classes and the Litigation Class, that common evidence can be used to prove that there has been a violation of antitrust law and legal injury to the Class as a result of that violation.  Specifically, in its July 28, 2008 Order, this Court found that Plaintiffs had established that whether there was an antitrust violation could be demonstrated by evidence common to all members of the broader Litigation Class.  *See* Class Certification Decision at 8.  This Court has also found that proof of the legal question, "whether any … injury [suffered] is 'injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful'" is a common question for the broader class.  *See Id.* at 9.

Following its certification of the Litigation Class on these issues, the Court also certified the NEH and Seton Settlement Classes as to whether there has been a violation of antitrust law and legal injury to the class.  Decision & Order at 2 (Dkt. No. 271 May 14, 2009).  The Court

held that certification as to these two issues was sufficient to preliminarily approve the NEH and

Seton Health Settlements:

> This conclusion should not have any impact on the proposed Northeast Health and Seton Health settlements because the Court is certifying the two settlement classes on the issues of violation of the anti-trust laws and legal injury. These specific issue settlement classes can be settled under the proposed settlement terms without any need to certify the issues of injury-in-fact and/or damages.

*Id.* Because the SPH Settlement Class is defined in the same way as the NEH and Seton

Settlement Classes, the same reasoning applies here and should result in the same

outcome.

## V.  THE FORM OF NOTICE SHOULD BE APPROVED AND NOTICE OF THE PROPOSED SETTLEMENT SHOULD BE GIVEN TO LITIGATION AND SPH SETTLMENT CLASS MEMBERS

Rule 23 requires that notice of a settlement be "the best notice practicable under the

circumstances, including individual notice to all members who can be identified through

reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also* Alba Conte & Herbert Newberg,

NEWBERG ON CLASS ACTIONS, §8.2 at 162-65 (4th ed. 2002).

The forms of notice attached to the accompanying proposed Order are the same as the

notices provided to the Court on June 10, 2009 (Docket No. 281), except for additional language

needed to "fold in" the St. Peter's Settlement.  The June 10, 2009 notices simply combined the

separate notices the Court had approved for mailing and publishing to the NEH and Seton

Settlement Classes and the Litigation Class.  *See* Order Granting in Part and Denying in Part

Plaintiffs' Motion for Approval of Notice Plan or Form of Notice (Dkt No. 245 Dec. 17, 2008);

Order Granting Plaintiffs' Motion for Preliminary Approval of Settlement with Northeast Health

(Dkt. No. 265 May 1, 2009); Order Granting Plaintiffs Motion for Preliminary Approval of

Settlement with Seton Health (Dkt. No. 272 May 14, 2009).  The other Defendants had reviewed

and signed off on the June 10, 2009 notices before they were submitted to the Court.  The notices

accompanying this motion differ from the June 10, 2009 notices only in that they include discussion of the St. Peter's Settlement.

Similarly, the method of sending the new forms of notice to the Classes is the same as the Court previously approved.  First, the long-form notice notice will be mailed to each member of the Settlement and Litigation Classes who can be identified with reasonable effort from Defendants' employment records as well as to anyone who requests such notice.  The form of written notice to be mailed is attached to the proposed Order as Exhibit 1.  Second, a summary notice of the proposed Settlement will be published in Albany's largest paper, the *Albany Times Union*.  The form of summary notice is attached to the proposed Order as Exhibit 2.

The form and manner of notice proposed here fulfill all of the requirements of Rule 23, and due process, and Class Counsel request that the Court direct that notice be given to SPH Settlement Class members as provided herein.

## VI.  CONCLUSION

The Settlement is an excellent result for the SPH Settlement Class in this complex and hard-fought antitrust class action.  Thus, Plaintiffs respectfully request that the Court grant their motion and enter an order (1) preliminarily approving the settlement and finding that the proposed settlement is sufficiently fair, reasonable and adequate to allow dissemination of notice of the settlement to the proposed SPH Settlement Class; (2) certifying the SPH Settlement Class, on the same issues that the Court certified the NEH and Seton Settlement Classes; (3) appointing Cohen Milstein Sellers & Toll, P.L.L.C., James & Hoffman, PC, and Towne Bartkowski & DeFio Kean, PC, as Class Counsel for the SPH Settlement Class, and Wendy Fleischman and Cindy Cullen as Class Representatives; (4) approving the form of the class notice; (5) approving the notice plan and directing that notice be mailed; (6) establishing a deadline for filing papers in support of final approval of the proposed settlement and a request for reimbursement of costs and

expenses; (7) establishing a deadline for the filing of objections by SPH Settlement Class

members; (8) establishing a deadline for SPH Settlement Class members to exclude themselves

from the proposed SPH Settlement Class; (9) establishing a date for a hearing on final approval

of the proposed settlement; (10) ordering a stay of all proceedings against St. Peter's except

those proceedings provided for or required by the Settlement Agreement; and (11) authorizing

Class Counsel to pay the cost of providing notice to the Class, taxes, tax expenses and charges of

the escrow agent from the Settlement Fund as they are incurred.  A proposed Order is being filed

concurrently herewith.

 Dated this 9th day of July, 2009

       Respectfully submitted,

     By:  /s/ DANIEL A. SMALL
        Daniel A. Small
        Patrick A. Tillou
        Kalpana Kotagal, Bar No. 97724
        Besrat J. Gebrewold
        COHEN MILSTEIN SELLERS
        & TOLL PLLC
        1100 New York Avenue, N.W.,
        Suite 500 West
        Washington, D.C. 20005
        Tel: (202) 408-4600
        Fax: (202) 408-4699

        David P. Dean
        Emilie S. Kraft
        JAMES & HOFFMAN
        1101 17th Street, N.W., Suite 510
        Washington, D.C. 20036-4748
        Tel: (202) 496-0500
        Fax: (202) 496-0555

        Mark A. Griffin
        Raymond J. Farrow
        KELLER ROHRBACK LLP
        1201 Third Avenue, Suite 3200
        Seattle, WA 98101-3052
        Tel: (206) 623-1900
        Fax: (206) 623-3384

Arnold Levin
Charles E. Schaffer
LEVIN, FISHBEIN, SEDRAN &
BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500
Fax: (215) 592-4663

Daniel E. Gustafson
Brian Williams
GUSTAFSON GLUEK PLLC
608 Second Avenue South
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622

James T. Towne Jr.
Michael Rhodes-Devey, Bar No. 102438
TOWNE, BARTKOWSKI &
DEFIO KEAN, P.C.
450 New Karner Road
Albany, N.Y. 12205
Tel: (518) 452-1800
Fax: (518) 452-6435

**Attorneys for Plaintiffs**