Edgar N. James
Steven K. Hoffman
Judith A. Scott
Kathy L. Krieger
David P. Dean
Marie Chopra
Emilie S. Kraft
Jeff Vockrodt
Darin M. Dalmat
Rachel D. Lev*

**JAMES & HOFFMAN**
A Professional Corporation
1101 17th Street, N.W., Suite 510
Washington, D.C. 20036-4748

(202)496-0500
Facsimile: (202)496-0555
www.jamhoff.com

ejames@jamhoff.com
skhoffman@jamhoff.com
judy.scott@seiu.org
kllkrieger@jamhoff.com
dpdean@jamhoff.com
mchopra@jamhoff.com
eskraft@jamhoff.com
jvockrodt@jamhoff.com
dmdalmat@jamhoff.com
rdlev@jamhoff.com

* Not Admitted in DC;
supervised by principals of the firm

November 29, 2009

**VIA ELECTRONIC FILING**

Hon. Thomas J. McAvoy
United States District Court for the
    Northern District of New York
206 Federal Building
15 Henry Street
Binghamton, New York 13901

    Re: *Fleischman v. Albany Medical Center, et al.*, Docket No. 06-cv-765 (THM/DRH)

Dear Judge McAvoy:

    Pursuant to this Court's November 20, 2009 Text Order, Plaintiffs respectfully submit this letter in response to the issues raised in Defendants Ellis Hospital and Albany Medical Center's ("Defendants") November 18, 2009 letter (Docket No. 319) ("Def. Ltr.") and in support of Plaintiffs' Motion to Amend the Class Certification Order and accompanying Memorandum in Support ("Pls. Mem.").  (Docket No. 317).

    Defendants have long had notice of Plaintiffs' intention to file the instant Motion to Amend the Class Certification Order based on Professor Orley Ashenfelter's methodologies for analyzing antitrust impact and damages.  Yet, rather than responding to the merits of Plaintiffs' Motion, Defendants oppose it almost solely on procedural grounds.  Rules 23(c)(1)(C) and 23(c)(5) of the Federal Rules of Civil Procedure, however, endow this Court with discretion to amend its prior class certification order (Docket No. 218) at any time before final judgment and to divide a class into subclasses when appropriate.  As a result, this Court has both the ability, as well as the obligation, to reassess its prior certification order in light of the facts of record as they have developed since the Court's July 28, 2008 Order.  For the reasons fully set forth in Plaintiffs' Memorandum, those developments require certification of the narrow Impact and Damages Subclass defined in Plaintiffs' Memorandum.

<u>Defendants Have Had Ample Time to Address the Substance of Plaintiffs' Motion</u>

Hon. Thomas McAvoy
November 29, 2009
Page 2

As an initial matter, Defendants have no basis to suggest that they were unfairly surprised by Professor Ashenfelter's impact and damages methodologies and that they should now be excused from responding to the substance of Plaintiffs' Motion. Defendants suggest that they first became aware of Plaintiffs' intention to amend the July 28 Order based on Professor Ashenfelter's methodologies only on October 29, 2009. Def. Ltr. at 2.[1]

