UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

WENDY FLEISCHMAN and CINDY CULLEN,
on behalf of themselves and all others
similarly situated,

                        Plaintiffs,

               v.                                                      06-CV-0765

ALBANY MEDICAL CENTER; ELLIS HOSPITAL;
NORTHEAST HEALTH; SETON HEALTH SYSTEM;
ST. PETER'S HEALTH CARE SERVICE,

                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

        Plaintiffs commenced the instant action against Defendants claiming that they conspired amongst themselves to depress the wages of registered nurses in the Albany area in violation of antitrust laws. Presently before the Court is Defendant Ellis Hospital's ("Ellis") Renewed Motion for Summary Judgment.

**I.    FACTS**

        Plaintiffs are registered nurses ("RNs") who allege Defendant Hospitals entered into at least two restraints of trade in violation of the Sherman Act during the class period of June 20, 2002 through June 20, 2006. Count I alleges that Defendants engaged in a continuing conspiracy in restraint of trade to depress the compensation of RNs employed at hospitals in the Albany area. Count II alleges that Defendants have engaged in a continuing agreement

to regularly exchange detailed and non-public information about compensation being paid or to be paid to their RN employees, which not only facilitated the enforcement of the wage suppression conspiracy but unreasonably restrained competition on RN compensation in its own right. Plaintiffs maintain that the alleged conspiracy had the effect of depressing compensation for hospital RNs in the Albany-Schenectady-Troy metropolitan area despite a nursing shortage.

In a Decision and Order dated July 28, 2008, the Court certified a class of registered nurses with respect to two issues: "whether there has been a violation of antitrust law and whether there has been injury to the class that the Sherman Act was designed to prevent." Fleischman v. Albany Medical Center, 2008 WL 2945993, at *7 (N.D.N.Y. July 28, 2008). Following merits discovery, Plaintiffs moved the Court to amend the prior certification order to additionally certify the issues of impact and damages as to a narrower class of registered nurses. The Court denied Plaintiff's motion.

The following facts are undisputed. Ellis is a not-for-profit hospital located in Schenectady, New York. Ellis is the only defendant in this case whose nurses are represented by a labor union. Specifically, the New York State Nurses Association (NYSNA) has represented the Registered Nurses and Assistant Instructors employed by Ellis for the past forty years. Ellis and NYSNA have negotiated and entered into three collective bargaining agreements (CBAs) which cover the entire class period at issue.[1] These CBAs result from negotiations between Ellis and the NYSNA, during which Ellis and NYSNA

---

[1] The CBA agreements at issue ("Class Period CBAs") are: (1) the "2002 CBA" covering March 1, 2002 through February 29, 2004; (2) the "2004 CBA" covering March 1, 2004 through February 29, 2006; and (3) the "2006 CBA" covering March 1, 2006 through February 28, 2010.

exchanged a series of proposals and counter proposals regarding RN wages. The class period CBAs include Ellis's and NYSNA's agreements on all aspects of RN compensation for registered nurses at Ellis who are part of the bargaining unit represented by NYSNA.

It is similarly undisputed that Ellis participated in information exchanges with the other Defendants during the class period and collected RN wage data from the other Defendants. The parties dispute the extent and purpose of these exchanges and the role the collected data played in Ellis negotiations.

The parties also dispute the confidentiality of Ellis's CBAs. The parties agree that: (1) the Class Period CBAs were printed by NYSNA and distributed to hundreds of Ellis RN bargaining unit members; (2) no restrictions were placed on the RN's use or further dissemination of these agreements; and (3) RNs were not asked to return the agreements if they left employment with Ellis. Plaintiffs maintain that the NYSNA considered the CBAs to be confidential. They contend that the NYSNA "[g]enerally, . . . has not and does not, provide copies of its CBAs [to] Ellis management or nurses at other hospitals" and "[w]hile NYSNA provides the Department of Labor a copy of its contracts at the agency's request, it asks that the DOL keep the CBAs confidential." Furthermore, Plaintiffs argue that because no other hospital produced a copy of the CBAs during the course of litigation, the other Defendants did not possess the CBAs. Ellis, on the other hand, contends that the CBAs "between itself and NYSNA constitute non-confidential, publicly available information." They point to the fact that "[i]n some instances, local news outlets publicly reported the agreed-upon wage increases in the CBAs just days after ratification." Interestingly, however, Ellis

attorneys designated the 2002, 2004, and 2006 CBAs as "highly confidential" under the Court's protective order.[2]