The litigation record, however, belies that claim. Plaintiffs relied on Professor Ashenfelter's methodologies, as presented in his supporting declaration, in their motions to certify the three settlement classes in this case, the first of which was filed on March 9, 2009 (Docket No. 248), and Defendants have known at least as early as April 13, 2009 that Plaintiffs planned to amend the certification order to seek a narrowed subclass that excluded supervisory, managerial, and advanced practice nurses. *See* Transcript of Proceedings on Northeast Health Settlement at 13-14 (Apr. 13, 2009) (counsel for Defendants recognizing that Professor Ashenfelter's methodologies on impact and damages could provide a basis for amending the litigation class); *see also* Defendant Ellis Hospital's Response to Plaintiffs' Motion for Preliminary Approval of Settlement at 3-4 (April 24, 2009) (Docket No. 262) (recognizing that it may become necessary for the Court to consider certification of impact and damages based on Professor Ashenfelter's approach). Defendants Albany Medical Center and Ellis Hospital even filed substantive responses in opposition to certification of the Northeast Health and Seton settlement classes that addressed Professor Ashenfelter's analysis. *See* Defendants AMC's and Ellis Hospital's Response to Plaintiffs' Motion for Preliminary Approval of Settlement at 4-7 (March 27, 2009) (Docket No. 252); Defendant Ellis Hospital's Response to Plaintiffs' Motion for Preliminary Approval of Settlement at 6-9. In those responses, AMC and Ellis relied heavily on expert reports submitted by the defendants in the Detroit nurse wage litigation, where Professor Ashenfelter presented a complete analysis (based on the same methodologies as here) in a full merits report. *See id.* Moreover, as early as May 14, 2009, the Court agreed with Defendants' recognition that Professor Ashenfelter's methodology, if reliable, could provide a basis to amend its July 28 class certification order. *See* Decision & Order (May 14, 2009) (Docket No. 271) (reconsidering certification of settlement classes on injury-in-fact and damages because Defendants had not yet had an opportunity to rebut Professor Ashenfelter's methodology). And on August 11, 2009, Plaintiffs' counsel announced to the Court and Defendants that Plaintiffs planned to file a motion for certification of a subclass in the following weeks. *See* Transcript of Proceedings on St. Peter's Hospital Settlement at 11 (Aug. 11, 2009). The record makes clear that Defendants have known for more than eight months that Plaintiffs had engaged Professor Ashenfelter to provide a methodological basis for certifying a narrower litigation class. Therefore, their claim of unfair surprise falls flat.

Nor have Defendants sat on their heels during that time. They produced their own expert report in rebuttal to Plaintiffs' reports over two months ago. Report of Professor Robert D. Willig (Sept. 4, 2009). Professor Willig devotes 47 pages of that report specifically to Professor Ashenfelter's benchmark

---

1   Indeed, Defendants incongruously imply that Plaintiffs seek improperly to bootstrap Professor Ashenfelter's methodology from one case to another. Def. Ltr. at 2. Yet even Defendants cannot dispute that Professor Ashenfelter submitted his report in *this case* on June 21, 2009 based on data specific to the Albany Metropolitan Statistical Area. Ex. 1 to Pls. Mem.

Hon. Thomas McAvoy
November 29, 2009
Page 3

methodology for demonstrating impact and estimating damages. *Id.* at 129-76. Moreover, Defendants conducted a two-day deposition of Professor Ashenfelter. Deposition of Orley Ashenfelter (Aug. 13-14, 2009). Accordingly, Defendants have long had all the material they need to oppose the substance of Plaintiffs' Motion. Nevertheless, Defendants complain it would be "premature" for them to submit a substantive opposition and that they must await Plaintiffs' rebuttal reports and Defendants' rebuttal deposition of Plaintiffs' experts before doing so. Def. Ltr. at 5. That contention is simply absurd. As Magistrate Judge Homer previously ordered, Defendants are entitled to only one round of expert reports and depositions before they must oppose class certification on its substance. *See* Scheduling Order (Dec. 4, 2007) (Docket No. 180) (Defendants' opposition due one week after deposition of Plaintiffs' experts); Scheduling Order (Sept. 25, 2007) (Docket No. 174) (same).

In short, Defendants knew of Plaintiffs' intention to move for certification of a narrower Impact and Damages Subclass for over eight months, they had Plaintiffs' expert reports for over five months (since June 21-22, 2009, *see* Pls. Mem. at 1), and they deposed Plaintiffs' expert over three months ago. Armed with all this evidentiary ammunition, Defendants' decision to respond to Plaintiffs' Motion only on procedural grounds resulted solely from their own tactical choices rather than any alleged prematurity of Plaintiffs' Motion. By failing to respond on the substance of Plaintiffs' Motion despite having had ample opportunity to do so, Defendants have waived their right to do so. *See, e.g.*, *In re Crude Oil Commodity Litig.*, No. 06 Civ. 6677, 2007 U.S. Dist. LEXIS 66208, at *6 (S.D.N.Y. Sept. 7, 2007) (moving papers devoid of "any substantive basis on the merits" inadequate to avoid waiver). As a result, there is no basis for this Court to defer consideration of Plaintiffs' Motion.[2]