Presently before the Court is Ellis's "renewed motion for summary judgment based on its unique status as the lone defendant in this action whose [RNs] are unionized" and the nonstatutory labor exemption. See Mem. of Law in Support of Def. Ellis Hospital's Renewed Motion for Summary Judgment. "On December 11, 2006, this Court denied a motion for summary judgment by Ellis Hospital that was based on the same nonstatutory labor exemption to the antitrust laws that Ellis raises in its 'renewed' motion." See Plaintiffs' Mem. in Opp. to Def. Ellis Hospital's Renewed Motion for Summary Judgment.

In Ellis's renewed motion for summary judgment, it argues that: (1) "the undisputed evidence shows that the wage rates for Ellis RNs during the class period were established exclusively through federally-mandated collective bargaining between Ellis and the [NYSNA] and that these agreed upon wage rates are therefore shielded from plaintiff's antitrust attack by the nonstatutory labor exemption;" and (2) "because the wage rates contained in the collective bargaining agreements between itself and NYSNA constitute non-confidential, publicly available information, it did not violate the Sherman Act by occasionally sharing such information with other hospitals." See Mem. of Law in Support of Def. Ellis Hospital's Renewed Motion for Summary Judgment. Ellis argues that "[f]or these reasons, . . . it is entitled to summary judgment as against plaintiffs' claims that it violated the Sherman Act by '(i) allegedly participating in a conspiracy to depress the compensation of registered nurses in

---

[2] Under the terms of the protective order, for a party to designate a document "confidential," it must have a good faith belief that the document "reflects or discloses its confidential or proprietary information." To designate something "highly confidential," the producing party must believe that the document contains "extremely sensitive confidential and/or proprietary information."

- 4 -

the Albany-Schenectady-Troy Metropolitan Statistical Area; and (ii) allegedly participating in a continuing agreement to exchange detailed and non- public RN compensation information that reduced compensation and depressed RN compensation.'"

Plaintiffs oppose this motion, arguing that: (1) the nonstatutory labor exception does not protect Ellis from "anti-competitive activity . . . engaged in outside of and separate from the collective bargaining process with the nurses' union;" and (2) "aside from the challenged exchanges with other hospitals' human resource personnel, the CBAs and the included wage information were not shared with other hospitals' managements, competing unions, or nurses at other hospitals."

## II.     STANDARD OF REVIEW

Summary judgment, pursuant to Fed. R. Civ. P. 56(c), is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists.  Major League Baseball Properties, Inc. v. Salvino, 542 F.3d 290, 309 (2d Cir. 2008).  Only after the moving party has met this burden is the non-moving party required to produce evidence demonstrating that genuine issues of material fact exist.  Salahuddin v. Goord, 467 F.3d 263, 272-73 (2d Cir. 2006).  The nonmoving party must do more than "rest upon the mere allegations ... of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986);

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); see also Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations ... of the [plaintiff's] pleading ...."). Rather, "[a] dispute regarding a material fact is *genuine* if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Ross v. McGinnis, 00-CV-0275, 2004 WL 1125177, at *8 (W.D.N.Y. Mar. 29, 2004) [internal quotations omitted] [emphasis added]. It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988). In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997) [citation omitted]; Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir. 1990) [citation omitted].

### III.     DISCUSSION

Ellis argues that it is entitled to summary judgment because: (1) the nonstatutory labor exemption shields it from Plaintiffs' antitrust attack; and (2) occasionally exchanging non-confidential, publically available information with other hospitals does not violate the Sherman Act. The Court will address these claims seriatim.