<u>Newly Discovered Evidence of the Narrow Scope of the Conspiracy, Available Only Through Merits Discovery, Supports Plaintiffs' Motion to Amend the Class and Create a Subclass</u>

Defendants attack Plaintiffs' Motion primarily on the basis that no new facts or circumstances permit the Court to revisit its prior ruling on class certification. Def. Ltr. at 1, 2-4. The parties agree on the general premise that changed circumstances warrant amendment of class certification orders. Defendants contend that there are no developments or changed circumstances here to warrant such an amendment. Def. Ltr. at 3. As shown below, however, merits discovery in this case produced evidence that the conspiracy was narrower in scope than Plaintiffs initially alleged. Specifically, that evidence shows that the conspiracy targeted only Staff Registered Nurses ("RNs") and did not encompass supervisory, managerial, or advanced practice nurses ("APNs"). Pls. Mem. at 5-6. Amending the class certification order to certify the Impact and Damages Subclass as to all issues is entirely appropriate in light of that factual development.

As Plaintiffs showed in their Memorandum, this Court bears an affirmative obligation until final judgment under Fed. R. Civ. P. 23(c)(1)(C) to "define, redefine, subclass, and decertify as appropriate in

---

2   While Defendants have unequivocally waived their right to respond on the merits of Plaintiffs' Motion, if the Court desires full briefing on the merits, it should order Defendants to submit their opposition on the merits no later than December 16, 2009 and grant Plaintiffs leave to file a reply on the merits in support of their motion no later than December 30, 2009.

Hon. Thomas McAvoy
November 29, 2009
Page 4

response to the progression of the case from assertion to facts." *Boucher v. Syracuse Univ.*, 164 F.3d 113, 118 (2d Cir. 1999),[3] cited in Pls. Mem. at 20; *see also* Fed. R. Civ. P. 23(c)(5) ("When appropriate, a class may be divided into subclasses that are each treated as a class under this rule."). Moreover, a court that "is not satisfied that the requirements of Rule 23 have been met should refuse certification *until they have been met*," as long as they are met any time before "final judgment rather than 'the decision on the merits.'" Adv. Comm. Notes to Fed. R. Civ. P. 23 (2003) (emphasis added). Indeed, the Court's obligation to revisit class certification applies equally to orders that grant or deny certification, in whole or in part. Fed. R. Civ. P. 23(c)(1)(C). Thus, contrary to Defendants' suggestion that the Federal Rules permit amendment only for defendants' benefit to decertify or narrow the class, Def. Ltr. at 3, the plain text of Rule 23(c)(1)(C) and courts' application of the rule demonstrate that a court's obligation to amend its prior certification order applies equally to plaintiffs seeking amendment of an order denying certification and to defendants seeking decertification of an order granting certification.[4] *See, e.g., Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 1:04-CV-3066, 2009 U.S. Dist. LEXIS 30937, at *35 (N.D. Ga. Feb. 9, 2009) (granting class certification based on an amended class definition and a new expert theory after an initial denial); *Lovely H. v. Eggleston*, No. 05 Civ. 6920, 2006 U.S. Dist. LEXIS 83424, *10 (S.D.N.Y. Nov. 15, 2006) (broadening class definition to remove geographical restriction after defendant closed geographic hubs); *Richards v. Fleetboston Financial Corp.*, 238 F.R.D. 345, 352 (D. Conn. 2006) (certifying a new claim in light of court's continuing duty to assure adequate representation). As the *Columbus Drywall* court recognized,

> [w]ith regard to the amended class definition, it is well-recognized that the act of refining a class definition is a natural outcome of federal class action practice. This is particularly true in antitrust cases where the proof and details of the alleged conspiracy are largely in the hands of the alleged co-conspirators. As a result, it is not uncommon for a class to change radically as discovery progresses.