        1.    *Whether the Non-Statutory Labor Exemption Applies*

Ellis argues that "the undisputed evidence shows that the wage rates for Ellis RNs during the class period were established exclusively through federally-mandated collective

bargaining between Ellis and the New York State Nurses Association (NYSNA) and that these agreed-upon wage rates are therefore shielded from Plaintiffs' antitrust attack by the nonstatutory labor exemption." See Docket No. 348.  Plaintiffs counter that the non-statutory exemption does not apply because they do not challenge Ellis' collective bargaining activities or agreements with NYSNA and challenge only Ellis' conspiracies with other, non-unionized hospitals.  See Plaintiffs' Mem. in Opp. to Def. Ellis Hospital's Renewed Motion for Summary Judgment, at 12 ("Plaintiffs claim only that Ellis violated the antitrust laws by conspiring with other hospitals to suppress wages and share wage data outside of any collective bargaining relationship.").  Ellis responds that by claiming the Ellis RNs have been underpaid as a result of alleged collusion between Ellis and other hospitals, Plaintiffs are in effect challenging the CBAs or the bargaining relationship between Ellis and the NYSNA.

"The non-statutory exemption has been inferred 'from federal labor statutes, which set forth a national labor policy favoring free and private collective bargaining; which require good-faith bargaining over wages, hours, and working conditions; and which delegate related rule making and interpretive authority to the National Labor Relations Board.'" Clarett v. National Football League, 369 F.3d 124, 130 (2d Cir. 2004) (quoting Brown v. Pro Football, Inc., 518 U.S. 231, 236 (1996)).  "The purpose of the nonstatutory exemption is to "reconcile [the] conflicting national policies [inherent in the labor and antitrust laws] - one protecting business competition, the other encouraging collective bargaining." Local 210, Laborers' International Union of North America v. Labor Relations Division Associated General Contractors of America, N.Y.S. Chapter, Inc., 844 F.2d 69, 79 ( 2d Cir. 1987).

In Local 201 the Second Circuit stated:

> [a]greements between a union and an employer are exempt from antitrust scrutiny if they are so intimately related to wages, hours and working conditions that the union's successful attempt to obtain the provisions through bona fide arm's length bargaining in pursuant of their own labor union policies, and not at the behest of or in combination with nonlabor groups, falls within the protection of the national labor policy and therefore is exempt from the Sherman Act.

Local 201, 844 F.2d at 79 (quoting Local Union No. 189, Amalgamated Meat Cutters and Butcher Workmen of North America, AFL-CIO v. Jewel Tea Co., 381 U.S. 676, 689-90 (1965). The Second Circuit went on to articulate a two part test to determine whether the nonstatutory exemption applies:

> First, the agreement at issue must further goals that are protected by national labor law and that are within the scope of traditionally mandatory subjects of collective bargaining. Second, the agreement must not impose a "direct restraint on the business market [that] has substantial anticompetitive effects, both actual and potential, that would not follow naturally from the elimination of competition over wages and working conditions [that results from collective bargaining agreements].

Local 210, 844 F.2d at 79-80 ( 2d Cir. 1987) (internal citations omitted).

In the bench decision denying Ellis's original summary judgment motion this Court engaged in extensive discussion of the relevant case law and found that although "there is little doubt that the collective bargaining agreements between Ellis and the nurse's union fall within the scope of the nonstatutory antitrust exemption" . . . "Ellis cannot use its collective bargaining agreement with the nurse's union to insulate any anticompetitive activity it may have engaged in outside of, and separate from, the collective bargaining process with the nurse's union." In sum, the Court stated that because "the Complaint alleges conduct that goes beyond the collective bargaining process between Ellis and the nurses' union," and "there is no evidence before the Court that sharing non-public compensation information with

other hospitals was part of the give and take of a negotiation process" necessary to the collective-bargaining process, "it cannot be said that Ellis's activity falls within the nonstatutory labor exemption."  As an example of behavior that would not be protected by the exemption, the Court explained that Ellis could have "negotiated its wages with the union and then engaged in compensation sharing with other hospitals to ensure that those other hospitals kept their wages down."