2009 U.S. Dist. LEXIS 30937, at *63 (internal quotations and citations omitted).

Defendants' authority fully accords with these obligations. *See* Def. Ltr. at 3-4, citing *J.P. Morgan Chase Cash Balance Litig.*, 225 F.R.D. 130, 135 (S.D.N.Y. 2009) (amending class certification to include

---

[3] In *Boucher*, the Second Circuit relied on the Fifth Circuit's decision in *Richardson v. Byrd*, 709 F.2d 1016, 1019 (5th Cir. 1983), in which defendants appealed the district court's grant of class certification after final judgment. They argued that class certification should not have been granted because the named plaintiff, an employee, could not represent a class that included job applicants. *Id.* The Fifth Circuit recognized that "[t]he district judge must define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts," and *based on evidence introduced at trial* of a practice that adversely affected both applicants and employees, it held that the class was appropriately certified. *Id.* at 1020. By relying on *Richardson*, the Second Circuit endorsed the proposition that evidentiary development during the course of a case can be a basis for reassessing a class definition.

[4] In point of fact, Plaintiffs are moving here to amend the class in order to *narrow* the class definition to create a subclass. Thus, even were Defendants' characterization of the limited scope of Rule 23(c)(1)(C) alterations and amendments accurate, and it is not, Plaintiffs' Motion satisfies that characterization as it seeks to narrow the July 28 class certified by the Court.

Hon. Thomas McAvoy
November 29, 2009
Page 5

former employees who received lump-sums in light of change in law); *In re Harcourt Brace Janovich, Inc. Secs. Litig.*, 838 F. Supp. 109, 115 (S.D.N.Y. 1993) (noting court's obligation to "monitor[] its class decisions in light of the *evidentiary development* of the case") (emphasis added); *Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008) (in immigration appeal, consideration of new evidence consistent with law of the case because it was relevant and previously unavailable) (law of the case analogized to amendment of certification by *J.P. Morgan Chase*).

The determinative question before this Court, then, is not whether it must monitor its July 28 decision in light of factual developments in the case (it clearly must), but whether the particular factual developments Plaintiffs have identified now warrant certification of the Impact and Damages Subclass as to all issues. Because the possibility of using methodologies underlying Plaintiffs' Motion could only be known from evidence available through merits discovery, the factual development of this case clearly warrants amendment of the July 28 Order and the creation of the proposed Impact and Damages Subclass.

Magistrate Judge Homer bifurcated merits and certification discovery on October 26, 2006. *See* Order (Oct. 26, 2006) (Docket No. 57). Shortly thereafter, the Magistrate ruled that evidence of exchanges of wage information went to the merits rather than to class certification. Transcript of Status/Discovery Conference at 33-37 (Jan. 23, 2007) (Docket No. 102). As a result, during the class certification phase of discovery, Plaintiffs had no way of knowing which precise categories of nurses were subject to the conspiracy to exchange wage information. That information was not available until after merits discovery began.

Absent evidence as to the scope of the conspiracy, Plaintiffs offered a methodology, developed by Professor Farber, for analyzing impact and damages that would be independent of the precise scope of the conspiracy and that assumed the conspiracy targeted either the entire class or only an undetermined subset of the class. Pls. Mem. at 2-3. After reviewing the evidence Defendants produced in merits discovery, Plaintiffs discovered for the first time that the conspiracy targeted staff RNs but not APNs, supervisors, and managers. *See* Pls. Mem. at 5-11. With this new knowledge, Plaintiffs became free to offer a benchmark methodology, developed by Professor Ashenfelter, for analyzing impact and damages that was carefully tailored to the scope of this more-homogenous group.

For the reasons set out in Plaintiffs' Memorandum, Professor Ashenfelter's benchmark methodology fully addresses the concerns raised by this Court in its July 28 certification. Pls. Mem. at 3-4, 16-19. Specifically, Professor Ashenfelter estimates competitive earnings for each Defendant by using fees paid to temporary agencies for services provided by the agencies' nurses as a benchmark. Pls. Mem. at 17. Instead of assuming an unrealistic degree of interchangeability in the nursing profession, this benchmark provides an ideal measure of impact because agency nurses perform work that would otherwise be performed by members of the proposed subclass. *Id.* Similarly, Professor Ashenfelter's benchmark cures this Court's concern with speculative damages formulas that focus on averages while ignoring non-wage compensation. By comparing adjusted agency fees to nurses' actual earnings reflected in Defendants' payroll records, Professor Ashenfelter provides a common formula for precisely calculating damages for each individual.

Hon. Thomas McAvoy
November 29, 2009
Page 6

Pls. Mem. at 18-19.