In a factually analogous case, Reed v. Advocate Health Care, 2007 WL 967932, at * 2 (N.D.Ill. March 28, 2007), the defendant hospital maintained that "because the wages it pays its RNs are the result of a collective bargaining agreement ("CBA"), the nonstatutory exemption makes the labor laws exclusive and antitrust-related determinations 'inappropriate.'" The plaintiffs responded that "because they do not challenge [defendants'] collective bargaining activities or agreements with the [labor union] but rather certain agreements and collusion among [defendant] and various non-unionized hospitals, the nonstatutory exemption is inapplicable." Id. at *3.  The Court in Reed held that the nonstatutory labor exemption does not apply, and that no authorities cited "stand for the proposition that an employer is immune from suit under the antitrust laws merely because it happens to be a party to a CBA, particularly a CBA to which none of its alleged co-conspirator employers is a party." Id.  The Court in Reed extensively quoted and concurred with the analysis of this Court's bench decision in which this Court denied Ellis' original motion for summary judgement.

Ellis's renewed motion for summary judgment again argues that because its wage rates were established exclusively through collective bargaining, they are shielded from anti-trust attack.  This argument ignores the previous decision by the Court which holds that any

alleged anticompetitive agreements with non-unionized hospitals to depress RN wages are not protected by the nonstatutory exemption. The fact that it is undisputed that "wage rates for Ellis RNs during the class period were established exclusively through federally mandated collective bargaining between Ellis and the [NYSNA]" does not shield Ellis from liability for these alleged anticompetitive agreements.

In this case, Ellis explains in its memorandum in support of summary judgment that it collected "some RN wage data from local hospitals" in preparation for negotiations "as part of its effort to stay ahead of the market." Plaintiffs dispute the purpose of these exchanges arguing that the evidence shows that "despite a severe, ongoing shortage of nurses in the market that caused both high nurse vacancies and high agency costs, Ellis had an agreement to exchange, and did exchange, detailed, nonpublic nurse wage information with its competitors in blatant violation of Department of Justice antitrust guidelines, leading to softened competition in the market and markedly suppressed wages." The nature and purpose of the information exchanges are questions of fact which the Court will not address on summary judgment. Thus, the nonstatutory antitrust exemption does not shield Ellis from liability.

### 2. *Whether Ellis Hospital Violated the Sherman Act*

Ellis maintains that "because the wage rates contained in the collective bargaining agreements between itself and NYSNA constitute non-confidential, publicly available information, it did not violate the Sherman Act by occasionally sharing some information with other hospitals." See Docket No. 348. The parties dispute the confidentiality of the CBAs. Plaintiffs argue that the CBAs, although distributed to the nurses in the bargaining unit, "contained nonpublic compensation information." Plaintiffs cite to the fact that no other

hospital had a copy of the Ellis CBA as evidence that they were not public information. They also point out that Defendants requested that papers be filed under seal as "highly confidential." Ellis maintains that because the CBAs were distributed to all nurses in the bargaining unit and did not have to be returned if a nurse were to leave employment at Ellis hospital, the CBAs cannot be classified as confidential. In support of its argument, Ellis attaches the deposition of NYSNA Labor relations representative Strominger. See Strominger Dep., 69:1-10 (Defendants' Exhibit M).

> Q: Is there anything in those four collective bargaining agreements that are in front of you that the union considered confidential information?
>
> Mr. Tillou: Objection to the form of the question. Broad.
>
> A: Any, we know that anything in these documents is distributed to bargaining unit members, employer representatives, so - -
>
> Q: So its not confidential?
>
> A: No.

Thus, whether or not the CBAs at issue are confidential is a question of fact properly left to the finder of fact and not to be decided on summary judgment.

## IV.     CONCLUSION

For the foregoing reasons Defendant Ellis Hospital's Renewed Motion for Summary Judgment is DENIED.

Dated: July 21, 2010

*Thomas J. McAvoy*
Thomas J. McAvoy
Senior, U.S. District Judge