Defendants nevertheless charge that there "is nothing in Prof. Ashenfelter's report that could not have been presented to the Court at the time they submitted their original class certification expert report (from Prof. Farber) in December 2007." Def. Ltr. at 4. That charge, however, overlooks that, simply put, Plaintiffs could not have offered Professor Ashenfelter's theory in support of the broad July 28 Class because the agency data produced by Defendants and reviewed by Professor Ashenfelter contained no agency rates for APNs and managers, and data for one apparent type of supervisory nurse from only two hospitals, thus Plaintiffs could not have calculated agency benchmarks for all the nurses in the broader class. Once it became clear, however, that the conspiracy targeted only the Impact and Damages Subclass rather than the broader July 28 Class, the lack of agency benchmark data for certain kinds of nurses in the broader class posed no barrier to Professor Ashenfelter's theory in support of the narrower subclass.[5]

Thus, the discovery of the narrow scope of the conspiracy constituted the changed circumstance that enabled Plaintiffs to develop a new expert analysis that addresses the concerns this Court raised in its July 28 Order. *See, e.g.*, *In re Polypropylene Carpet Antitrust Litig.*, 996 F. Supp. 18, 21-22 (N.D. Ga. 1997) (certifying class after plaintiffs amended class definition in response to concerns raised by the court in its initial order and at an evidentiary hearing).

It is entirely appropriate to amend the July 28 Order to create the Impact and Damages Subclass in light of this factual development during the litigation. *See, e.g., In re Nassau County Strip Search Cases*, 461 F.3d 219, 231 (2d Cir. 2006) (certifying class as to liability based on new class definition offered two years after court initially denied certification, and remanding to consider whether to certify a class or subclass as to damages); *In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124, 141 (2d Cir. 2001) (subclass procedure available to overcome individualized damages issues that might arise in course of class litigation); *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968) (while subclasses may place additional burdens on judges, they are often necessary to protect the rights of absent plaintiffs and to administer complex litigation efficiently); *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 1:04-CV-3066, 2009 U.S. Dist. LEXIS 30937, at *35 (N.D. Ga. Feb. 9, 2009) (granting class certification based on an amended class definition and a new expert theory after an initial denial); *Lovely H. v. Eggleston*, No. 05 Civ. 6920, 2006 U.S. Dist. LEXIS 83424, *10 (S.D.N.Y., Nov. 15, 2006) (broadening class definition to remove geographical restriction after defendant closed geographic hubs); *Richards v. Fleetboston Financial Corp.*, 238 F.R.D. 345, 352 (D. Conn. 2006) (certifying a new claim in light of court's continuing duty to assure adequate representation).

Indeed, the Federal Rules Advisory Committee has noted that, for certification decisions to be made on an informed basis, courts may occasionally require "discovery into the 'merits'" while avoiding "an

---

5   In light of the new evidence that the scope of the conspiracy targeted only the nurses in the putative subclass, we are not aware of any authority, and defendants have cited none, that would prevent this Court from exercising its discretion to consider Professor Ashenfelter's theory even if it were true, which it is not, that it could also have been presented earlier for the broader class.

Hon. Thomas McAvoy
November 29, 2009
Page 7

artificial and ultimately wasteful division between 'certification discovery' and 'merits discovery.'" Adv. Comm. Notes to Fed. R. Civ. P. 23 (2003). After the Second Circuit's decision in *In re Initial Public Offering Secs. Litig*. ("*In re IPO*"), 471 F.3d 24, 41 (2d Cir. 2006), it is now especially clear that certification issues and merits issues may overlap. When they do, courts must definitively assess Rule 23's requirements. *Id.* To do so, "the district judge must receive *enough evidence* . . . to be satisfied that each Rule 23 requirement has been met." *Id* (emphasis added). As a result, after *In re IPO*, the line between class certification discovery and merits discovery can no longer be so firmly demarcated. To the extent that Courts nevertheless bifurcate, in order to conserve resources or for other reasons, evidence produced during merits discovery may on occasion, as here, be relevant to class certification issues. When that happens, courts must consider such evidence as part of their continuing duty to monitor class certification decisions throughout the course of litigation. This is especially true in antitrust actions, where, because the proof is largely in the hands of the conspirators, it is "not uncommon for a class to change radically as discovery progresses." *Columbus Drywall*, 2009 U.S. Dist. LEXIS 30937, at *63. Here, the proof regarding the scope of the conspiracy was in the hands of Defendants until merits discovery, and now that merits discovery is complete, it is entirely appropriate for this Court to consider that evidence and the expert analysis associated with it in evaluating whether to certify the proposed Impact and Damages Subclass.

   Finally, it must be noted that Plaintiffs' Motion requires virtually no additional burden to the Court or Defendants. The entire record for the Motion was created in the normal course of merits discovery. Further, it is indisputable that Professor Ashenfelter's impact and damages methodologies apply classwide without requiring any individualized inquiries. *See* Pls. Mem. at 16-19. Therefore, the *only* question presented by Plaintiffs' Motion to Amend the Class Certification Order is whether Professor Ashenfelter's methods are reliable. Defendants have already addressed that issue in Professor Willig's expert report as well as in their deposition of Professor Ashenfelter. Moreover, they concede they had already long planned to further address that issue in their forthcoming motion to exclude Plaintiffs' experts under *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). Defs. Ltr. at 1. Therefore, Defendants will fully brief, and this Court will have to decide, the reliability of Professor Ashenfelter's methods as an evidentiary issue. Plaintiffs' Motion simply requires consideration of the very same question in the class certification context. In addition, addressing the merits of Plaintiffs' Motion now could actually be more efficient for the Court and the parties because if the Court decides to certify the Impact and Damages Subclass, it will obviate the need to address a horde of individual damages claims that may end up being presented to the Court as a result of the July 28 Order.

   For all of the foregoing reasons, Plaintiffs respectfully request that this Court decide Plaintiffs' Motion to Amend the Class Certification Order on the merits after oral argument on January 11, 2010, and for the reasons stated in Plaintiffs' Memorandum in support of that motion, this Court should certify the proposed Impact and Damages Subclass.

                       Respectfully Submitted,

Hon. Thomas McAvoy
November 29, 2009
Page 8

/s/ David P. Dean
David P. Dean
Emilie S. Kraft
JAMES & HOFFMAN, PC
1101 17th Street, N.W., Suite 510
Washington, D.C.  20036-4748
Tel: (202) 496-0500
Fax: (202) 496-0555

Daniel A. Small
Besrat J. Gebrewold
COHEN MILSTEIN SELLERS
& TOLL PLLC
1100 New York Avenue, N.W.
Suite 500 West Tower
Washington, D.C.  20005
Tel: (202) 408-4600
Fax: (202) 408-4699

Sharon K. Robertson
COHEN MILSTEIN SELLERS
    & TOLL PLLC
150 East 52nd Street, 30th Floor
New York, N.Y.  10022
Tel: (212) 838-7797
Fax: (212) 838-7745

James T. Towne, Jr.
Michael Rhodes-Devey, Bar No.: 102428
TOWNE, BARTOWSKI &
DEFIO KEAN, PC
450 New Karner Road
Albany, NY  12205
Tel:  (518) 452-1800
Fax:  (518) 452-6435

Arnold Levin
Charles E. Schaffer
LEVIN, FISHBEIN, SEDRAN &
BERMAN

Hon. Thomas McAvoy
November 29, 2009
Page 9

    510 Walnut Street, Suite 500
Philadelphia, PA  19106
Tel: (215) 592-1500
Fax: (215) 592-4663

Mark A. Griffin
Raymond J. Farrow
KELLER ROHRBACK LLP
1201 Third Avenue, Suite 3200
Seattle, WA  98101-3052
Tel: (206) 623-1900
Fax: (206) 623-3384

Daniel E. Gustafson
Jason S. Kilene
GUSTAFSON GLUEK PLLC
608 Second Avenue South
Minneapolis, MN  55402
Tel: (612) 333-8844
Fax: (612) 339-6622

Daniel M. Cohen
CUNEO GILBERT & LADUCA LLP
507 C Street, NE
Washington, DC  20002
Tel:  (202) 789-3960
Fax:  (202) 789-1813

***Attorneys for Plaintiffs***

Attachment

cc:  Counsel for all parties (via e-filing)